# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STANWICH MORTGAGE ACQUISITION COMPANY VIII, LLC,<br><br>Plaintiff,<br><br>- against -<br><br>EQUITY PRIME MORTGAGE, LLC,<br><br>Defendant. | Civil Action No. 1:24-cv-00771-DEH<br><br>**COMPLAINT** |

Stanwich Mortgage Acquisition Company VIII, LLC ("SMAC" or "Plaintiff"), as and for its complaint against Equity Prime Mortgage, LLC ("EPM" or "Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises out of EPM's failure to honor its contractual obligations to SMAC in connection with a Mortgage Loan Purchase and Sale Agreement, dated as of February 1, 2022 ("MLPA"), ███████████████████████████████████████ ████████████████████████████.

2. Under the MLPA, EPM agreed to sell, and SMAC agreed to purchase, certain agency-guaranteed residential mortgage loans (the "Mortgage Loans"), █████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████.

3. EPM breached its express obligations under the MLPA as part of an intentional scheme to deprive SMAC of the benefit of its bargain. Specifically, EPM permitted its servicer to (i) write-down the principal balance of (and accrued and unpaid interest on) the Mortgage Loans, *i.e.*, ▌; and (ii) file insurance claims for these manufactured "losses" that EPM wrongfully pocketed, or will pocket, for itself. When confronted with its breaches, EPM first provided inaccurate and incomplete responses, then ignored multiple attempts by SMAC to resolve these issues without court intervention, and, after finally responding to SMAC after nearly seven months of silence, engaged in further delay tactics.

4. SMAC is therefore compelled to bring this action to obtain funds owed to it, and wrongfully retained by EPM and/or its servicer, on account of the Mortgage Loans.

## PARTIES

5. Plaintiff SMAC is a limited liability company organized under the laws of the state of Delaware and a citizen of the Cayman Islands.

6. Defendant EPM is a limited liability company organized under the laws of the state of, and a citizen of, Georgia, with its principal place of business located at 5 Concourse Parkway, Suite 2250, Atlanta, Georgia 30328.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and venue is proper in this Court because Plaintiff and Defendant are citizens of different states, the amount in controversy exceeds $75,000, and each of the parties has contractually submitted, and waived any objection, to the exclusive jurisdiction of this Court.

## FACTS

**The Trust**

8. SMAC is an affiliate of Waterfall Asset Management, LLC ("WAM"), an asset

manager focused on asset-backed securities, lending, and private equity investments. SMAC was formed for the purpose of purchasing agency-insured loans and related servicing rights for conveyance to a securitization trust.

9. SMAC acts as the settlor, initial beneficiary, and trust manager for the Stanwich Mortgage Loan Trust F (the "Trust"). The Trust is governed by the Second Amended and Restated Trust Agreement (the "Trust Agreement"), dated as of November 10, 2022, by and between SMAC, as the settlor, initial beneficiary, and trust manager, Wilmington Savings Fund Society, FSB, as trustee, Carrington Mortgage Services, LLC, as servicer ("CMS"), and Computershare Trust Company, N.A., as paying agent.

10. Pursuant to the Trust Agreement, SMAC entered into arrangements to purchase agency-insured mortgage loans secured by residential properties ("Agency-Insured Loans") to be conveyed to the Trust, principally consisting of mortgage loans insured by the U.S. Federal Housing Administration ("FHA"), the United States Department of Agriculture, including the Rural Housing Service ("USDA"), and the U.S. Department of Veterans Affairs ("VA").

11. Agency-Insured Loans assist homebuyers in obtaining mortgage loans by insuring lenders against the possibility of borrower default. If a borrower fails to make payments owed on the loan, the relevant agency typically covers those losses, in whole or in part, when the lender files a claim with the agency. As a result, lenders can offer loans to homebuyers with weaker credit histories, smaller down payments, or other financial issues that would otherwise make it difficult for these homebuyers to obtain credit.

12. The Trust Agreement provides for the Trust to acquire Agency-Insured Loans, the proceeds of such loans, and any and all servicing rights related to such loans. Because Agency-Insured Loans are generally made to borrowers with a higher risk of nonpayment, the availability

3

of insurance proceeds to compensate for this elevated risk is an integral aspect of acquiring Agency-Insured Loans.

**The MLPA**

13. EPM is a licensed mortgage banker, also known as a non-bank lender, that originates and sells residential mortgages and servicing rights, including Agency-Insured Loans.

14. On February 1, 2022, SMAC, as "Purchaser," entered into the MLPA with EPM, as "Seller," ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Section 5.08 of the MLPA expressly permitted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

15. The purchase price paid by SMAC consisted of, among other things, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

16. The MLPA also provided for the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Servicers are responsible for the day-to-day administration of mortgage loans, including collecting payments from borrowers; commencing enforcement actions in the event of nonpayment; managing and liquidating any underlying properties acquired in satisfaction of the mortgage; and distributing payments to the loans' interest holder. For Agency-Insured Loans, one of the servicer's critical responsibilities is to timely file insurance claims with the relevant agencies to cover losses on the loans.



---

[1] CENLAR contracted out its servicing responsibilities to The Money Source Inc. ("TMS") as subservicer. References herein to the actions of CENLAR in its role as EPM's servicer include any actions by TMS in its role as subservicer to CENLAR.

