# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STANWICH MORTGAGE ACQUISITION            Civil Action No. 24-cv-771(DEH)
COMPANY VIII, LLC,

          Plaintiff,

   -against-                                                    **THIRD – PARTY COMPLAINT**

EQUITY PRIME MORTGAGE, LLC,

          Defendant.
------------------------------------------------------------X
EQUITY PRIME MORTGAGE, LLC,

          Third-Party Plaintiff,

   -against-

THE MONEY SOURCE, INC. and SERVBANK,
Sb,

          Third-Party Defendants,
------------------------------------------------------------X

      Defendant/Third-Party Plaintiff, EQUITY PRIME MORTGAGE, LLC ("EPM" or "Third-Party Plaintiff") by its attorneys FORCHELLI DEEGAN TERRANA LLP, as and for its Third-Party Complaint against Third-Party Defendants, THE MONEY SOURCE, INC. ("TMS" or "Third-Party Defendant") and SERVBANK, Sb ("Servbank"), hereby states as follows:

## NATURE AND PURPOSE OF ACTION

    1.    EPM brings this action against TMS as a result of TMS' failure to uphold its obligations to EPM under the Subservicing Agreement dated November 1, 2019.

    2.    As a result of TMS' breach, plaintiff, Stanwich Mortgage Acquisition Company VIII, LLC ("Plaintiff" or "SMAC") commenced the above referenced action against EPM alleging

1

that SMAC was deprived of the benefit of its bargain under a Mortgage Loan Purchase Agreement as a result of certain alleged servicing failures by TMS.

3. While EPM categorically denies SMAC's allegations, in the event it is determined that EPM breached its obligations to SMAC, such breaches were the direct and proximate result of TMS' breach of its obligations to EPM.

4. While EPM denies SMAC's claims, EPM files this Third-Party Complaint against Third-Party Defendant to seek redress in the event that EPM incurs liability to SMAC.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1367 because EPM's claims against third-party defendant involve the joinder of additional parties and are so related to Plaintiff's claim against EPM that they form part of the same case or controversy under Article III of the U.S. Constitution.

6. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because Third-Party Plaintiff and Third-Party Defendants are citizens of difference states, and the amount in controversy exceeds $75,000.00.

7. This Court has personal jurisdiction over Third-Party Defendants because, upon information and belief, Third-Party Defendant[s]' headquarters, at the time the Agreement was executed, were located in Melville, New York, Third-Party Defendant[s] regularly conducts business in New York, and Third-Party Defendant[s] was subservicer for the mortgage loans at issue.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events giving rise to EPM's claims occurred within the geographic jurisdiction of this Court.

## PARTIES

9. EPM is a Georgia limited liability company with its principal place of business located in Atlanta, Georgia.

10. TMS is a corporation organized and existing under the laws of the state of New York, whose principal offices, upon information and belief, are now located at 3138 E. Elwood Street, Suite 200, Phoenix, Arizona 85034.

11. Servbank, Sb is state savings bank chartered by the state of Illinois, and is headquartered at 3201 Orchard Rd., Oswego, Illinois 60543. Through an acquisition, TMS transitioned to Servbank, in and around May 2023.

## STATEMENT OF FACTS

12. EPM is a retail and wholesale lender that is licensed in 48 states. As a retail and wholesale lender, EPM originates and services government and agency backed mortgage loans.

13. On or about November 1, 2019, EPM and third-party defendant, TMS entered into a Subservicing Agreement (the "Agreement"), the terms of which are incorporated by reference as if fully stated herein.

14. Under the Agreement, TMS agreed to perform certain servicing functions on EPM's behalf.

15. In performing its duties as subservicer, TMS agreed that it would perform its servicing functions "in compliance and accordance with the provisions of this Agreement and Applicable Requirements." *See* Agreement at Sec. 2.2.

16. The Agreement provided that until the principal and interest ("P&I") of each Mortgage Loan is paid in full, TMS shall:

> a. Collect from Mortgagors applicable payments of P&I, and applicable deposits for taxes, assessments and other public

      charges that are generally escrowed, hazard insurance premiums, flood insurance premiums as required, FHA insurance or PMI premiums, optional insurance premiums, and all other items, as they become due;

  b. Accept payments of P&I and Escrow Payments only in accordance with the Mortgage Loan documents and Applicable Requirements. Deficiencies or excesses in payments shall be accepted and applied, or accepted and not applied, or rejected in accordance with Applicable Requirements;

  c. Apply all payments of P&I and Escrow Payments collected from the Mortgagor, and maintain permanent mortgage account records capable of producing, in chronological order: the date, amount, distribution, installment due date or other transactions affecting the amounts due from or to the Mortgagor and indicating the latest outstanding balances of principal, escrow accounts, advances, and unapplied payments;

…

  m. Maintain applicable FHA mortgage insurance, VA guaranty, PMI, or optional insurance, as applicable, in effect and properly transferred to Subservicer on the Transfer Date, provided, however, that Subservicer shall not be obligated to make a Servicing Advance for payment of any optional insurance premium; and

*See* Agreement at Sec. 2.4.