4

17. The MLPA provided that ███████████████████████████████
████████████████████████████████████████████. Specifically, the MLPA provided for: (i) ████████████████████████████████████████
██████████████████████; and (ii) ████████████████████████
████████████████████████████████████████████. Section 4.01 of ████████████████████████████████████████
███████████████████.

18. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████.

19. The MLPA obligated ████████████████████████████
████████████████████████████████████████████.

20. Specifically, Section 2.05 of the MLPA provides that ████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████ Sections 4.03 and 4.04 of the MLPA require ███
████████████████████████████████████████████
████████████████████████████████████████. Section 4.04 further states that ████████████████████████████████████████.

5

21. Further, Section 4.01(a) of the MLPA obligates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**The Breach**

22. Pursuant to the MLPA, SMAC closed on its purchase of the Mortgage Loans from EPM on February 1, 2022. The Mortgage Loans were simultaneously assigned to Wilmington Savings Fund Society FSB as trustee for Trust ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The servicing rights related to the Mortgage Loans transferred to CMS on March 22, 2022, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

23. Following the transfer of servicing rights, CMS analyzed the Mortgage Loans and the servicing by CENLAR during the Interim Servicing Period. CMS determined, among other things, that the unpaid principal balance of certain Mortgage Loans had been reduced from the amounts set forth on the Schedule to the MLPA. CMS likewise determined that amounts constituting Accrued Interest, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, had been written down to zero. Further, CENLAR had filed insurance claims on these loans, but never transferred any insurance proceeds to SMAC.

24. Specifically, CMS uncovered at least 14 Mortgage Loans for which the unpaid principal balance and Accrued Interest had been written down by CENLAR by a total of

6

$841,100.07. Upon further investigation, CMS discovered that CENLAR had filed insurance claims with the relevant agencies for these Mortgage Loans. For seven of these loans (the "Subject Loans"),[2] CENLAR received claim proceeds in excess of the amount of written down principal and Accrued Interest ($309,347.76) from the relevant agencies during the ███████████ ████. Nearly two years after the ███████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████████████.

25. With respect to the other seven Mortgage Loans (the "Reduced Loans"),[3] CENLAR wrote down a total of $531,752.31 in principal and Accrued Interest, filed insurance proceeds with the relevant agencies for these Mortgage Loans, and has received or will receive claim proceeds. Those proceeds have not been transferred to SMAC ███████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████.

26. The Trust attempted to contact EPM and its servicer on numerous occasions during the past several months to address these issues in good faith. EPM and its servicer first met these requests with incomplete and inaccurate information, and then with complete silence.

---

[2] Those loans are: ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

[3] Those loans are: ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

27. On April 3, 2023, the Trust sent EPM a "Reservation of Rights" letter via email, notifying EPM that CENLAR's actions, including the failure to provide SMAC with the proceeds of insurance claims obtained from the relevant agencies on behalf of the Mortgage Loans owned by SMAC, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. When no response was forthcoming, SMAC reached out again on April 11, 2023, via email. EPM apologized for its delayed communications and promised to review everything and respond within "the next week." It took EPM two weeks and as many reminders before responding again, only to say on April 24, 2023 that they would have an update to SMAC "within the next day or two."

28. Instead, EPM went silent for nearly seven months, despite two letters from the Trust's and SMAC's outside counsel to EPM regarding EPM's breaches of the MLPA. SMAC did not hear from EPM again until after SMAC informed EPM on November 16, 2023 that SMAC would be filing a complaint against EPM the next day. While EPM claimed that it wanted to see if the parties could resolve the dispute without court intervention, EPM then began engaging in more delay tactics – failing to respond to efforts to discuss, cutting off communications, and raising vague and nonsensical information requests.

29. During the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, CENLAR wrote down the principal and interest on the Subject Loans and Reduced Loans in the total amount of $841,100.07, failed to transfer any of that amount to SMAC, and left SMAC unable to file insurance claims with respect to any of those loans. CENLAR also collected at least $309,347.76 in proceeds from insurance claims to the relevant government agencies on account of the Subject Loans that it failed to transfer to SMAC ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The parties were unable to resolve the dispute described herein.

8

## FIRST CAUSE OF ACTION

### Breach of Contract

30. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

31. The MLPA is a valid and enforceable contract.

32. SMAC has performed all conditions, covenants, and promises required by it to be performed under the MLPA.

33. The MLPA contained various provisions governing SMAC's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

34. During the ▮▮▮▮▮▮▮▮▮▮▮▮, CENLAR wrote down the principal and Accrued Interest on the Subject Loans and the Reduced Loans in the amount of $841,001.07. During the ▮▮▮▮▮▮▮▮▮▮▮▮, CENLAR also filed insurance claims regarding the Subject Loans and the Reduced Loans, and received over $309,347.76 in claim payments.

35. In direct contravention of its obligations under the MLPA, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

36. As a result of EPM's breach, SMAC has sustained damages, at a minimum, in the amount of $841,001.07, plus interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant for the following relief:

(i) An award of damages against Defendant for all of the damages complained of herein in connection with Defendant's breach of the MLPA, plus prejudgment interest at no less than the 9% interest rate provided by CPLR 5004 and the maximum prejudgment interest otherwise permitted by law;

(ii) Costs, interest, expenses, and attorneys' fees; and

(iii) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 30, 2024

KASOWITZ BENSON TORRES LLP

By: /s/ Michael A. Hanin

Michael A. Hanin
Jill L. Forster
Sarah F. Lyon

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Stanwich Mortgage Acquisition Company VIII, LLC*

10