    17.    The Agreement further provided, in pertinent part, that:

> b. Disbursing insurance loss settlements, including: (i) Receiving reports of insurance losses and assuring that proof of loss statements are properly filed; (ii) Authorizing the restoration and rehabilitation of the damaged property. If Owner/Servicer is named as an additional loss payee, Subservicer is hereby empowered to endorse any loss draft issued in respect of such claim in the name of Owner/Servicer; (iii) Collecting, endorsing and disbursing the insurance loss proceeds and arranging for progress inspections and payments, if necessary; (iv) Complying with all Applicable Requirements pertaining to settlement of insurance losses; (v) In general, complying with Applicable Requirements to assure that the priority of the Mortgage is preserved; and (vi) If special disaster procedures are issued by Investors or governmental agencies, Subservicer will release funds in accordance with those policies.

*See* Section 2.5(b).

4

18. Additionally, the Agreement provided that TMS shall:

> b. Make direct remittances to third parties to whom Investor has sold or assigned all or part of its interest in a Mortgage Loan, including the sale of participating interest therein, provided that this Agreement remains in full force and effect with respect to such Mortgage Loan and for which Subservicer receives a minimum of thirty (30) days' written notice of such sale or assignment. If following the sale or transfer, Subservicer must make more than one remittance per month with respect to a Mortgage Loan, Subservicer shall be entitled to its costs, which shall be considered a Servicing Advance, subject to all applicable RESPA servicing transfer requirements;

*See* Section 2.6(b).

19. The Agreement provides that it will be binding upon the parties' successor and permitted assigns. *See* Agreement, Section 9.10.

20. Upon information and belief, in and around May 2023, TMS transitioned to Servbank as part of a merger.

21. Accordingly, pursuant to the Agreement, Servbank, as TMS' successor remains liable to EPM for any breaches or defaults under the Agreement.

22. On or about February 1, 2022, EPM and plaintiff, SMAC, entered into a Mortgage Loan Purchasing Agreement ("MLPA") for the purpose of selling certain mortgage loans.

23. TMS acted as subservicer for the mortgage loans subject to the MLPA.

24. The mortgage loans were sold to SMAC on or about February 1, 2022; however, the servicing rights were transferred to SMAC on or about March 22, 2022.

25. SMAC now alleges in the above captioned action that certain irregularities have arisen with respect to the servicing of certain mortgage loans.

5

26. Particularly, it is alleged that the principal and interest on certain loans[1] were written down to zero prior to transfer to SMAC.

27. It is further alleged that while TMS, as servicer, made insurance claims to the relevant government agency for the losses incurred on the P&I write down, the insurance proceeds for these claims were wrongfully withheld from SMAC.

28. In the event it is determined that the servicing irregularities alleged by SMAC occurred, they were the direct and proximate result of the acts, omissions and breaches of TMS.

29. In the event it is determined that insurance proceeds for the identified mortgage loans were improperly withheld from SMAC, such withholdings would be in violation of TMS' obligations under the Agreement, which requires TMS to make all remittances to any third-party purchaser within 30 days.

30. As a result, in the event that EPM is held liable to SMAC, then TMS should be held liable to EPM for the breach of its obligations.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

31. EPM repeats and realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 as if set forth at length herein.

32. EPM and TMS entered into an Agreement for the purpose of TMS acting as subservicer for mortgage loans on EPM's behalf.

33. As subservicer, TMS was responsible for making direct remittances to any third-parties to whom EPM sold its interest.

---

[1] The loan numbers for the loans at issue are included in footnotes 2 and 3 in the unredacted complaint that is filed under case no. 24-mc-00051.

6

34. If it is determined that insurance proceeds were withheld from SMAC, such withholdings would be a violation of TMS' obligations to EPM.

35. TMS accordingly breached its obligations to EPM under the Agreement.

36. Servbank, as a successor of TMS, is liable to EPM for TMS' breach.

37. Although EPM denies Plaintiff's claim, in its entirety, if EPM incurs liability to Plaintiff, then as a result of TMS' breach of the Agreement, EPM has been damaged in an amount to be determined at trial, but estimated to be in excess of $800,000.

**WHEREFORE**, EPM respectfully requests that this Honorable Court enter judgment in its favor and against the Third-Party Defendant, if EPM is found liable to Plaintiff, as follows:

(a) In an amount to be determined at trial for the alleged failure to forward certain agency backed mortgage loan insurance proceeds to SMAC, but estimated to be in excess of $800,000.

(b) In an amount to be determined at trial for the attorneys' fees and costs that EPM has incurred as a result of having to defend against Plaintiff's claims and prosecute this action against TMS for its breach; and

(c) For such other and further relieves as this Court deems just and equitable.

Dated: May 9, 2024
      Uniondale, New York

                FORCHELLI DEEGAN TERRANA LLP

                By: _/s/_____
                    Keith J. Frank
                    Lisa M. Casa
                    333 Earle Ovington Blvd., Suite 1010
                    Uniondale, New York 11553
                    Tel. 516-248-1700
                    kfrank@forchellilaw.com
                    lcasa@forchellilaw.com
                    Attorneys for Equity Prime Mortgage