# Exhibit C



SUBSERVICING AGREEMENT


EQUITY PRIME MORTGAGE LLC
Owner/Servicer


and


THE MONEY SOURCE INC.
Subservicer



Dated: November 1, 2019

## TABLE OF CONTENTS

**ARTICLE I.** ...................................................................................................................... 1

**DEFINITIONS** ............................................................................................................... 1

**ARTICLE II.** ..................................................................................................................... 7

**AGREEMENTS OF SUBSERVICER** ........................................................................... 7

Section 2.1.    General. ..........................................................................................................7
Section 2.2.    Compliance; Standard of Care. ......................................................................9
Section 2.3.    Engagement of Vendors. ................................................................................9
Section 2.4.    Procedure. .....................................................................................................10
Section 2.5.    Other Services. .............................................................................................13
Section 2.6.    Accounting and Investor Reporting. ............................................................14
Section 2.7.    Delinquency Control. ...................................................................................15
Section 2.8.    Real Estate Owned. ......................................................................................16
Section 2.9.    Books and Records; Audit Rights. ...............................................................17
Section 2.10.   Insurance. .....................................................................................................17
Section 2.11.   Advances. .....................................................................................................18
Section 2.12.   Procedural Modifications Applicable to Interim Serviced Mortgage Loans.................................19
Section 2.13.   Notice that a Mortgage Loan is no Longer an Interim Serviced Mortgage Loan. .........................19
Section 2.14.   Process Changes and Other Services. ..........................................................20
Section 2.15.   Solicitation. ..................................................................................................21
Section 2.16.   HAMP. ..........................................................................................................21
Section 2.17.   Sales to Third Parties. ..................................................................................22
Section 2.18.   Disaster Recovery Plan. ...............................................................................22
Section 2.19.   Non-Standard Portfolios. .............................................................................22
Section 2.20.   Policies and Procedures. ..............................................................................22
Section 2.21.   Evidence of Compliance. .............................................................................23
Section 2.22.   SFLS Loan Sale. ..........................................................................................23

**ARTICLE III.** ................................................................................................................. 23

**AGREEMENTS OF OWNER/SERVICER** ................................................................. 23

Section 3.1.    Documentation. ............................................................................................23
Section 3.2.    Pay-off of Mortgage Loan. ...........................................................................26
Section 3.3.    Further Notification. .....................................................................................27
Section 3.4.    Notices. .........................................................................................................27
Section 3.5.    Instructions to Subservicer. ..........................................................................28
Section 3.6.    Corporate Resolution. ..................................................................................28
Section 3.7.    MERS Administration. ..................................................................................28
Section 3.8.    Misdirected Payments. .................................................................................28
Section 3.9.    Funding Escrow Accounts Upon a Bulk Servicing Transfer: .......................28

**ARTICLE IV.** ..................................................................................................................... **29**

**COMPENSATION** ............................................................................................................. **29**

Section 4.1.     Subservicing Fee........................................................................................29
Section 4.2.     Due Date of Payments. ..............................................................................30
Section 4.3.     Default and Right of Offset. .......................................................................30
Section 4.4.     Resolution of Disputes and Monetary Errors..............................................30

**ARTICLE V.** ..................................................................................................................... **31**

**TERM AND TERMINATION** ......................................................................................... **31**

Section 5.1.     Term. ........................................................................................................31
Section 5.2.     Termination without Cause.........................................................................32
Section 5.3.     Termination with Cause. .............................................................................32
Section 5.4.     Reimbursement upon Expiration or Termination. ........................................33
Section 5.5.     Accounting/Records. ..................................................................................33

**ARTICLE VI.** .................................................................................................................... **34**

**REPRESENTATIONS, WARRANTIES AND COVENANTS OF OWNER/SERVICER. 34**

Section 6.1.     Cooperation and Assistance........................................................................34
Section 6.2.     Notice of Breach. .......................................................................................34
Section 6.3.     Taxes. ........................................................................................................34
Section 6.4.     Agency Approvals.......................................................................................34
Section 6.5.     Prior Servicing. ..........................................................................................34
Section 6.6.     Authority. ...................................................................................................35
Section 6.7.     Predatory Lending Regulations; High Cost Loans.........................................35
Section 6.8.     Litigation. ...................................................................................................35
Section 6.9.     Ownership. .................................................................................................35
Section 6.10.    Accuracy of Information. .............................................................................35
Section 6.11.    Broker Fees. ...............................................................................................36
Section 6.12.    Ability to Perform........................................................................................36
Section 6.13.    HECM Loans. ..............................................................................................36
Section 6.14.    Reasonable Assurances................................................................................36

**ARTICLE VII.** .................................................................................................................. **37**

**REPRESENTATIONS, WARRANTIES AND COVENANTS OF SUBSERVICER** .......... **37**

Section 7.1.     Notice of Breach. .......................................................................................37
Section 7.2.     Agency Approvals.......................................................................................37
Section 7.3.     Authority. ...................................................................................................37
Section 7.4.     Litigation. ...................................................................................................37
Section 7.5.     Accuracy of Information. .............................................................................38
Section 7.6.     Broker Fees. ...............................................................................................38
Section 7.7.     MERS. ........................................................................................................38
Section 7.8.     Ability to Perform........................................................................................38
Section 7.9.     HAMP. .......................................................................................................38

**ARTICLE VIII.** ................................................................................................................ **38**

**INDEPENDENCE OF PARTIES; INDEMNIFICATION; SURVIVAL** .............................. **38**

Section 8.1.     Independence of Parties. .................................................................................38

**SECTION 8.2.     INDEMNIFICATION** ................................................................... **39**

**SECTION 8.3 LIMITATION OF LIABILITY** ........................................................ **43**

Section 8.4.     Privacy. ............................................................................................................44

Section 8.5.     Survival. ...........................................................................................................47

**ARTICLE IX.** ................................................................................................................... **48**

**MISCELLANEOUS** ........................................................................................................ **48**

Section 9.1.      Changes in Practices.......................................................................................48

Section 9.2.      Assignment. .....................................................................................................48

Section 9.3.      Prior Agreements. ...........................................................................................49

Section 9.4.      Entire Agreement. ...........................................................................................49

Section 9.5.      Invalidity..........................................................................................................49

Section 9.6.      Effect. ...............................................................................................................49

Section 9.7.      Applicable Law and Exclusive Jurisdiction ..................................................49

Section 9.8.      Notices. .............................................................................................................49

Section 9.9.      Waivers. ............................................................................................................50

Section 9.10.     Binding Effect. .................................................................................................50

Section 9.11.     Headings...........................................................................................................50

Section 9.12.     Force Majeure. .................................................................................................50

Section 9.13.     Non-Solicitation of Employees. ......................................................................50

Section 9.14.     Waiver of Jury Trial. .......................................................................................51

Section 9.15.     Counterpart Execution.....................................................................................51

**EXHIBITS**

EXHIBIT I            Schedule of Loans

EXHIBIT II           Fees for Standard Services

EXHIBIT III          Servicing Transfer Instructions

EXHIBIT IV           Form of Corporate Resolution

EXHIBIT V            Limited Power of Attorney

**SUBSERVICING AGREEMENT**

THIS SUBSERVICING AGREEMENT (the "Agreement") is made as of November 1, 2019 (the "Effective Date"), by and between Equity Prime Mortgage LLC ("Owner/Servicer"), a Georgia limited liability company with a principal office address of 5 Concourse Parkway, Suite 2250, Atlanta, GA 30328 and The Money Source Inc. ("Subservicer"), a New York corporation with a principal office address of 135 Maxess Road, Melville, New York 11747. Each party hereinafter is referred to individually as a "Party" or collectively, as the "Parties."

**RECITALS**

WHEREAS, Subservicer is engaged in the business of servicing and subservicing Mortgage Loans evidenced by Notes and secured by Mortgages (as those terms are defined below); and

WHEREAS, Owner/Servicer owns the right to service the Mortgage Loans identified on Exhibit I attached hereto and Subservicer has the capacity to subservice said Mortgage Loans for Owner/Servicer; and

WHEREAS, Owner/Servicer desires that Subservicer perform, as a subservicer, certain servicing functions for said Mortgage Loans in accordance with the provisions of this Agreement, and Subservicer is agreeable thereto.

NOW, THEREFORE, in consideration of the mutual recitals, promises and covenants set forth herein, and other good and valuable consideration received, but not herein recited, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree and covenant as follows:

**ARTICLE I.**
**DEFINITIONS**

For purposes of this Agreement each of the following terms shall have the meaning specified with respect thereto.

ACH: an automated clearing house transfer that electronically transfers money directly between the accounts of Owner/Servicer and Subservicer quickly, reliably and inexpensively.

Agencies: FHLMC, FNMA, GNMA, HUD, USDA, and VA as the context may indicate, each an "Agency".

Agreement: This Agreement as the same may be from time to time amended.

Ancillary Income: All net income and fees of Subservicer derived from servicing the Mortgage Loans, excluding Subservicing Fees and Service Rendered Ancillary Fees, either directly from Mortgagors or from others, including, without limitation, insufficient funds fees, late fees,

satisfaction fees, and all other incidental fees and charges actually received by the Subservicer and permitted to be assessed to Mortgagors by this Agreement and Applicable Requirements.

Applicable Requirements: As of the time of reference, the following as applicable for each Mortgage Loan: (i) all obligations of Owner/Servicer related to the servicing of a Mortgage Loan (other than the obligation to make P&I Advances or Servicing Advances) including without limitation those contractual obligations of Owner/Servicer or Subservicer contained in this Agreement or in the Mortgage Loans for which Owner/Servicer is responsible; (ii) all applicable Mortgage Loan related federal, state and local legal and regulatory requirements (including statutes, rules, regulations and ordinances) binding upon Owner/Servicer or Subservicer; (iii) all other applicable requirements and timeframes related to the servicing of a Mortgage Loan and guidelines of (1) each governmental agency, board, commission, instrumentality and other governmental body or office having jurisdiction over the Mortgage Loan, including without limitation those of the CFPB, FHA, FHLMC, FNMA, GNMA, HUD, USDA and VA (exclusive of any FHLMC balloon reset obligations), and (2) any PMI Companies; and (iv) all other applicable judicial and administrative judgments, orders, stipulations, awards, writs and injunctions.

Bulk Servicing Transfer: The transfer to Subservicer of the Mortgage Loans identified on Exhibit I or a subsequent transfer to Subservicer of one hundred or more Mortgage Loans at a given time for subservicing pursuant to this Agreement.

Business Day: Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions in the state of New York are authorized or obligated by law or executive order to be closed.

CFPB: Consumer Financial Protection Bureau, or any other name given to the federal consumer financial protection agency responsible for supervision and/or enforcement of federal laws such as RESPA and TILA, governing mortgage loan servicing activities.

Corporate Resolution: A Corporate Resolution from the governing body of Owner/Servicer substantially in the form of Exhibit VI attached hereto.

Custodial Account: A time deposit or demand account created and maintained by Subservicer for the deposit of payments of P&I and other payments with respect to Mortgage Loans, other than Escrow Payments and related disbursements.

Damages: Any and all assessments, judgments, claims, liabilities, losses, costs, damages or expenses (including interest, penalties and reasonable attorneys' fees, expenses and disbursements in connection with any action, suit or proceeding and including any such reasonable attorneys' fees, expenses and disbursements incurred in enforcing any right of indemnification against any indemnitor).

Escrow Account: A time deposit or demand account created and maintained by Subservicer for the deposit of Escrow Payments and related disbursements.

Escrow Account Deposits: For each Mortgage Loan the balance of all Escrow Payments remaining for disbursement to pay Insurance and Lienable Items.

Escrow Payments: The amounts required to be paid into escrow by the Mortgagor pursuant to any Mortgage Loan and held in Escrow Accounts, which include amounts being held for payment of taxes, assessments, water rates, flood insurance premiums, fire and hazard insurance premiums, mortgage insurance premiums and other payments, including Insurance and Lienable Items.

FDIC: The Federal Deposit Insurance Corporation.

FHA: The Federal Housing Administration or any successor thereto.

FHLMC: The Federal Home Loan Mortgage Corporation (Freddie Mac) or any successor thereto.

Flow Servicing Transfer: Any transfer of Mortgage Loans to Subservicer for subservicing that is not a Bulk Servicing Transfer.

FNMA: Fannie Mae, formally known as Federal National Mortgage Association or any successor thereto.

Guarantee Fee: Fees charged by mortgage-backed securities providers (such as GNMA, FHLMC and FNMA), to be funded by Owner/Servicer, payable to a mortgage-backed securities provider for its full faith and credit to guaranty; as well as fees for bundling, servicing, selling and reporting mortgage backed securities to the providers as applicable.

GNMA: The Government National Mortgage Association.

HAMP:  The Home Affordable Modification Program implemented by the United States Department of Treasury pursuant to Section 101 and 109 of the Emergency Economic Stabilization Act of 2008, as the same may be amended or modified.

HUD: The Department of Housing and Urban Development.

Initial Transfer Date: The first Transfer Date.

Insurance: Insurance that protects a Mortgagor's lender against loss or damage from fire and other hazards covered by the standard extended coverage endorsement, or equivalent policies, flood insurance, primary mortgage guaranty insurance and other insurance required by the Mortgage.

Investor: The owner of the Note, which may be Owner/Servicer.

Investor Guideline: The written instructions provided by an Investor to the Subservicer or Owner/Servicer. Instructions published by FHA, VA, USDA, FNMA, GNMA, and FHLMC shall be deemed to be provided to Subservicer. Written instructions that are not published by FHA, VA, USDA, GNMA, and FHLMC shall be promptly delivered to Subservicer in writing by the Investor or Owner/Servicer to be considered an Investor Guideline herein.

Interim Serviced Mortgage Loan: A Mortgage Loan designated as being an Interim Serviced Mortgage Loan which designation continues until the Mortgage Loan is transferred to a new servicer or until the Mortgage Loan is no longer an Interim Serviced Mortgage Loan pursuant to 2.12 and 2.13. An Interim Serviced Mortgage Loan is a Mortgage Loan that Owner/Servicer transfers to Subservicer at the Transfer Date for interim subservicing, and later transfers the related servicing rights of such Loan to a third party within ninety (90) days after the date of such Loan's origination.

Interim Servicing Transfer: Any transfer of an Interim Serviced Mortgage Loan to Subservicer for subservicing.

Late Charge: The charge imposed on the Mortgagor pursuant to the applicable Note or Mortgage for making a required payment after the scheduled due date and any applicable grace period.

Lienable Item: Taxes, ground rents and other recurring similar charges that would become a lien on the Mortgaged Property and may take priority over the lien of the Mortgage.

Loss Mitigation: Those efforts, other than foreclosure, taken to lessen losses to an Investor when collection efforts have not resulted in a Mortgagor curing a delinquency in compliance with Applicable Requirements. Such efforts may include, advising Mortgagors of various relief alternatives to foreclosure, receipt and analysis of a Mortgagor's financial information, determining the value of the Mortgaged Property and recommending to Investor or Owner/Servicer approval or denial of a relief alternative, as applicable.

Loss Mitigation Fee: A fee set forth in Exhibit II that is earned and due and payable by Owner/Servicer to Subservicer when Subservicer has engaged in Loss Mitigation and made (i) a recommendation to Owner/Servicer or Investor, (ii) a decision, if so authorized, to offer or

decline relief other than foreclosure to the affected Mortgagor, (iii) execution of a loan modification, (iv) written (formal) repayment plan by the Mortgagor, (v) the receipt by Subservicer of funds representing an approved short sale, (vi) receipt of documents representing completion of a deed-in-lieu of foreclosure, (vii) an approved assumption of a defaulted Mortgage Loan, (viii) or other similar fees as found in Exhibit II.

MERS:  Mortgage Electronic Registration Systems, Inc. or any successor or assign thereto.

Mortgage: The mortgage, deed of trust or other instrument creating a first lien on a Mortgaged Property securing a Note (or a first lien on (i) in the case of a cooperative, the related shares of stock in the cooperative securing the Note and (ii) in the case of a ground rent, the leasehold interest securing the Note).

Mortgage Loan: Fixed or adjustable rate residential mortgage loans, or pools of residential mortgage loans identified on Exhibit I, and similar loans for which Subservicer subsequently accepts subservicing from Owner/Servicer from time to time for inclusion under the terms of this Agreement, as well as other types of loans for which Subservicer accepts subservicing subject to such additional or different terms and conditions as may be agreed to by Owner/Servicer and Subservicer and any REO resulting from Mortgage Loans described in this definition.

Mortgage Loan Documents: With respect to each Mortgage Loan, (i) the original Mortgage Loan documents held by the custodian, including the Note, and if applicable, cooperative mortgage loan related documents and (ii) all documents required by the applicable Investor to be held by the custodian under the Applicable Requirements.

Mortgage Servicing File:  The documents or records which are necessary or appropriate for Subservicer to conduct the subservicing of the Mortgage Loans, including, without limitation, those documents or records required to be maintained by mortgage loan servicers under the applicable Investor Guidelines.

Mortgaged Property: The property described in a Mortgage securing repayment of the debt evidenced by a Note.

Mortgagor: The mortgagor, grantor of security deeds, grantor of trust deeds and deeds of trust, and any similar grantor of any Mortgage, and any obligor on a Note or owner of a Mortgaged Property.

Note: The original executed note evidencing the indebtedness of a Mortgage Loan.

P&I: Principal and interest.

P&I Advance: Principal and interest, if any, and all amounts advanced to an Investor related to a Mortgage Loan, including those Mortgage Loans in any pool created through mortgage backed pass-through certificates or securities, and any amounts advanced due to negative amortization or interest required to be paid to an Investor upon payoff of a Mortgage Loan.

PMI: Private mortgage insurance. As it relates to Subservicer's obligations to maintain PMI under Investor Guidelines, the acronym PMI may be used interchangeably with Mortgage Insurance Premiums as required by FHA or VA.

PMI Companies: The insurance companies that have issued PMI policies insurance on any of the Mortgage Loans.

REO: A Mortgaged Property acquired by Owner/Servicer or Investor by foreclosure or other process.

REO Disposition: The final sale by Subservicer of any REO.

Service Rendered Ancillary Fees: Fees charged by and within the control of Subservicer to the related Mortgagor solely in consideration of fulfilling specific requests by the Mortgagor. Such fees include, but are not limited to, fees for amortization schedules, copies of documents; duplicate statements or coupon books, loan histories, loan verifications, faxing documents, payoff statement delivery and/or preparation fees, wire fees, e-pay, phone-pay, ACH, uncollected funds, processing of assumptions, partial releases, correction of legal description, and condominium conversions, easements, or subordinations, but will only be charged by Subservicer if and to the extent consistent with Applicable Requirements.

Servicing Advance: All customary, reasonable and necessary "out of pocket" costs and expenses related to the servicing of a Mortgage Loan, including, but not limited to, the cost of (i) the preservation, restoration and protection of the Mortgaged Property, (ii) any enforcement or judicial proceedings, including bankruptcy, foreclosure and Loss Mitigation costs along with the related costs, expenses and fees of foreclosure or bankruptcy or of acquiring title to the Mortgaged Property by deed-in-lieu of foreclosure, (iii) any appraisals, valuations, broker price opinions, inspections, or environmental assessments, (iv) the management and liquidation of the REO, (v) payment of taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums, flood insurance premiums, postage, and other payments defined herein, and (vi) amounts paid by Subservicer to third parties pursuant to the requirements of this Agreement, or advanced pursuant to any applicable Investor requirements or servicing agreement by which Owner/Servicer is or may be bound, including any P&I Advance. Notwithstanding each of the foregoing references, Subservicer is neither required nor bears any obligation to make a P&I Advance.

Services: The services and obligations contemplated to be performed by Subservicer under this Agreement. Subservicer will provide Owner/Servicer with a dedicated team of customer service representatives.

T&I: Taxes and insurance.

Term Servicing Loan: A Mortgage Loan that is not an Interim Serviced Mortgage Loan.

Transfer Date: With respect to any particular Mortgage Loan, the date on which Subservicer commences subservicing of the Mortgage Loans.

Transfer Fee: With respect to each Mortgage Loan, the amount set forth in Exhibit II of this Agreement payable upon termination or expiration of this Agreement or removal of the Mortgage Loan from Subservicer's subservicing system at the request of Owner/Servicer or Investor, except as otherwise provided in this Agreement.

USDA: United States Department of Agriculture.

VA: The United States Department of Veterans Affairs.

## ARTICLE II.
## AGREEMENTS OF SUBSERVICER

**Section 2.1.**    General.

Subservicer hereby agrees to provide the Services on behalf of Owner/Servicer pursuant and subject to the terms of this Agreement to the extent that such terms do not directly conflict with any Applicable Requirements. In performing its obligations under this Agreement, Subservicer shall perform all of the tasks required of Owner/Servicer under Applicable Requirements with respect to the Mortgage Loans as if it were the servicer of such Mortgage Loans, which shall include, without limitation, the services described in this Agreement.

To the extent permitted by Applicable Requirements Subservicer will subservice the Mortgage Loans on a "Private Label" basis as described in this Agreement. Under the "Private Label" arrangement, all communications and documentation provided to Mortgagors under this Agreement shall contain (and/or refer to) the name of Owner/Servicer. Subservicer shall display Owner/Servicer's name, trademarks and/or service marks, as applicable as if the Services hereunder are being provided directly by Owner/Servicer to Mortgagors. There shall be no reference to Subservicer or any other entities, provided, however, that where Applicable Requirements require that Subservicer disclose its name, Subservicer may orally identify itself, or display its name in the least conspicuous manner permitted by such Applicable Requirements. Owner/Servicer authorizes Subservicer to use Owner/Servicer's logo, letterhead, service marks

and trademarks to perform the Services and shall display same pursuant to Owner/Servicer's written directions and guidelines. Nothing herein grants Subservicer any right, title, or interest in Owner/Servicer's logos, marks or trademarks. Subservicer will not at any time during or after this Agreement register, attempt to register, or claim any interest in, any of Owner/Servicer's logos, marks, and/or trademarks.   In order to accommodate Private Label subservicing, Owner/Servicer must take all steps necessary to secure a subscriber code with all credit reporting bureaus that will allow Subservicer to report delinquencies to the credit reporting bureaus in Owner/Servicer's name.

Notwithstanding any provision in this Agreement to the contrary, Subservicer shall not have any liability for any breach under this Agreement resulting from any incorrect information provided by Owner/Servicer or on Owner/Servicer's behalf with respect to the Mortgage Loans. Subservicer shall promptly notify Owner/Servicer if it becomes aware of any incorrect or missing information or documents relating to any Mortgage Loan to the extent material to the servicing of a Mortgage Loan and compliance with Subservicer's obligations hereunder.

Subservicer may, from time to time, request instruction or direction from Owner/Servicer with respect to the performance of the services hereunder, and, promptly following receipt of such request, Owner/Servicer shall provide reasonable instruction or direction to Subservicer; it being agreed that such requests shall not be made in connection with routine servicing issues, but, instead, are intended to be made primarily in circumstances in which one or more competing alternatives are available to Subservicer.   Should an issue arise relative to the subservicing of a Mortgage Loan, and Owner/Servicer is presented alternatives for resolution of any matter relative to the servicing of any Mortgage Loan by Subservicer, under this Agreement, and fails to respond or communicate with Subservicer, then Subservicer may act in its reasonable business judgment to resolve the issue.   Further, should Subservicer consider pursuing an alternative that may require additional costs to be incurred, additional Servicing Advances or P&I Advances to be made, or additional time to be spent, or where Subservicer believes resolution may be achieved by and/or within the best interests of the Investor, the Owner/Servicer, the Mortgagor or otherwise to engage in action which would readily facilitate such resolution, then Subservicer shall make that and any like determination, in Subservicer's sole discretion.  If such instructions are provided (i) in writing and (ii) by personnel designated by Owner/Servicer to have authority with respect to the subject matter of such written instructions or directions, Subservicer may rely on all such instructions and directions.

The parties agree that FNMA's guidelines will be the default guidelines, applicable as to any servicing function to be performed by Subservicer on all Mortgage Loans where a separate Investor Guideline is otherwise not applicable, and/or in the absence of no investor-specific guidelines. Subservicer is not responsible for Damages that arise from any inconsistencies between, or ambiguities in, the Applicable Requirements, as amended, modified or supplemented from time to time, or other costs and expenses which, but for this Agreement, would have been incurred by Owner/Servicer. Any service not described in this Agreement to be performed by Subservicer is exclusively the responsibility of the Owner/Servicer. Notwithstanding any provision in this Agreement to the contrary, any information provided to

Owner/Servicer by Subservicer regarding alternatives or inconsistencies in Applicable Requirements shall be given on an "AS-IS" basis and Subservicer shall not become liable to Owner/Servicer for Owner/Servicer's use or reliance on the information.

**Section 2.2.**    Compliance; Standard of Care.

Subservicer will endeavor to perform its Services: (i) in a good, timely, efficient, professional, and workmanlike manner; (ii) using personnel who are fully-familiar with the technology, processes, and procedures to be used to deliver the services; (iii) with at least the degree of quality, performance, and responsiveness commensurate to accepted industry standards; and (iv) in compliance and accordance with the provisions of this Agreement and Applicable Requirements.

If Owner/Servicer requests any changes to this Agreement that are the result of applicable federal regulations or Investor instructions, enacted after the Effective Date of the within Agreement, Subservicer will use its best efforts to comply with said changes in a timely manner.

Without limiting the rights and obligations of the parties hereunder, if Subservicer determines that a material change to the Applicable Requirements prevents it from performing the Services, it shall notify Owner/Servicer of the same and the parties shall work together in good faith to determine an appropriate resolution.  A "material change" for the purposes of this Section shall mean a change that is not currently known or reasonably anticipated and either (1) legally prohibits the Subservicer from performing its duties under this Agreement; or (2) requires a systemic change to the policies and procedures of Subservicer that is reasonably anticipated to require more than ninety (90) days to implement.

**Section 2.3.**    Engagement of Vendors.

Subject to this Section 2.3, Subservicer may retain any vendors engaged by it in the ordinary course of business in accordance with general servicing practices and procedures and Applicable Requirements, in connection with the performance of its obligations under this Agreement.  Subservicer agrees to consider additional or replacement vendors to the extent Owner/Servicer provides Subservicer with adequate information to evaluate the proposed vendor, in light of Subservicer's vendor compliance, quality control and process requirements; it being understood that, at any time after the engagement thereof, Subservicer, in its reasonable discretion, may also terminate any such vendors that it has determined in its sole discretion and business judgment are no longer providing adequate services or otherwise are not compliant with Subservicer's practices, policies and procedures including, without limitation, the execution of Subservicer's standard retainer agreement.

Subservicer shall retain full responsibility under this Agreement for all services to be provided to Owner/Servicer regardless of whether Subservicer engages any vendors. Subservicer shall require all vendors, as a condition of their engagement, to agree to be bound by provisions substantially similar to those including in this Agreement, including without limitation the

requirement that such vendor comply with Applicable Requirements in the performance of their duties under their agreements with Subservicer. Subservicer shall conduct periodic reviews of its vendors. Upon the reasonable request of Owner/Servicer, Subservicer shall promptly address any concerns or issues raised by Owner/Servicer regarding any of Subservicer's vendors.

**Section 2.4.**    Procedure.

The procedures listed in this Section 2.4 are standard procedures applicable to Term Servicing Loans. Until the P&I of each Mortgage Loan is paid in full, unless this Agreement is sooner terminated pursuant to the terms hereof, and subject to all Applicable Requirements, Subservicer shall:

a. Collect from Mortgagors applicable payments of P&I, and applicable deposits for taxes, assessments and other public charges that are generally escrowed, hazard insurance premiums, flood insurance premiums as required, FHA insurance or PMI premiums, optional insurance premiums, and all other items, as they become due;

b. Accept payments of P&I and Escrow Payments only in accordance with the Mortgage Loan documents and Applicable Requirements. Deficiencies or excesses in payments shall be accepted and applied, or accepted and not applied, or rejected in accordance with Applicable Requirements;

c. Apply all payments of P&I and Escrow Payments collected from the Mortgagor, and maintain permanent mortgage account records capable of producing, in chronological order: the date, amount, distribution, installment due date or other transactions affecting the amounts due from or to the Mortgagor and indicating the latest outstanding balances of principal, escrow accounts, advances, and unapplied payments;

d. Pending disbursement, segregate, deposit and hold funds in Escrow Accounts and Custodial Accounts at an institution selected by Subservicer, the accounts of which are insured by the FDIC, in such manner as to show the custodial nature thereof, and so that Investor and each separate Mortgagor whose funds have been deposited into such account or accounts will be individually insured to the applicable limits under the rules of the FDIC. Subservicer's records shall show the respective interest of Investor and each Mortgagor in all such Escrow Accounts and Custodial Accounts. All funds collected for principal and interest shall be maintained by and carried in records of Subservicer as "trustee" for Investor, except as may otherwise be required by Applicable Requirements.

e. In Subservicer's sole discretion, as a Servicing Advance, pay interest on Mortgagors' escrow accounts that it maintains or controls pursuant to paragraph "d" above if any Applicable Requirement requires the payment of interest on such amounts to Mortgagors, and any payments made to this end remain subject to return to

Subservicer via Subservicer's monthly invoicing to Owner/Servicer, and as noted, will proceed in accordance with paragraph "i" below. As applicable, Subservicer will determine the amount of Escrow Payments to be made by Mortgagors and will furnish to each Mortgagor, at least once a year, an analysis of each Mortgagor's escrow account in accordance with Applicable Requirements;

f.  With respect to administering, monitoring, and remitting Taxes, Insurance and other Lienable Items: (i) For each Mortgage Loan, monitor and maintain accurate records on the status of Insurance and Lienable Items; (ii) The amount of coverage of hazard insurance and, if applicable, flood insurance shall be in accordance with Applicable Requirements. The mortgagee clause in any such insurance policy will be reflected as running to the benefit of Owner/Servicer, its successors and assigns. During the course of subservicing, the mortgagee clause in the hazard or flood insurance will read as follows:

> THE MONEY SOURCE INC.
> ISAOA/ATIMA
> P.O. BOX 1194
> SPRINGFIELD, OH 45501-1194

Subservicer will not maintain the original insurance policy for any Mortgage Loans. Owner/Servicer shall provide evidence of Insurance when necessary, and during the Term of this Agreement, Subservicer may keep an electronic copy of any policy.

g.  If Escrow Payments for the payments of Insurance or Lienable Items are required by the Mortgage and not waived or suspended, Subservicer shall obtain and pay from the Mortgagor's Escrow Account Deposits (i) Insurance premiums when due and (ii) all bills covered by the applicable life-of-loan guaranteed tax service contract ("Tax Service Contract") prior to the applicable penalty in a manner consistent with accepted servicing practices. When a Mortgagor's Escrow Account Deposits are insufficient to pay an Insurance premium or a Lienable Item when due, Subservicer shall proceed in accordance with paragraph "i" below.

h.  When Escrow Payments are not required by the Mortgage or have been waived or suspended, then, (i) upon notification to Subservicer by the tax service provider that a Lienable Item was not paid, (ii) if Subservicer otherwise has actual knowledge of the non-payment of a Lienable Item or a required Insurance premium, or (iii) the Mortgagor fails to timely supply Subservicer with renewal policies of Insurance and evidence of prepayment of related premiums, Subservicer will use commercially reasonable efforts to obtain from the Mortgagor, evidence of payment of the delinquent items and, if required, of the existence of required policies. If the Mortgagor fails to thereafter provide Subservicer with evidence of the payment of the delinquent item, Subservicer will proceed as set forth in paragraph "i" below.

i.  If a Mortgage Loan requires a Servicing Advance for the payment of a Lienable Item or an Insurance premium, Subservicer will pursuant to Section 2.11, either make such Servicing Advance or interim bill Owner/Servicer for such amount. Subservicer will seek reimbursement from the Mortgagor and unless collected by Subservicer from the Mortgagor prior, or paid by Owner/Servicer pursuant to an interim billing pursuant to Section 2.11, to Subservicer's next monthly invoice, Owner/Servicer shall reimburse Subservicer for all outstanding deficiencies, and any other Servicing Advances made by Subservicer to protect the security of Owner/Servicer and Investor, in accordance with Section 4.2 hereof. In addition, if permitted to do so under Applicable Requirements, Subservicer will establish fully funded Escrow Account Deposits for a Mortgage Loan at the earliest practicable time.

j.  If the Mortgagor fails to provide Subservicer with evidence of required Insurance, Subservicer will if necessary, "lender-place" lapsed hazard, windstorm and/or flood insurance in at least an amount sufficient to protect Investor's interest and in compliance with Applicable Requirements. Subservicer shall receive no fees or other consideration from the provider of such "lender-place" insurance

k.  Subservicer will take appropriate steps to recover Servicing Advances as quickly as Applicable Requirements permit. Unless collected by Subservicer prior to Subservicer's next monthly invoice, Owner/Servicer shall reimburse Subservicer for such Servicing Advances in accordance with Section 4.2 hereof.

l.  Subservicer will not be liable for any penalties, losses or Damages resulting from the nonpayment of taxes in a timely manner in the event a Tax Service Contract is not established prior to the relevant next due bill request cutoff date or if once a Tax Service Contract is established, if such nonpayment is due to invalid, inaccurate or missing data, taxes that were due within (60) sixty days of the closing of the Loan, or a failure of the tax service provider. In the event a Tax Service Contract has not been established prior to the relevant next due bill request cutoff date or Subservicer has been unable to verify the validity, accuracy or existence of the data with the tax service provider, Subservicer will use commercially reasonable efforts including review of information provided by the tax service provider to Owner/Servicer relating to those Mortgage Loans with respect to which Subservicer has commenced subservicing, to remit payment for taxes or such other recurring charges before any penalty date. For purposes of this Section, the term "bill request cutoff date" means the date by which the tax service provider must submit a request for bills for tax or other recurring charges to the relevant taxing authority.

m.  Maintain applicable FHA mortgage insurance, VA guaranty, PMI, or optional insurance, as applicable, in effect and properly transferred to Subservicer on the Transfer Date, provided, however, that Subservicer shall not be obligated to make a Servicing Advance for payment of any optional insurance premium; and

    n.  Ensure that improvements on a Mortgaged Property are insured pursuant to Investor requirements by a hazard insurance policy, if Escrow Payments are collected therefor, and a flood insurance policy, if required by Applicable Requirements.

**Section 2.5.**  <u>Other Services</u>**.**

    a.  Subservicer shall be responsible for further safeguarding Investor's interest in each Mortgaged Property: (i) If permitted by Applicable Requirements, order a property inspection within the appropriate timeframes allowed under the Applicable Requirements , and perform such other inspections as prudence and sound business judgment, in Subservicer's discretion, suggest; (ii) To the extent commercially reasonable, securing any Mortgaged Property found to be vacant or abandoned in accordance with Applicable Requirements where there has been no communication from the Mortgagor or the Mortgagor's representative advising Subservicer of a contrary occupancy status and reporting the occupancy status to the Investor; (iii) Whenever Subservicer receives actual notice of any liens, probate proceeding, tax sale, partition, local ordinance violation, condemnation or proceeding in the nature of eminent domain or similar event that would, in Subservicer's judgment, impair Investor's security, Subservicer shall notify Investor (where Owner/Servicer is the Investor such notice shall be within five (5) Business Days) and assist Investor or Owner/Servicer in undertaking appropriate action to preserve Investor's security; (iv) Notifying Owner/Servicer or, if required, Investor of any notices of non-routine litigation change in ownership, requests for partial releases, easements, substitutions, division, subordination, alterations, or waivers of security instrument terms and processing such matters in accordance with instructions received from Owner/Servicer;

    b.  Disbursing insurance loss settlements, including: (i) Receiving reports of insurance losses and assuring that proof of loss statements are properly filed; (ii) Authorizing the restoration and rehabilitation of the damaged property. If Owner/Servicer is named as an additional loss payee, Subservicer is hereby empowered to endorse any loss draft issued in respect of such claim in the name of Owner/Servicer; (iii) Collecting, endorsing and disbursing the insurance loss proceeds and arranging for progress inspections and payments, if necessary; (iv) Complying with all Applicable Requirements pertaining to settlement of insurance losses; (v) In general, complying with Applicable Requirements to assure that the priority of the Mortgage is preserved; and (vi) If special disaster procedures are issued by Investors or governmental agencies, Subservicer will release funds in accordance with those policies.

    c.  Subservicer shall promptly forward all request for assumptions, partial releases, easements, substitution, divisions or substantially similar requests to the Owner/Servicer for evaluations and response.

d.  Subservicer shall notify Owner/Servicer of written notice of any lien, bankruptcy, condemnation, probate proceeding, tax sale, local ordinance violation, or any other substantially similar issue to Owner/Servicer for evaluation and response. If a response is not received from Owner/Servicer in ten (10) calendar days Subservicer may take commercially reasonable actions to preserve the Loan and charge. Owner/Servicer on a per hour basis.

**Section 2.6.**    <u>Accounting and Investor Reporting</u>.

Subject to Applicable Requirements, Subservicer shall:

a.  Remit to each Investor, on a date and in a manner specified by Investor, amounts due to such Investor, to the extent such funds have been funded by Owner/Servicer. Subservicer will remit any Guaranty Fees that have been funded by Owner/Servicer in accordance with Applicable Requirements. Subservicer may, in its sole discretion, choose to make such advances as a P&I Advance or Servicing Advance if they have not been funded by Owner/Servicer;

b.  Make direct remittances to third parties to whom Investor has sold or assigned all or part of its interest in a Mortgage Loan, including the sale of participating interests therein, provided that this Agreement remains in full force and effect with respect to such Mortgage Loan and for which Subservicer receives a minimum of thirty (30) days' written notice of such sale or assignment. If following the sale or transfer, Subservicer must make more than one remittance per month with respect to a Mortgage Loan, Subservicer shall be entitled to its costs, which shall be considered a Servicing Advance, subject to all applicable RESPA servicing transfer requirements;

c.  Promptly deliver to Owner/Servicer any notice received by Subservicer from an Investor that instructs Subservicer to service-release any Mortgage Loan. Unless timely instructed otherwise by Owner/Servicer, Subservicer shall proceed in accordance with Investor's instructions. In the event Owner/Servicer instructs Subservicer to not proceed with Investor's instructions, Owner/Servicer agrees to hold Subservicer harmless for any action taken or claim brought against Subservicer by Investor, and from any losses or Damages, including reasonable attorneys' fees, resulting therefrom. To the extent any Mortgage Loan(s) is thereafter service-released in accordance with Investor's instructions, Subservicer shall be entitled to the payment by Owner/Servicer of the Transfer Fee as provided in Exhibit II attached hereto;

d.  Where Investors require interest paid through the end of the month although interest due from the Mortgagor is to the actual date of the pay-off, pay any uncollected interest due Investor subject to funding and/or reimbursement by Owner/Servicer of such amounts as P&I Advances. If funded by Subservicer, Owner/Servicer shall reimburse Subservicer for any such P&I Advances in accordance with Section 4.2;

e.  Not accept any prepayment of any Mortgage Loan except as specified, required or authorized by Applicable Requirements and by the terms of the Mortgage, nor waive, modify, release or consent to postponement on the part of the Mortgagor of any term or provision of the Mortgage Loan documents without the written consent of Investor; except for waiving a late fee which Subservicer shall have authority to do without approval from Owner/Servicer;

f.  Upon payment of a Mortgage Loan in full, and subject to Section 3.2 hereof, have prepared and file any necessary release or satisfaction documents, and continue subservicing of the Mortgage Loan pending final settlement, and refund amounts due the Mortgagor in accordance with Applicable Requirements;

g.  Make interest rate adjustments in compliance with Applicable Requirements and the Mortgage Loan documents to reflect the applicable movements of the applicable Mortgage Loan rate index. Subservicer shall deliver all appropriate notices required by Applicable Requirements and the Mortgage Loan documents regarding such interest rate adjustments including but not by way of limitation, timely notification to Investor, of the applicable date and information regarding such interest rate adjustment, the methods of implementation of such interest rate adjustments, new schedules of Investor's share of collections of principal and interest, and of all prepayments of any Mortgage Loan hereunder by Mortgagor;

h.  Perform such other customary duties, furnish copies of standard reports and execute such other documents in connection with its duties hereunder as Owner/Servicer and Investor from time to time reasonably may require. All reports deemed standard under this Section are contained in Subservicer's system, SIME; and

i.  Use commercially reasonable efforts to provide special reports, data files, or related services to Owner/Servicer, Investor or any third party, at the request of Owner/Servicer. Subservicer shall thereupon bill Owner/Servicer for such reports, data files or related services in accordance with Exhibit II, as applicable, or in accordance with a separate fee to be determined in advance by Owner/Servicer and Subservicer, and same shall be paid in accordance with Section 4.2.

**Section 2.7.**   <u>Delinquency Control.</u>

Subservicer shall, in accordance with Applicable Requirements:

a.  Maintain a delinquent mortgage servicing program which shall include an adequate accounting system that indicates the existence of delinquent Mortgage Loans, a procedure that provides for sending delinquent notices, assessing late charges, and addressing inadequate payments, and a procedure for the individual analysis of distressed or chronically delinquent Mortgage Loans;

b. Maintain a collection and borrower outreach department, which includes an online automated reporting system, that substantially complies with Applicable Requirements; and

c. Upon the request of Owner/Servicer and Investor, administer the foreclosure or other acquisition of the Mortgaged Property relating to any Mortgage Loan, process claims for any applicable mortgage insurance and until the transfer of such Mortgaged Property to Investor, private mortgage insurer or FHA, VA, or USDA as applicable, protect such property from waste and vandalism. Subservicer will have title to the Mortgaged Property conveyed in the name designated by Investor. Foreclosure administration shall be done in accordance with Applicable Guidelines. In any such actions, Subservicer shall use its existing network of attorneys.

**Section 2.8.**    <u>Real Estate Owned</u>**.**

In the event that title to a Mortgaged Property is acquired in foreclosure, redemption, ratification or by deed in lieu of foreclosure, the deed or certificate of sale shall be taken in the name of Investor or its designee (or as otherwise required by Applicable Requirements).

Subservicer shall transfer REO to the Investor in such manner and at such time as required under Applicable Requirements. Prior to transferring any REO to the Investor, Subservicer shall comply with all Applicable Requirements related to the maintenance of such property. Subservicer shall maintain on each REO monthly fire and hazard insurance with extended coverage in an amount that is at least equal to the maximum insurable value of the improvements that are a part of such property and, to the extent required and available under the national flood insurance program, flood insurance, all in the amounts required under Applicable Requirements. Owner/Servicer shall be responsible for obtaining and maintaining any liability coverage insuring Owner/Servicer. Subservicer shall be entitled to the monthly subservicing fee with respect to REO indicated in Exhibit II to the extent servicing responsibilities with respect to such REO is not transferred to the Investor or another party.

If Owner/Servicer requests Subservicer in writing to do so, Subservicer shall, for the additional fee (the "Marketing REO Fee" set forth on Exhibit II), use reasonable efforts to dispose of the REO as soon as possible. Each REO Disposition shall be carried out by Subservicer at such price and upon such terms and conditions as are customary and reasonable in the industry the proceeds from the sale of the REO shall be promptly deposited in the Custodial Account. As soon as practical thereafter, the expenses of such sale shall be paid and Subservicer shall reimburse itself for any outstanding Servicing Advances related to the REO. The Marketing REO Fee shall be payable to Subservicer by Owner/Servicer at the time of REO Disposition or upon transfer of servicing responsibilities for an REO prior to REO Disposition.

**Section 2.9.**    Books and Records; Audit Rights.

Subservicer will keep records in accordance with industry standards pertaining to each Mortgage Loan, and such records shall be the property of Owner/Servicer and upon termination of this Agreement shall be delivered to Owner/Servicer at Owner/Servicer's expense.

Subservicer shall maintain the Mortgage Servicing Files and Mortgage Loan Documents in its possession pursuant to Applicable Requirements. Any Mortgage Loan Documents that are in the possession of Subservicer shall be held in secure and fireproof facilities or storage areas in accordance with customary standards for the custody of similar documents and Applicable Requirements. Subservicer shall conduct periodic audits of the Mortgage Servicing Files and Mortgage Loan Documents in its possession, and shall allow Owner/Servicer and its agents to conduct such audits, as reasonably necessary to confirm Subservicer's recordkeeping, storage and security practices with respect to such files and documents. Subservicer shall only release Mortgage Servicing Files and Mortgage Loan Documents in its possession pursuant to this Agreement and Applicable Requirements and shall deliver any such documents upon written request. Subservicer shall cooperate in a commercially reasonable manner, with Owner/Servicer in connection with clearing any document exceptions with any third parties consistent with Applicable Requirements and the direction of Owner/Servicer.

Subservicer shall cause a certified public accountant selected and employed by it to provide Owner/Servicer not later than ninety (90) days after the close of Subservicer's fiscal year, or as otherwise agreed by the parties, with a certified statement of Subservicer's financial condition as of the close of its fiscal year. Upon reasonable request Subservicer will provide Owner/Servicer with a summary of Subservicer's business continuity plan. Any additional requests for Mortgage Loan audit or confirmations to be performed by Subservicer's audit firm on Owner/Servicer's Mortgage Loans, shall be at Owner/Servicer's sole expense.

Subservicer shall provide Owner/Servicer with reasonable, guided access to its facilities, employees, servicing systems, and other computer and technology systems. Subservicer shall also provide to the regulatory authorities supervising Owner/Servicer or its affiliates and the examiners and supervisory agents of such authorities, access to the documentation required by Applicable Requirements of such authorities supervising Owner/Servicer or its affiliates with respect to the Mortgage Loans. Such access provided to Owner/Servicer or its affiliates or their regulators shall be afforded at no charge, but only upon reasonable prior written request and during normal business hours.

**Section 2.10.**    Insurance.

Subservicer shall maintain in effect at all times and at its cost, a blanket fidelity bond and an errors and omission policy in accordance with Applicable Requirements and will make

insurance certificates available evidencing the existence of such coverage to Owner/Servicer upon request.

**Section 2.11.**  Advances.

a.  Servicing Advances.

Subservicer shall not be obligated to fund any particular Servicing Advances. Subservicer may, in its sole discretion, from time to time during the term of this Agreement, and for ease of administration, make Servicing Advances when in its reasonable business judgment it is necessary or advisable to do so, and/or otherwise required under Applicable Requirements, and Subservicer shall have no obligation to notify Owner/Servicer before making any Servicing Advance.  All Servicing Advances made by Subservicer, are charged-back to Owner/Servicer, and due as payable, on the next Subservicer invoice.

b.  P&I Advances.

Subservicer shall have no obligation to remit any funds, nor make any P&I Advance, to an Investor in excess of amounts actually collected by Subservicer. Subservicer shall remit such funds only upon funding by Owner/Servicer of any required remittance. To the extent the funds in the P&I Custodial Account would be insufficient, Subservicer shall notify Owner/Servicer of such impending shortfall and of the amount that is necessary to make a required remittance or disbursement, not later than one (1) Business Day before Subservicer requires the funds. Owner/Servicer shall immediately deposit such amount into the appropriate P&I Custodial Account. In the event Subservicer makes a P&I Advance to an Investor and the applicable P&I Custodial Account has not been funded for such P&I Advance by Owner/Servicer, Owner/Servicer shall reimburse Subservicer within one (1) Business Day of receiving notice of such P&I Advance having been made.  Subservicer is not required or obligated to make any shortfall advance

c.  Guarantee Fees

Subservicer shall have no obligation to fund or advance Guarantee Fees. Owner/Servicer shall fund any Guarantee Fees to an account designated by Subservicer forty-eight (48) hours prior to Subservicer's delivery of funds to the mortgage-backed securities provider.

d.  Interim Billing and Reimbursement of Servicing Advances and P&I Advances.

In addition to provisions elsewhere in this Agreement, Subservicer, in its sole discretion, may at any time bill Owner/Servicer for Servicing Advances that are then outstanding and for Servicing Advances that Subservicer anticipates Subservicer will make prior to the next month end. Any such invoice shall be payable within five (5) Business Days of Owner/Servicer's receipt.

Subservicer shall also be entitled to be reimbursed for all Servicing Advances and P&I Advances made by Subservicer pursuant to this Agreement on a monthly basis by netting such

amounts as part of the amounts to be remitted to Owner/Servicer each month or if funds are insufficient to be reimbursed for such amounts in full, by payment from Owner/Servicer, all as further described in Section 4.1. Subservicer shall provide Owner/Servicer with reasonable and customary documentation evidencing Servicing Advances and P&I Advances made by Subservicer.  Such reimbursement shall occur under ACH, as provided for within this Agreement under Sections 3.1(l) and 4.2, accordingly.

       e.   Recovery of Servicing Advances and P&I Advances from Mortgagors.

Subservicer shall use commercially reasonable efforts to collect and recover from the Mortgagors, in accordance with Applicable Requirements, all Servicing Advances & P&I Advances made by Subservicer or any prior subservice. When permissible under Applicable Requirements, the recovery of such advances shall be available to first reimburse Subservicer for unreimbursed advances funded by Subservicer and the balance of such recovery shall be available to reimburse Owner/Servicer for unreimbursed advances previously reimbursed by Owner/Servicer. Subservicer shall provide Owner/Servicer with a detailed loan level report in a format mutually acceptable to the parties setting forth on a loan level and aggregate basis all Servicing Advances & P&I Advances made or reimbursed during the related reporting period and the advances outstanding on a cumulative basis for each Mortgage Loan. Subservicer shall promptly notify Owner/Servicer in the event it has determined that any outstanding advances made with respect to a Mortgage Loan are nonrecoverable from related proceeds on the Mortgage Loan and shall take all commercially reasonable efforts to ensure that Owner/Servicer is fully reimbursed for outstanding Servicing Advances & P&I Advances upon the liquidation of the related Mortgage Loan. Subservicer shall cooperate in good faith with Owner/Servicer to pursue full reimbursement of outstanding Servicing Advances & P&I Advances and shall immediately notify Owner/Servicer upon becoming aware that any such reimbursement is at risk.

**Section 2.12.**   Procedural Modifications Applicable to Interim Serviced Mortgage Loans.

If a Mortgage Loan is serviced as an Interim Serviced Mortgage Loan, the processes and procedures employed by Subservicer shall be modified based upon the choices made by Owner/Servicer from the standard or optional Services offered by Subservicer related to Interim Serviced Mortgage Loans.

**Section 2.13.**   Notice that a Mortgage Loan is no Longer an Interim Serviced Mortgage Loan.

In the event Subservicer subservices an Interim Serviced Mortgage Loan for a longer period than agreed by Subservicer and Owner/Servicer, or Owner/Servicer notifies Subservicer that an Interim Serviced Mortgage Loan cannot continue as an Interim Serviced Mortgage Loan as defined herein, such Mortgage Loan shall be administered on exception basis and on such terms as may be mutually agreed upon by the parties.

**Section 2.14.**  <u>Process Changes and Other Services</u>**.**

From time to time during the term of this Agreement, Owner/Servicer may request Subservicer to implement process changes and/or perform services in relation to the subservicing of the Mortgage Loans that are not contemplated by or included within this Agreement The implementation of such processes or the performance of such services shall be governed by a Statement of Work ("SOW") as described in this Section.

a.  The following definitions shall apply for the purposes of this Section:

<u>SOW Services</u>: Services which may include but are not limited to, consulting, custom programming, design or modification of reports, project management, implementation, and other process changes listed on one or more SOWs executed by Owner/Servicer and Subservicer and which SOWs are incorporated into and for part of the Agreement.

<u>Work Product</u>: Includes, without limitation, all designs, discoveries, creations, works, work in progress, deliverables, inventions, products, computer programs, procedures, improvements, developments, drawings, notes, documents, business methods, information and materials made, conceived or developed by Subservicer alone or with others which result from the SOW Services.

b.  Owner/Servicer may from time to time initiate a request that Subservicer provide SOW Services. If Subservicer agrees to provide SOW Services, Subservicer will prepare a proposed SOW containing, without limitation: (i) A description of the SOW Services to be performed including all requirements, and requested deliverables; (ii) The estimated date for delivery of such SOW Services, if applicable; and (iii) The rates, prices, and estimated fees and compensation for such SOW Services, if any.

c.  Upon approval by Subservicer and Owner/Servicer of an SOW, Subservicer will provide Owner/Servicer with SOW Services set forth in the SOW. Subservicer will use commercially reasonable efforts to meet the estimated delivery date set forth in the SOW.

d.  All such Work Product shall at all times be and remain the sole and exclusive property of Subservicer, or applicable third party engaged by Subservicer.

e.  In the event any express conflict or inconsistency exists between the provisions of an SOW and the provisions of this Agreement, the provisions of the SOW will control with respect to the interpretation of that SOW, provided, however, that the provisions of the SOW will be so construed as to give effect to the applicable provisions of this Agreement to the fullest extent possible.

f.  Owner/Servicer and Subservicer may at any time agree to additions, deletions, modification or other deviations from the SOW Services ("Changes"). All such Changes shall only be made pursuant to a written change order or other modification to the SOW.

g.  Subservicer will invoice Owner/Servicer for services and expenses, as provided in the SOW and any Changes.

h.  The total liability of Subservicer to Owner/Servicer, for all claims whatsoever related to an SOW or the SOW Services provided thereunder, including any cause of action sounding in contract, tort or otherwise shall be limited to the actual damages and shall not exceed the total amount of all fees paid through the date of claim to Subservicer by Owner/Servicer under the SOW. In no event shall Subservicer be liable for consequential damages of the Owner/Servicer.

**Section 2.15.**  <u>Solicitation</u>**.**

Subservicer shall not use Confidential Information to solicit a Mortgagor under this Agreement. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall prevent Subservicer from engaging in marketing campaigns, solicitations, or strategies that are not aimed at a particular Mortgagor, or prevent TMS from utilizing strategies in a marketing campaign or solicitation effort that do not utilize Confidential Information under this Agreement. Subservicer shall be entitled, without prior written consent of Owner/Servicer, subject to Applicable Requirements, to solicit Mortgagors for products or processes that facilitate normal servicing activities, such as "phone pay".

**Section 2.16.**  <u>HAMP</u>.

Subservicer acknowledges that the Mortgage Loans may include mortgage loans modified under HAMP and Mortgage Loans that may now or in the future be subject to other local, state or federal government mortgage-related programs that currently exist or may exist in the future. If applicable, Subservicer confirms that it is aware of the special requirements for such Mortgage Loans that currently exist or may exist in the future and Subservicer agrees to assume the additional responsibilities associated with servicing such Mortgage Loans and to take such actions as are necessary to comply with such programs. With respect to each Mortgage Loan subject to a trial payment period pursuant to HAMP as of the related Transfer Date, Subservicer shall take all actions required of a servicer participating in HAMP to complete such trial payment period and implement the related loan modification. Subservicer will cooperate in good faith in connection with any audit, inspection, review, or investigation of Subservicer's compliance with or reporting under HAMP or other government program related to the Mortgage Loans.

**Section 2.17.**  <u>Sales to Third Parties</u>**.**

In the event Owner/Servicer sells some or all of the Mortgage Loans to an Investor that is not an Agency while retaining the related servicing rights, Subservicer agrees to continue to service such Mortgage Loans under the terms of this Agreement.  Owner/Servicer agrees that, to the extent the related Investor requests material changes to the subservicing or reporting requirements the Subservicer shall have the right to adjust the subservicing compensation for the affected Mortgage Loans.

**Section 2.18.**  <u>Disaster Recovery Plan</u>.

Subservicer shall maintain its current business continuity plan that addresses the continuation of services if an incident (act or omission) impairs or disrupts Subservicer's obligation to provide the Services. Subservicer agrees to provide Owner/Servicer (and any applicable regulatory agencies having jurisdiction over Owner/Servicer) with a copy of its entire business continuity plan upon Owner/Servicer's request. Subservicer warrants that the business continuity plan conforms to Applicable Requirements and generally accepted industry standards for business continuity planning, which include, but are not limited to, recovery strategy, loss of critical personnel, restoring access to documents and data to Owner/Servicer, documented recovery plans covering all areas of operations pursuant to this Agreement, vital records protection, and testing plans. Subservicer will comply with the business continuity plan during the term of this Agreement. Subservicer shall provide to Owner/Servicer on an annual basis, or in the instance of any change to the business continuity plan.

**Section 2.19.**  <u>Non-Standard Portfolios</u>.

For Mortgage Loans with unique servicing characteristics that are not shown and priced on Exhibit I attached hereto, the parties acknowledge that additional and/or different servicing requirements may be appropriate.  The parties shall work together in good faith to establish written terms for the servicing of these types of loans.  Any agreement on the servicing provisions for any non-standard portfolio, including pricing for said services, shall be memorialized as an amendment or addendum to this Agreement, or in an SOW.  If the parties cannot agree upon the terms for servicing a non-standard portfolio, Subservicer will have the right to refuse to subservice such Mortgage Loans.

**Section 2.20.**  <u>Policies and Procedures</u>.

Subservicer shall maintain policies, procedures and training aligned with Applicable Requirements, including without limitation policies and procedures for internal quality control.

**Section 2.21.**  Evidence of Compliance.

Subservicer, at Owner/Servicer's written request, shall provide within twenty (20) Business Days: (i) an attestation of Subservicer's compliance with all Applicable Requirements; (ii) a copy of its internal policies and procedures; (iii) a copy of its internal training materials; (iv) a copy of its audit reports subject to any applicable limitations on Subservicer's ability to share these reports and reviews, security reviews, and examination reports, subject to the confidentiality requirements contained therein; and/or (v) provide Owner/Servicer with access to Subservicer's books and records relating to or evidencing Subservicer's compliance with Applicable Requirements Subservicer shall promptly advise Owner/Servicer as to any agency of judicial finding or other determination of non-compliance with Applicable Requirements by Subservicer or any employee of Subservicer relating to Subservicer's obligations under the Agreement.

**Section 2.22.**  SFLS Loan Sale.

If Owner/Servicer intends to effectuate one or more sales of Mortgage Loans pursuant to the FHA Single Family Loan Sale Initiative ("SFLS"), the Parties agree to negotiate a separate SOW and fee schedule, to address all charges for Owner/Servicer relative to the administration of subservicing for applicable Mortgage Loans in this Section. Subservicer will work diligently with Owner/Servicer to prepare Mortgage Loans for SFLS sale. Subservicer will dedicate appropriate staffing to facilitate the preparation and submission of Mortgage Loans for such sales, and cooperate with Owner/Servicer, following the sale and transfer of Mortgage Loans through SFLS, to address any issues relating to such sales.

## ARTICLE III.
### AGREEMENTS OF OWNER/SERVICER

**Section 3.1.**  Documentation.

The Owner/Servicer shall or shall cause the prior subservicer to provide all necessary personnel and resources in order to cooperate with Subservicer in providing timely responses to inquiries from Mortgagors, to the extent the information provided with respect to the Mortgage Loans is insufficient to allow the Subservicer to adequately respond without such cooperation.

With respect to GNMA Mortgage Loans, the Subservicer shall hold any portion of the Mortgage Servicing Files and Mortgage Loan Documents as are in the possession of the Subservicer in trust, on behalf of the Owner/Servicer for the benefit of GNMA and the registered holders of the related GNMA mortgage-backed security. The Subservicer's possession of any portion of such documents shall be at the will of the Owner/Servicer for the sole purpose of facilitating the servicing of the Mortgage Loans pursuant to this Agreement, and such retention and possession by the Subservicer shall be in a custodial capacity only. Any portion of the Mortgage Servicing Files and Mortgage Loan Documents retained by the Subservicer shall be

segregated from all assets of the Subservicer and shall be identified to reflect clearly the interest of GNMA and the registered holders of the related GNMA mortgage-backed securities. The Subservicer shall release from its custody any portion thereof only in accordance with the terms of this Agreement and the GNMA Guidelines.

With respect to the GNMA Mortgage Loans, it shall be the responsibility of the Owner/Servicer to obtain all required certifications from the custodian as promptly as feasible; provided, however, that the Owner/Servicer shall obtain the final certification recertification after the date of issuance of the related GNMA mortgage-backed security and subject to Applicable Requirements. Any letter of credit that must be posted is the sole responsibility of Owner/Servicer. Further, it shall also be the responsibility of Owner/Servicer to conduct annual audits of the custodian.

Subservicer shall provide Owner/Servicer with the Servicing Transfer Instructions, as same may be updated from time to time, a copy of which is attached hereto as Exhibit III. At its sole cost and expense, Owner/Servicer shall provide Subservicer (or such entities designated by Subservicer) with:

a. By the dates indicated, documentation, data or such other information specified in the Servicing Transfer Instructions and in a format required of all servicers by the CFPB, as applicable, to Subservicer or to such entities designated by Subservicer. If the information required by Subservicer in the Servicing Transfer Instructions is not timely provided, or contains missing, inaccurate or invalid data, or if the characteristics of the portfolio or any Mortgage Loan materially differ from those Owner/Servicer offered to Subservicer to subservice hereunder, Subservicer may refuse to accept for subservicing those mortgage loans which cause the material differences in the portfolio or adjust the fees contained in Exhibit II, as agreed by Owner/Servicer, as to all or some mortgage loans and accept the remaining Mortgage Loans for subservicing. In the event Owner/Servicer requests Subservicer to subservice mortgage loans under this Agreement that are subject to a servicing agreement which Subservicer has not previously reviewed and approved, Owner/Servicer shall submit a copy of such servicing agreement to Subservicer for review at least thirty (30) days prior to the requested Transfer Date. Based upon its review, Subservicer may refuse to accept such Mortgage Loans for subservicing under this Agreement or may adjust the fees set forth in Exhibit II, as agreed by Owner/Servicer, as to such Mortgage Loans and accept the mortgage loans for subservicing. Subservicer shall furnish Owner/Servicer with written support for its denial to service, any fee adjustment and any material process or risk differences;

b. Electronic copies of any applicable documents or records which are necessary or appropriate for Subservicer to conduct the subservicing of the Mortgage Loans, including, without limitation, those set forth in the Servicing Transfer Instructions. In addition, upon request by Subservicer, Owner/Servicer shall provide Subservicer with an electronic copy of the original Note, an electronic copy of the recorded

Mortgage, electronic copies of recorded assignments, any title policy, and an electronic copy of the original mortgage insurance certificate or VA Mortgage Loan guaranty certificate, if necessary to complete a satisfaction or foreclosure action of a Mortgage Loan, complete Loss Mitigation efforts, or for any other purpose if required by Subservicer to properly administer and service the Mortgage Loan. Owner/Servicer acknowledges and agrees that Subservicer is not responsible for obtaining, holding, and/or safeguarding any original Mortgage Loan documents, even if delivered to Subservicer. Subservicer shall only accept electronic copies of all Mortgage Loan documents to conduct the subservicing of the Mortgage Loans, and will not be responsible for any originals sent;

c.    Reasonably complete and reasonably accurate electronic data and documentation for each Mortgage Loan submitted hereunder to sufficiently enable Subservicer to place and continue to subservice the Mortgage Loan on its computer system;

d.    Prior to the release of notices to the Mortgagor set forth in Section 3.4 of this Agreement, a complete listing of any Mortgage Loans where the mortgage payment is inclusive of an optional insurance premium. This list will also provide the name of the insurance company; type of insurance coverage; premium amount; and the name and telephone number of the individual at Owner/Servicer's firm or affiliation knowledgeable as to such coverage;

e.    Adequate electronic evidence that a hazard insurance policy is in force for each Mortgage Loan delivered to Subservicer for subservicing and all notices regarding the various hazard insurance policies. Further, Owner/Servicer agrees to hold Subservicer harmless from any losses or Damages caused by insufficient evidence of hazard insurance coverage delivered to Subservicer or any losses or Damages which occurred during a lapsed policy prior to delivery of the Mortgage Loans to Subservicer for subservicing;

f.    With respect to all closed end, first lien Mortgage Loans, Owner/Servicer shall, at Owner/Servicer's sole cost and expense, transfer any existing tax service contracts to Subservicer and provide Subservicer with an electronic file identifying (A) tax type, payment frequency, payee code, tax amount last paid, next due date, parcel number, legal description, previous servicer's name, and (B) each Tax Service Contract, if any, by contract number. If a Tax Service Contract is not in existence or such tax service contract is not guaranteed or transferable to Subservicer, Subservicer shall obtain a tax service contract for such Mortgage Loans on behalf of Owner/Servicer. For each Tax Service Contract obtained by Subservicer Owner/Servicer shall pay Subservicer a fee set forth on Exhibit II of this Agreement;

g.    Life-of-loan flood certification contract from an issuer acceptable to Subservicer. If a Mortgage Loan is covered by a transferable life-of-loan real estate flood certification

contract, Owner/Servicer shall promptly transfer, or cause to be transferred, such contract to Subservicer;

h.   To the extent necessary to comply with Applicable Requirements, and only upon the prior specific written request from Subservicer for each such document, copies of most recent FNMA, FHLMC, FHA, GNMA, USDA, HUD claims, VA and third-party audits related to mortgage loans for review;

i.   Copies of most recent audited financial statements, and annual financial statements thereafter within ninety (90) days of year-end, throughout the term of this Agreement;

j.   The name and address of all document custodians. All costs and expenses of said document custodians (including, without limitation, those resulting from a change of document custodian) shall be the responsibility of Owner/Servicer; and

k.   Funds in an amount necessary to properly fund the Mortgagors' escrow accounts.

l.   A completed ACH authorization allowing Subservicer to credit and debit a bank account of Owner/Servicer. Such account shall maintain a minimum balance exceeding the average of one (1) month's subservicing fees, Servicing Advances, and Guarantee Fees, as measured by the average over the previous three (3) months. Subservicer shall, in its reasonable discretion, have the option to approve or reject the designated bank account when it is initially selected, and upon reasonable belief that the account doesn't contain the necessary minimum balance. Should the designated account change, Owner/Servicer agrees to notify Subservicer and provide a new authorization for the changed account.

m.   Out of reasonable business necessity, Subservicer, at any time, may require a limited Power of Attorney for one or more services conducted, including but not limited to those referenced in Section 2.5, and any other applicable section where deemed necessary by Subservicer.

**Section 3.2.**    <u>Pay-off of Mortgage Loan</u>.

Upon pay-off of a Mortgage Loan, Subservicer will request the Mortgage Loan documents from the custodian, Investor, or Owner/Servicer, as the case may be, and upon receipt of same will prepare the appropriate discharge/satisfaction documents. If Owner/Servicer has provided Subservicer with a Corporate Resolution delegating authority to Subservicer or Subservicer's agent to execute such discharge/satisfaction documents on behalf of Owner/Servicer, Owner/Servicer and Subservicer shall agree on procedures to enable Subservicer to execute such discharge/satisfactions on behalf of Owner/Servicer in a timely fashion to ensure compliance with Applicable Requirements. Otherwise, Subservicer will forward the documents to

Owner/Servicer, who shall execute and return such discharge/satisfaction document to Subservicer in a timely manner that permits the recording thereof in accordance with Applicable Requirements. In lieu of returning such documents to Subservicer, Owner/Servicer may process the discharge/satisfaction of the Mortgage. In the event that Owner/Servicer does not return such documents to Subservicer in a timely manner, Subservicer assumes no liability for any penalty that may be imposed for failure to discharge or cancel the Mortgage in accordance with any Applicable Requirement and in such case Owner/Servicer shall reimburse Subservicer for any fee, expense or penalty that Subservicer may incur in connection with any such discharge, cancellation, or satisfaction as a result of Owner/Servicer's or Investor's failure to deliver necessary documents timely as specified herein.

**Section 3.3.**     Further Notification.

Owner/Servicer shall provide Subservicer, upon delivery of each Mortgage Loan submitted for subservicing, with specific information required in the Servicing Transfer Instructions regarding Investor of such Mortgage Loan. If a Mortgage Loan delivered to Subservicer is later sold, with servicing retained by Owner/Servicer, Owner/Servicer will promptly notify Subservicer of the sale in writing, and will deliver a written copy of the new Investor's purchase advice or funding detail report by facsimile, e-mail or overnight mail immediately thereafter. Subservicer will then reflect the new Investor in its records, however, any penalty for late reporting, remittances, etc. imposed by such new Investor which is due to a delay by Owner/Servicer in notifying Subservicer of the purchase of the Mortgage Loan(s), shall be the responsibility of Owner/Servicer.

During the term of this Agreement, Owner/Servicer shall provide Subservicer with all notices, correspondence, subpoenas, summonses and other items immediately upon receipt of sale by Owner/Servicer that relate to the Mortgage Loans. Subservicer shall not be responsible for any losses, Damages, costs or penalties incurred by Owner/Servicer, Investor or third parties for the failure of Owner/Servicer to provide Subservicer with such documents as required.

**Section 3.4.**     Notices.

By no later than thirty (30) days prior to the scheduled Initial Transfer Date and the any subsequent date scheduled to be the date of a Bulk Servicing Transfer, Owner/Servicer shall deliver or cause to be delivered to Subservicer for approval a joint form or joint forms of a Mortgagor notification letter in connection with the transfer of subservicing responsibilities for the related Mortgage Loans by Subservicer. The contents of the notice shall comply with Applicable Requirements, specifically but not limited to, the Real Estate Settlement Procedures Act. Not less than fifteen (15) days prior to the scheduled Transfer Date or such later date as permitted by Applicable Requirements, Owner/Servicer shall mail, or cause to be mailed, the approved form of notification to the Mortgagors of the transfer of the servicing responsibilities for the related Mortgage Loans. The expense of the preparation, printing and mailing of such notices shall be borne by Owner/Servicer. Owner/Servicer also shall, at its expense, notify and instruct or cause to be notified and instructed the applicable tax service provider with regard to

the Mortgage Loans, the custodian of the Mortgage Loan files, and all insurers to deliver all tax bills, payments, notices and insurance statements, as applicable, to Subservicer on and after the applicable Transfer Date.

**Section 3.5.**    Instructions to Subservicer.

Owner/Servicer shall provide instructions to Subservicer in accordance with Section 2.5 hereof regarding the processing of requests for partial releases, easements, substitutions, division, subordination, alterations, or waivers of security instrument terms.

**Section 3.6.**    Corporate Resolution.

Owner/Servicer shall furnish Subservicer with a fully executed Corporate Resolution and other documents necessary or appropriate to enable Subservicer to carry out its subservicing and administrative duties under this Agreement.

**Section 3.7.**    MERS Administration.

a.  Owner/Servicer shall maintain a MERS quality assurance plan to ensure compliance with all MERS requirements;

b.  Upon being designated as Owner/Servicer's Subservicer for the Mortgage Loans on MERS System, Subservicer shall be responsible for timely updating the MERS System in accordance with MERS rules and regulations.

c.  Notwithstanding the above paragraphs, it is the intent of the parties under this Agreement that the administration of information on the MERS System for MERS Loans is a joint and collaborate effort of the parties and, as such, the parties shall notify one another of any errors the other discovers within thirty (30) calendar days.

**Section 3.8.** Misdirected Payments.

If any Mortgagor makes a payment to Owner/Servicer under a Mortgage Loan after the Transfer Date for the related Mortgage Loan, which payment should have been made to Subservicer, including, without limitation, a full payoff or refinance of the Note, Owner/Servicer agrees to forward such payment to Subservicer for servicing under the terms of this Agreement.

**Section 3.9.** Funding Escrow Accounts Upon a Bulk Servicing Transfer:

Owner/Servicer shall fund the escrow account for any Mortgage Loan subject to a Bulk Servicing Transfer within (2) business days of the Transfer Date, regardless of Owner/Servicer's receipt of such funds from a prior servicer. In the event Owner/Servicer fails to timely fund an escrow account, then

Owner/Servicer shall pay per diem interest to Subservicer in the amount of the then applicable prime rate plus 2% against the amount that wasn't timely funded.

**ARTICLE IV.**
**COMPENSATION**

**Section 4.1.**    Subservicing Fee.

    a.  As consideration for subservicing the Mortgage Loans, Subservicer shall be paid (i) the fees in accordance with Exhibit II and (ii) Service Rendered Ancillary Fees.  For the avoidance of doubt, researching and responding to quality control audits, regulatory audits, state exams, or other similar services are not included in the standard monthly servicing fees, and the fees for such research and response is billed on an hourly basis to Owner/Servicer as a separate line item on the applicable invoice at the rate specified in Exhibit II. Those Subservicer's fees so indicated on Exhibit II shall be adjusted annually on the anniversary of the Initial Transfer Date. Such adjustments shall not exceed the increase in the U.S. Department of Labor, Bureau of Labor Statistics, Consumer Price Index, U.S. City Average, for all Urban Consumers, other goods and services ('82 - '84 = 100) (the "CPI-U Index") between the annual averages of the most recently published twelve (12) month period and the immediately preceding twelve (12) month period. Subservicer shall submit to Owner/Servicer an invoice setting forth servicing fees and other amounts due Owner/Servicer (including those amounts due Owner/Servicer as an Investor) and subtracting therefrom subservicing fees, Transfer Fees (if appropriate), fees for optional services, any Late Charges and Ancillary Income due Subservicer and any guaranty fees remitted by Subservicer. In addition, the invoice will reflect the net change in month over month cumulative Servicing Advances. Subservicer will either charge Owner/Servicer for an increase or credit Owner/Servicer for a decrease in such balances.

    b.  Upon execution of this Agreement Owner/Servicer shall pay Subservicer the applicable Private Label, New Loan and other ON Board setup fees set forth on Exhibit II.

    c.  Subservicer shall be entitled to its monthly fees as set forth on Exhibit II for each Mortgage Loan that it subserviced for a given month based upon the beginning of month Mortgage Loan count and status, except that Subservicer shall be entitled to the applicable monthly fee for each Mortgage Loan subserviced during the month in which the related Transfer Date occurred.  For the avoidance of doubt, Owner/Servicer shall be obligated to pay at least the Minimum Monthly Fee, as set forth on Exhibit II, beginning with the first month following execution of this Agreement.

    d.  Owner/Servicer shall remit to Subservicer, in accordance with Section 4.2, the amounts billed by Subservicer for fees, expenses and Servicing Advances associated with services which are proper under this Agreement, including, without limitation, services performed in connection with the foreclosure of mortgages, property maintenance and

improvement, property management, the sale of any REO, and similar extraordinary expenses, which shall be contracted or performed by Subservicer at its customary, reasonable costs for such services, and all other amounts due Subservicer hereunder.

**Section 4.2.**    <u>Due Date of Payments</u>.

Subservicer shall invoice Owner/Servicer once each month, no later than the fifth business day after the end of the month. Unless otherwise expressly stated to the contrary, Subservicer shall deduct without limitation any and all sums due payable to Subservicer by Owner/Servicer hereunder for any reason, from amounts due and payable to Owner/Servicer monthly, and the invoice shall show such reconciliation.

In the event that there are insufficient funds due and payable to Owner/Servicer in any given month to cover any sum due and payable to Subservicer under this Agreement, the invoice will show such deficiency, and Owner/Servicer agrees that Subservicer may debit the funds necessary to pay the invoice from the designated bank account identified by Owner/Servicer in accordance with the ACH authorization referenced in Section 3.1(l) on the 15th calendar day of the month in which the invoice was sent.

Unless otherwise stated herein, all fees, payments, charges, expenses, Servicing Advances and any other sums payable to Subservicer by Owner/Servicer hereunder, shall be due and payable in accordance with this Section 4.2.  In the event that any sum due to Subservicer remains unpaid after 10 Business Days from the date Owner/Servicer receives the invoice, all such sums shall be subject to a finance charge at an annual rate of six hundred basis points (600 BP) over the three-month LIBOR Prime Rate as published in *The Wall Street Journal* on the first Business Day of the month in the billing period, or if LIBOR is not available, a rate that Subservicer reasonably determines is comparable to the LIBOR rate.

**Section 4.3.**    <u>Default and Right of Offset</u>.

In the event Owner/Servicer shall fail to pay to Subservicer any sums due and payable to Subservicer under this Agreement when and as the same shall be due and payable, whether as compensation, reimbursement, or otherwise, or if Owner/Servicer is in default hereunder in any other respect, Subservicer shall be entitled to adjust amounts due Owner/Servicer in set-off of the amount of any sum so owing and unpaid. This provision shall not impair Subservicer's right to be paid or reimbursed as provided herein or to exercise all other remedies permitted by law.

**Section 4.4.**    <u>Resolution of Disputes and Monetary Errors</u>.

In the event either party, in good faith, disputes any sum the other party contends are due and payable hereunder, such disputing party shall deliver to the contending party a written notice of dispute. If the contending party provides documentation substantiating that the disputed amount is properly due and payable, the disputing party shall pay such amount, to the extent not already recovered by the contending party, within five (5) Business Days after receipt

of such documentation. If the disputing party continues to dispute all or any portion of such amount and the parties cannot thereafter reconcile such dispute within a reasonable period of time not to exceed thirty (30) Business Days, the contending party shall be entitled, upon ten (10) days written notice to the disputing party, to (i) submit such matter to a dispute resolution process and if such amounts are subsequently determined to be proper, contending party shall be entitled to recover as part of its claim its reasonable costs and expenses, including attorneys' fees, incurred in prosecuting such claim with interest on the disputed amount at an annual rate of 3.50% over the Prime Rate. If such disputed amounts are subsequently determined not to be due and payable to the contending party, the disputing party shall be entitled to recover as part of its claim its reasonable costs and expenses, including attorneys' fees, incurred in connection with prosecuting such claim.

Either party may request that any dispute, claim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, be addressed through the informal dispute resolution process below. This clause shall not preclude the parties from filing an action in a court of appropriate jurisdiction.

a. At the mutual agreement of the parties, a neutral third party with expertise in the matters disputed may be appointed to review the positions expressed by both parties regarding the dispute. The neutral third party may be a mutually acceptable, nationally recognized independent accounting firm, or other third party that is deemed by the parties to be qualified to review the relevant matter(s).

b. The neutral third party will review written submissions by both parties, along with all pertinent information, documents, and data submitted by the parties. The neutral third party will issue its findings to the parties. Such findings will not bind the parties unless the parties have agreed in writing to be bound prior to submitting such matter to the neutral third party.

c. Each party shall pay one-half of the fees and expenses of the neutral third party.

d. All proceedings with the neutral third party and all documents and information submitted to the neutral third party shall be deemed to be information subject to the confidentiality provisions of this Agreement.

### ARTICLE V.
### TERM AND TERMINATION

**Section 5.1.**    Term.

The term of this Agreement shall commence upon the Effective Date and end at twelve o'clock (12:00) midnight eastern time on a date that is the last Business Day of the month that is one (1) year following the Initial Transfer Date (the "Expiration Date"), except that if neither party

shall terminate this Agreement by delivering written notice to the other party not less than one hundred twenty (120) days prior the Expiration Date, this Agreement shall renew and exist and continue for successive terms of one (1) year each until terminated by such notice.

**Section 5.2.**    Termination without Cause.

At any time, Subservicer may, without cause, upon at least one hundred eighty (180) days prior written notice to Owner/Servicer, terminate this Agreement as to any or all Mortgage Loans then being subserviced without the need for the payment of any Transfer Fees by Owner/Servicer.

Notwithstanding anything to the contrary elsewhere in this Agreement, a Transfer Fee shall not be payable upon a payoff of a Mortgage Loan by a Mortgagor, or removal of a Mortgage Loan from Subservicer's subservicing system upon assignment to HUD or private mortgage insurer, completion of a foreclosure action or other acquisition of title to a REO.

**Section 5.3.**    Termination with Cause.

(a) In the event of a party's material default in performance of this Agreement, which default is curable by the defaulting party, the defaulting party shall have thirty (30) days to cure such default after written notification is delivered by the non-defaulting party to the defaulting party. If the default is either not cured within the thirty (30) day period, or is a default of such a type as to be incapable of being cured, the non-defaulting party may terminate this Agreement upon five (5) days' notice, and require the immediate transfer of all Mortgage Loans and related documents and other data and information related to the Mortgage Loans.

(b) **Agency Default or Bankruptcy**. A party additionally shall be in default hereunder if, at any time during the term of this Agreement, such party (i) has its rights to service for FHLMC, FNMA or GNMA suspended, (ii) is declared to be in default of its agreements with FHLMC, FNMA or GNMA or loses any other permits or licenses necessary to carry out its responsibilities under this Agreement, or (iii) becomes insolvent, files for bankruptcy, or is placed under conservatorship or receivership. Upon occurrence of any of the foregoing events, the non- defaulting party may immediately terminate this Agreement for cause, without any further liability to the non-defaulting party, except for amounts due a party prior to termination.

In addition to all other amounts due hereunder, the non-defaulting party shall be entitled to all costs of collection and all costs related to the transfer of the Mortgage Loan documents and other data and information related to the Mortgage Loans. In addition, if Subservicer is the non-defaulting party, Subservicer shall be entitled to the payment of Transfer Fees in accordance with Exhibit II hereof.

(c) **Failure to Transfer.** Should actions or failure to act of Owner/Servicer result in a failure to complete the transfer of the Mortgage Loans identified on Exhibit I to Subservicer for subservicing within one hundred twenty (120) days of the Effective Date, Subservicer, in its sole discretion may terminate this Agreement upon written notice to Owner/Servicer. Owner/Servicer shall thereupon pay to Subservicer, Subservicer's expenses incurred in the design and implementation of plans to permit conversion of the Mortgage Loans onto Subservicer's servicing systems. For the purposes of this Section, expenses shall include: third party costs incurred by Subservicer, and Subservicer's internal and staffing costs and expenses.

The rights of termination, as provided herein, are in addition to all other available rights and remedies, including the right to recover Damages in respect of any breach.

Default by Owner/Servicer.   Should Owner/Servicer be in default, for any reason, Owner/Servicer acknowledges that Subservicer may continue servicing when in default, if required by any Agency and/or Applicable Requirements, without issue and notwithstanding objection of Owner/Servicer, if Subservicer deems, in its reasonable business judgment, subservicing should continue to occur.   This shall not constitute a breach or default by Subservicer.

**Section 5.4.**   Reimbursement upon Expiration or Termination.

Upon expiration or termination of this Agreement with respect to any or all of the Mortgage Loans, Owner/Servicer shall reimburse Subservicer for all costs reasonably incurred in connection with the expiration or termination of subservicing and return of documents and other information regarding the Mortgage Loans then subserviced to Owner/Servicer, Owner/Servicer's designee, or Investor or Investor's designee. These costs include, but are not limited to, third party costs incurred by Subservicer, and internal and staffing costs of Subservicer directly attributable to the return of the documents and other information regarding the Mortgage Loans. In addition, in the event Investor terminates subservicing of any Mortgage Loans, Owner/Servicer shall, with respect to the Mortgage Loans, (i) reimburse Subservicer for Subservicer's actual expenses and any Servicing Advances made on behalf of Owner/Servicer in accordance with the terms of this Agreement, and (ii) pay for all other amounts due Subservicer hereunder.

**Section 5.5.**   Accounting/Records.

Upon expiration or termination of this Agreement, Subservicer will cease all subservicing activities and account for and turn over to Owner/Servicer, Owner/Servicer's designee, or Investor or Investor's designee, all funds collected hereunder, less the compensation and other amounts then due Subservicer, and deliver to Owner/Servicer, Owner/Servicer's designee, Investor or Investor's designee all records and documents relating to each Mortgage Loan then subserviced and will advise each Mortgagor that their Mortgage Loan will henceforth be serviced by Owner/Servicer, Owner/Servicer's designee, Investor or Investor's designee.

**ARTICLE VI.**

**REPRESENTATIONS, WARRANTIES AND COVENANTS OF OWNER/SERVICER**

As of the Effective Date and each Transfer Date, Owner/Servicer warrants and represents to, and covenants and agrees with Subservicer as follows:

**Section 6.1.**     Cooperation and Assistance.

To the extent necessary, Owner/Servicer shall cooperate with and assist Subservicer as requested by Subservicer, in carrying out Subservicer's covenants, agreements, duties and responsibilities under this Agreement and in connection therewith shall execute and deliver all such papers, documents and instruments, including but not limited to servicing agreements, if any, as may be necessary and appropriate in furtherance thereof.

**Section 6.2.**     Notice of Breach.

Owner/Servicer shall promptly following actual notice thereof, notify Subservicer of any failure or anticipated failure on its part to observe and perform any warranty, representation, covenant or agreement required to be observed or performed by it under this Agreement.

**Section 6.3.**     Taxes.

For each Mortgage Loan transferred to Subservicer, real estate taxes due within sixty (60) days following each respective Transfer Date shall have been paid by or on behalf of Owner/Servicer prior to delivery of subservicing to Subservicer. Owner/Servicer will indemnify and hold Subservicer harmless from any tax penalties and interest that arose or accrued prior to sixty (60) days following the Transfer Date, and as set forth in Section 2.3(f) hereof.

**Section 6.4.**     Agency Approvals.

If required by Applicable Requirements, Owner/Servicer is or will use commercially reasonable efforts to become an approved servicer for, and in remain good standing with FHLMC, FNMA, GNMA, HUD, USDA, VA, or other Investors and shall maintain such required approvals and standing throughout the term of this Agreement.

**Section 6.5.**     Prior Servicing.

Each Mortgage Loan has been serviced in accordance with all Applicable Requirements at all times prior to the Transfer Date.

In accordance with CFPB Bulletin 2014-1, Owner/Servicer shall provide reasonable support to Subservicer in communicating with any transferor servicer regarding the transferors' obligations as it relates to:

- Responding to a Notice of Error;
- Responding to a Request for Information; and
- Providing loss mitigation documents post transfer, if needed.

**Section 6.6.**    Authority.

Owner/Servicer is a duly organized and validly existing corporation in good standing under the laws of its jurisdiction of organization or formation and has all requisite power and authority to enter into this Agreement and the persons executing this Agreement on behalf of Owner/Servicer are duly authorized to do so. Owner/Servicer has all licenses necessary to carry on its business as now being conducted and is duly authorized and qualified to transact, in each state where a Mortgaged Property is located, any and all business contemplated by this Agreement or is otherwise exempt under Applicable Requirements from such qualification or is otherwise not required under Applicable Requirements to effect such qualification.

**Section 6.7.**    Predatory Lending Regulations; High Cost Loans.

None of the Mortgage Loans are classified as (i) "high cost" loans under the Home Ownership and Equity Protection Act of 1994 or (ii) "high cost", "threshold", "covered" or "predatory" loans under any other applicable state, federal or local law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees.

**Section 6.8.**    Litigation.

There is no action, suit, proceeding or investigation pending or, to Owner/Servicer's knowledge, threatened against Owner/Servicer which, either in any one instance or in the aggregate, would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be contemplated herein, or which would be likely to impair materially the ability of Owner/Servicer to perform under the terms of this Agreement.

**Section 6.9.**    Ownership.

Owner/Servicer is the sole owner of the servicing rights related to the Mortgage Loans.

**Section 6.10.**    Accuracy of Information.

The documents, and the computer files, data disks, books, records, data tapes, notes pertaining to a particular Mortgage Loan provided to Subservicer by or on behalf of Owner/Servicer contain all documents, instruments and information necessary to service the

Mortgage Loans in accordance with the Applicable Requirements, the Note and the Mortgage and are true and accurate in all material respects and may be relied upon by Subservicer in connection with the servicing of the Mortgage Loans. The data fields relating to prepayment penalties attached hereto are complete, true and accurate and can be relied on by Subservicer in the calculation of prepayment penalties. Subservicer shall have no liability to Owner/Servicer for any loss resulting from calculation of prepayment penalties arising out of incorrect or incomplete data provided to Subservicer.

**Section 6.11.**   Broker Fees.

Owner/Servicer has not dealt with any broker or agent or anyone else who might be entitled to a fee or commission in connection with this transaction.

**Section 6.12.**   Ability to Perform.

Owner/Servicer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant applicable to it and contained in this Agreement.

**Section 6.13.**   HECM Loans.

No Mortgage Loan in any GNMA mortgage-backed security is a home equity conversion mortgage.

**Section 6.14.**   Reasonable Assurances.

If either Party acknowledges that if, at any time, either Party has reason to believe that either Party is not conducting its business in accordance with all Applicable Requirements or that a breach of this Agreement has occurred, the affected Party  shall have the right to demand, within a reasonable timeframe and pursuant to written notice from the affected Party to the affecting or breaching Party, reasonable assurances that such a belief is in fact unfounded, and any failure of the affecting or breaching Party to provide such reasonable assurances within a reasonable timeframe specified in such written notice shall itself constitute an a breach under this Agreement.  Nothing in this section shall be deemed or construed to limit, waive, or impair any of the Parties' respective rights or remedies with respect to any breach under any other section hereof.

**Section 6.15.**   Notice Requirement for Pledged Servicing Rights.

Owner/Servicer agrees to immediately notify Subservicer, in writing, if Servicing Rights to the loans Subservicer is subservicing, are pledged to any non-party entity, without Subservicer approval, including but not limited to any creditor, warehouse bank, or other entity, or if an Agency finds Owner/Servicer to be in default of any agreement to which it is a party that may cause those rights to be pledged, voluntarily or otherwise, for any reason or purpose.

## ARTICLE VII.
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SUBSERVICER

As of the Effective Date and each Transfer Date, subject to the provisions of Article VIII herein, Subservicer warrants and represents to, and covenants and agrees with, Owner/Servicer as follows:

**Section 7.1.**    Notice of Breach.

Subservicer shall use its best efforts to promptly notify Owner/Servicer of any failure or anticipated failure on its part in any material respect to observe and perform any warranty, representation, covenant or agreement required to be observed and performed by it as a subservicer.

**Section 7.2.**    Agency Approvals.

Subservicer is an approved servicer for FHLMC, FNMA, GNMA, HUD and VA, and shall maintain such approvals throughout the term of this Agreement.

Subservicer acknowledges FNMA's right to rescind its recognition of the Agreement if it decides to transfer the Owner/Servicer's portfolio for any reason.

**Section 7.3.**    Authority.

Subservicer is a duly organized and validly existing corporation in good standing under the laws of its state of incorporation and has all requisite power and authority to enter into this Agreement and the persons executing this Agreement on behalf of Subservicer are duly authorized so to do. Subservicer has all licenses necessary to carry on its business as now being conducted and is duly authorized and qualified to transact, in each state where a Mortgaged Property is located, any and all business contemplated by this Agreement or is otherwise exempt under Applicable Requirements from such qualification or is otherwise not required under Applicable Requirements to affect such qualification.

**Section 7.4.**    Litigation.

There is no action, suit, proceeding or investigation pending or, to Subservicer's knowledge, threatened against Subservicer which, either in any one instance or in the aggregate, would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be contemplated herein, or which would be likely to impair materially the ability of Subservicer to perform under the terms of this Agreement.

**Section 7.5.**    <u>Accuracy of Information</u>.

No information furnished to Owner/Servicer or any Investor by Subservicer regarding its financial condition or its servicing operations contains any untrue statement of material fact.

**Section 7.6.**    <u>Broker Fees</u>.

Subservicer has not dealt with any broker or agent or anyone else who might be entitled to a fee or commission in connection with this transaction.

**Section 7.7.**    <u>MERS</u>.

Subservicer is a member of MERS in good standing.

**Section 7.8.**    <u>Ability to Perform</u>.

Subservicer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant applicable to it and contained in this Agreement.

**Section 7.9.**    <u>HAMP</u>.

If necessary, Subservicer will do those actions deemed necessary to join HAMP and become approved to handle the subservicing of any Mortgage Loans participating in HAMP, in accordance with any applicable service transfer HAMP provisions.  Subservicer may enter into a Servicer Participation Agreement ("SPA") with FNMA, as financial agent of the United States, pursuant to HAMP. As such, once achieved and approved, Subservicer will work to: (i) implement HAMP as required by the SPA; (ii) report to FNMA the transfer of servicing of any Mortgage Loans that are Eligible Loans (as defined by the SPA) in order to ensure compliance with the SPA; and (iii) service any of the Mortgage Loans that are Eligible Loans in accordance with HAMP requirements.

**ARTICLE VIII.**

**INDEPENDENCE OF PARTIES; INDEMNIFICATION; SURVIVAL**

**Section 8.1.**    <u>Independence of Parties</u>.

The following terms shall govern the relationship between Owner/Servicer and Subservicer:

    a.   Subservicer shall have the status of, and act as, an independent contractor. Nothing herein contained shall be construed to create a partnership, joint venture or fiduciary relationship between Owner/Servicer and Subservicer;

b.  Subservicer shall not be responsible for any representations, warranties or contractual obligations in connection with (1) the sale to or by FHLMC, FNMA, GNMA or private Investors of any of the Mortgage Loans, or (2) the servicing or subservicing of any Mortgage Loan prior to the Transfer Date of subservicing of a Mortgage Loan to Subservicer pursuant to this Agreement;

c.  Anything herein contained in this Article VIII or elsewhere in this Agreement to the contrary notwithstanding, the representations and warranties of Subservicer contained in this Agreement shall not be construed as a warranty or guarantee by Subservicer as to future payments by any Mortgagor;

d.  Anything herein contained in this Article VIII or elsewhere in this Agreement to the contrary notwithstanding, Subservicer shall not be responsible for the performance under, or compliance with, any Mortgage Loan repurchase agreements, indemnifications, representations or warranties of an origination nature, or those servicing representations and warranties directly or indirectly related to the origination process made between Owner/Servicer and any Investor, either prior or subsequent to this Agreement, and

e.  Subservicer shall not be liable to Owner/Servicer for any action taken, or for refraining from the taking of any action, in good faith pursuant to this Agreement or for errors in judgment; provided, however, that this provision shall not protect Subservicer against any breach of its representations or warranties made herein or against any liability which would otherwise be imposed on Subservicer by reason of Subservicer's willful misfeasance, bad faith, fraud, or negligence in the performance of its duties hereunder or by reason of its negligent disregard of its obligations or duties hereunder. Subservicer may rely in good faith on any document of any kind which, prima facie, is properly executed and submitted by any appropriate person respecting any matters arising hereunder.

f.  Subservicer shall not be responsible for validation, accuracy or inaccuracy of non-critical, unaltered data elements supplied to Subservicer by Owner/Servicer to support any sale or proposed sale of Mortgage Loans or mortgage servicing rights to any third-party Investor(s). Owner/Servicer shall defend, indemnify and hold harmless Subservicer in the delivery and use of any such data with respect to each such sale or proposed sale.

Section 8.2.    **INDEMNIFICATION**

A.  **Property Damage**.    Each party will indemnify the other, its officers, directors, or employees and hold them harmless from and against all claims, demands, liabilities,

losses, costs and damages (including court costs and reasonable attorneys' fees) that the indemnified party or any of its officers, directors or employees may incur or suffer as a result of damage to tangible personal property, to the extent (a) arising under or related to this Agreement and (b) caused by the gross negligence or willful misconduct of the indemnifying party or its employees.

B. **Subservicer Indemnity**.    SUBSERVICER will indemnify, defend and hold harmless Owner/Servicer, and its and their respective directors, officers, employees, suppliers and agents (collectively, the "**Owner/Servicer Indemnitees**"), from and against all third-party claims for damages, final judgments, settlements and court costs ("**Indemnified Damages**") brought against any of the Owner/Servicer Indemnitees to the extent based upon:

    a. SUBSERVICER' or its agents' (including its Affiliates' and vendors') fraud or willful misconduct;

    b. SUBSERVICER' or its agents' (including its Affiliates' and vendors') breach of ("Non-Disclosure") or ("Ownership") Sections; or

    c. Actual or alleged infringement by the Products or Services of any third party's Intellectual Property rights, except that SUBSERVICER is not responsible for any alleged or actual infringement to the extent caused by: (i) modifications made to Products or Services by anyone other than SUBSERVICER; (ii) the combination, operation or use of the Products or Services with other items SUBSERVICER did not supply; or (iii) adherence to Owner/Servicer's specifications in conjunction with an implementation, modification or enhancement to any Product or Service.

    d. Notwithstanding the foregoing, the Parties acknowledge that any third party service provider whose use is mandated or required by Owner/Servicer is not a "vendor" or "agent" of SUBSERVICER for purposes of this Agreement, unless specifically agreed to in writing by the Parties.

C. **Owner/Servicer's Indemnity**. Owner/Servicer retains all risk associated with the servicing of the loans except as explicitly set forth herein. The fees reflect indemnity provisions and the allocation of risk and the limitation of liability in this Agreement. Except as stated otherwise in this Agreement, Owner/Servicer will indemnify, defend and hold harmless SUBSERVICER and its Affiliates, and its and their respective directors, officers, employees and agents (collectively, the "**SUBSERVICER Indemnitees**"), from and against all third party claims for Indemnified Damages brought against any of the SUBSERVICER Indemnitees to the extent based upon any/all Losses Subservicer realizes as a result of or arising out of the conduct of Owner/Servicer, including without limitation:

    a. the non-fulfillment or non-performance of any covenant or obligation by Owner/Servicer or any Prior Servicer whether or not in this Agreement;

    b. any failure of Owner/Servicer, Prior Server, or Originator to have complied, before or after the Transfer Date, with all Applicable Requirements;

    c.  to the extent such dispute does not result from a breach of Subservicer's obligations hereunder, any dispute between or among (a) Borrower and Owner/Servicer or Investors; (b) Borrower(s) and Subservicer, (c) Investors and Owner/Servicer (d) any dispute between Investors and Subservicer; inaccurate or incomplete information supplied to Subservicer by any Person;

    d.  the failure by any Person to deliver to Subservicer any applicable servicing agreement or any amendment, modification or substitution;

    e.  any environmental matters or claims, including, without limitation, violation of federal, state or local laws, regulations or ordinances except to the extent such matters or claims arose out of the gross negligence or intentional actions of Subservicer

    f.  Subservicer compliance with written instructions of Owner/Servicer to the extent that that such instructions are not in compliance with Applicable Requirements and Subservicer wouldn't reasonably be expected to know that such instructions are not in compliance with Applicable Requirements;

    g.  any act or omission or other event or circumstance occurring or arising prior to the Transfer Date;

    h.  any claim of or actual failure by Owner/Servicer to comply with Applicable Requirements;

    i.  any claims by any third-party relating to any action or inaction (a) by Owner/Servicer or Investors, or resulting from Owner/Servicer's or Investors' failure to respond within timelines provided by Applicable Requirements or as otherwise considered timely according to industry standard to a request by Subservicer for direction or consent; or (b) while alleged to have been taken or refrained from being taken by Subservicer, in fact was attributable to Owner/Servicer; and a breach of Owner/Servicer's representations, warranties or covenants.

D.  **Indemnification Procedures**.  The obligation of SUBSERVICER or Owner/Servicer (as applicable, the "**Indemnifying Party**") to indemnify the Owner/Servicer Indemnitees or the SUBSERVICER Indemnities (as applicable, the "**Indemnified Party**") as provided in this Section is conditioned upon the Indemnifying Party having the sole right to conduct and control the defense of the claim and all negotiations for its settlement or compromise, unless otherwise mutually agreed to in writing between the parties; provided, however, that no settlement or compromise may include any acknowledgement or admission of liability by, or the entry of any judgment against, the Indemnified Party without the Indemnified Party's consent, which consent may not be unreasonably delayed, conditioned or withheld.  The Indemnifying Party agrees to give the Indemnified Party, and the Indemnified Party agrees to give the Indemnifying Party, as applicable, prompt written notice of any written threat, warning or notice of any such claim against the Indemnifying Party or Indemnified Party, as applicable, that could have an adverse impact

on the other party, provided the Indemnifying Party or Indemnified Party, as appropriate, knows of such claim or action. The Indemnified Party agrees to utilize its best effort to mitigate pending claims in circumstances in which the loss cannot by directly mitigated be the Indemnifying Party. The Indemnifying Party will be responsible for all expenses reasonably incurred by an Indemnified Party at the Indemnifying Party's request. If in any third party claim of infringement suit defended by SUBSERVICER, all or any part of the Products and/or Services is held to constitute an infringement or violation of any other party's intellectual property rights and is enjoined, or if in respect of any claim of infringement, SUBSERVICER deems it advisable to do so, SUBSERVICER may at its sole option take one or more of the following actions at no additional cost to Owner/Servicer: (a) procure the right to continue the use of the product without material interruption for Owner/Servicer; (b) replace the product with a non-infringing substitute that meet the same business requirements as the infringing product; or (c) modify the product so as to be non-infringing, provided that the Products and/or Services as modified meet the same business requirements as the infringing product. The remedies set forth in this Section 0 represent the sole and exclusive remedy of Owner/Servicer with regard to any infringement or alleged infringement.

E. **Support in Litigation- SUBSERVICER.** If SUBSERVICER or its Affiliates or any of its or their directors, officers or employees (collectively, a "**Witness**") are subpoenaed or otherwise called upon to testify in any civil procedure under which Owner/Servicer or any of its Affiliates is endeavoring to assert or protect its rights, including any action by Owner/Servicer or its Affiliates to collect any sum of money from a third party, Owner/Servicer will reimburse SUBSERVICER (except to the extent Owner/Servicer is not permitted to do so under applicable law) for: (i) all costs reasonably incurred by SUBSERVICER and/or the Witness in responding to the subpoena and, as applicable, in testifying, including the reasonable fees and expenses of attorneys and/or experts retained to represent SUBSERVICER and/or the Witness in the matter; and (ii) the Witness' time in responding to the subpoena, preparing to testify, gathering documents and testifying.

F. **Support in Litigation- Owner/Servicer.** If Owner/Servicer or its Affiliates or any of its or their directors, officers or employees (collectively, a "**Witness**") are subpoenaed or otherwise called upon to testify in any civil procedure under which SUBSERVICER or any of its Affiliates is endeavoring to assert or protect its rights, including any action by SUBSERVICER or its Affiliates to collect any sum of money from a third party, SUBSERVICER will reimburse Owner/Servicer (except to the extent SUBSERVICER is not permitted to do so under applicable law) for: (i) all costs reasonably incurred by Owner/Servicer and/or the Witness in responding to the subpoena and, as applicable, in testifying, including the reasonable fees and expenses of attorneys and/or experts retained to represent

Owner/Servicer and/or the Witness in the matter; and (ii) the Witness' time in responding to the subpoena, preparing to testify, gathering documents and testifying.

**Section 8.3 LIMITATION OF LIABILITY**

A. **Direct Damages.**  If either party (the "**Claiming Party**") should become entitled to claim damages from the other party (the "**Liable Party**") for any reason (including for breach of contract, breach of warranty, negligence or other tort claim), the Liable Party will be liable, only for the amount of the Claiming Party's actual direct damages up to the amount paid by Owner/Servicer to SUBSERVICER in the six (6) months preceding the date of the first event giving rise to the claim under the applicable Addendum or SOW.  Neither party's aggregate liability under this Agreement may, in any event, exceed the total fees paid by Owner/Servicer to SUBSERVICER under the applicable Addendum or SOW in the twelve (12) months preceding the date of the first event giving rise to the first claim under the applicable Addendum or SOW.  These limits also apply to the Liable Party's Affiliates, and its and their officers, directors, employees, supplier and agents and are the maximum collective liability for which any of them may be responsible. In either event, if a payment history of twelve (12) months does not exist, the average payment per month in the preceding months where a payment history exists shall be multiplied by 12 to calculate the maximum liability.

B. **No Liability for Certain Damages**.  In no event will either party or its Affiliates, and its and their officers, directors, employees, supplier and agents, be liable for:  (i) any damages arising out of or related to the failure of the other party to perform its responsibilities; (ii) any claims or demands of third parties (other than those third party claims covered by in the Indemnification section); or (iii) any lost profits, loss of business, loss of data, loss of use, lost savings, loss of goodwill, business interruption or other consequential, special, incidental, indirect, exemplary or punitive damages, even if it has been advised of the possibility of such damages.

C. **Exclusions from Direct Damages Limitation; Survival**.  The foregoing limitations on direct damages do not apply to:  (i) the indemnification obligations set forth in the Indemnification sections of this Agreement ; (ii) breach of Sections 8.4 (Privacy); and (iii) Owner/Servicer's obligation to pay SUBSERVICER invoices in accordance with this Agreement.  The limitations of liability set forth in this Section will survive and apply notwithstanding the failure of any limited or exclusive remedy for breach of warranty set forth in this Agreement.  The parties agree that the foregoing limitations will not be read so as to limit any liability to an extent that would not be permitted under applicable law. In no event will SUBSERVICER be liable for the availability, performance or use of the Internet or World Wide Web.

D. **Unauthorized Modification or Use of Product and Services.** SUBSERVICER will not be responsible for any damages or expenses resulting from the modification or alteration of the Products or Services by Owner/Servicer, the unauthorized use of the Product or Services, or from the unintended and unforeseen results obtained by Owner/Servicer resulting from such use.

**Section 8.4.** Privacy.

A. Owner/Servicer shall provide to Subservicer a complete copy of its policies and procedures related to the privacy of Mortgagor information ("Privacy Policy") as of the Effective Date, Owner/Servicer shall deliver to Subservicer all updates or modifications to the Privacy Policy no less than thirty (30) days prior to the date on which such update or modification becomes effective.

B. Owner/Servicer agrees to deliver to Subservicer a list, and all updates and changes to the information in such list, of Mortgagors who have opted out under the Privacy Policy, as soon as possible, but in no instance more than five (5) Business Days after Owner/Servicer's receipt of such information.

C. **Confidential Information.** "**Confidential Information**" means information belonging to or in the possession of a party that is confidential or a trade secret and is furnished or disclosed to the other party under this Agreement: (including information exchanged in contemplation of entering into this Agreement): (i) in tangible form and marked or designated in writing in a manner to indicate it is confidential or a trade secret; or (ii) in tangible or intangible form and that either is of a nature that a reasonable person would understand to be confidential or a trade secret or is identified as confidential or a trade secret in a writing provided to the receiving party within thirty (30) business days after disclosure. Any proprietary information regarding the servicing system used by Subservicer shall be considered Confidential Information. All data and information entered into SIME constitutes Confidential Information.

D. **Exclusions**. Confidential Information does not include any information that, as evidenced by written documentation: (i) is already known to the receiving party without restrictions at the time of its disclosure by the furnishing party; (ii) after its disclosure by the furnishing party, is made known to the receiving party without restrictions by a third party having the right to do so; (iii) is or becomes publicly known without violation of this Agreement; or (iv) is independently developed by the receiving party without reference to the furnishing party's Confidential Information.

E. **Standard of Care**. Confidential Information will remain the property of the furnishing party, and the receiving party will not be deemed by virtue of this Agreement or any

access to the furnishing party's Confidential Information to have acquired any right, title or interest in or to the Confidential Information. The receiving party agrees: (i) to hold the furnishing party's Confidential Information in strict confidence affording the furnishing party's Confidential Information at least the same level of protection against unauthorized disclosure or use as the receiving party normally uses to protect its own information of a similar character, but in no event less than reasonable care; (ii) to limit disclosure of the furnishing party's Confidential Information to personnel furnished by the party receiving Services under this Agreement; (iii) to use the furnishing party's Confidential Information solely and exclusively in accordance with the terms of this Agreement in order to carry out its obligations and exercise its rights under this Agreement and outside of such circumstances, not to disclose any such Confidential Information to any third party; and (v) to notify the furnishing party promptly of any unauthorized use or disclosure of the furnishing party's Confidential Information and cooperate with and assist the furnishing party in every reasonable way to stop or minimize such unauthorized use or disclosure.

F.  **Compelled Disclosure**. Unless otherwise prohibited by law or order, if the receiving party receives a subpoena or other valid administrative or judicial notice requesting the disclosure of the furnishing party's Confidential Information, the receiving party will promptly notify the furnishing party. If requested, the receiving party will provide reasonable cooperation to the furnishing party in resisting or limiting the disclosure at the furnishing party's expense. Subject to its obligations stated in the preceding sentence, the receiving party may comply with any binding subpoena or other process to the extent required by law, but will in doing so make every reasonable effort to secure confidential treatment of any materials disclosed.

G.  **Return or Destruction**. Upon termination or expiration of this Agreement, the receiving party, at the furnishing party's option, will return or destroy all Confidential Information of the furnishing party that the receiving party does not possess under a valid and continuing license; provided that either party may retain backup copies of certain Confidential Information stored in accordance with data retention policies and procedures that comply with Applicable Requirements.

H.  **Relief**. Each party agrees that if a court of competent jurisdiction determines that the receiving party has breached, or attempted or threatened to breach, any of its confidentiality obligations to the furnishing party or the furnishing party's proprietary rights, money damages will not provide an adequate remedy. Accordingly, the furnishing party will be entitled to seek appropriate injunctive relief and other measures restraining further attempted or threatened breaches of such obligations.

I. **Confidentiality of this Agreement.**  The Parties agree that the terms and conditions of this Agreement and the related negotiations between the Parties with respect to this Agreement and any Addendum will be treated as confidential pursuant to this Section 8.4.

J. **Security Standards.**  To the extent Subservicer is in possession of any Confidential Information, Subservicer has implemented and throughout the term of this Agreement shall maintain security measures designed to: (i) protect the security and confidentiality of Owner/Servicer's nonpublic personal information; (ii) protect against any anticipated threats or hazards to the security or integrity of such non-public personal information; and (iii) protect against unauthorized access to or use of such nonpublic personal information that could result in substantial harm or inconvenience to any of Owner/Servicer's "customers" or "consumers") (as such terms are defined in the GLB Act.)  Subservicer will use commercially reasonable efforts to adhere to such additional security measures with respect to Owner/Servicer's Confidential Information as may be reasonably requested by Owner/Servicer.  Owner/Servicer will reimburse Subservicer if implementation of and/or adherence to such additional security measures increases Subservicer's costs of operation and such additional security measures are not generally required by applicable federal laws and regulations.

K. **Privacy**.  For the purposes of this Agreement, including this Section, the term "personal information" means any "nonpublic personal information" as such term is defined under the GLB Act.  Notwithstanding anything to the contrary contained in this Agreement, with respect to any personal information delivered or made available by the Parties, each Party agrees to:

    a. Process, use, maintain and disclose the personal information solely for the purposes of carrying out its obligations under, and as expressly set forth in, this Agreement or as otherwise expressly directed in writing by Owner/Servicer and not for any other purposes;

    b. Maintain an effective information security program to keep such personal information confidential and take appropriate administrative, technical and physical measures to secure and protect such personal information against unauthorized, unlawful or accidental access, disclosure, transfer, destruction, loss or alteration;

    c. Limit access to such information on a need-to-know basis and inform its employees and sub-contractors who have access to such personal information of its highly confidential nature and the limitations and procedures that apply to access and use of such personal information;

    d. Not disclose or make such personal information available to sub-contractors without entering into an agreement in writing with the sub-contractor whereby

the sub-contractor agrees to comply with, and treat such personal information in accordance with terms at least as restrictive as those contained in this Agreement

e.  Promptly notify the other Party if any Party becomes aware of any unauthorized access of such personal information or if it becomes the subject of any government or private proceeding relating to personal information handling practices;

f.  Use such personal information in accordance with applicable Federal and state privacy and data protection legislation, and in the case of any legal or regulatory obligation to disclose such personal information, it will notify and cooperate with Owner/Servicer to limit any disclosure to the minimum required by law and, to the extent possible, request that such information be kept confidential;

g.  Provide Owner/Servicer with information regarding its privacy/data protection practices upon the reasonable request of Owner/Servicer and allow Owner/Servicer to conduct reasonable reviews of compliance with this Section, which may include site visits at reasonable times as mutually agreed by Owner/Servicer in accordance with Section 2.9 ("Audits") above;

h.  Upon termination of this Agreement, promptly and in a secure manner return to Owner/Servicer all such personal information and any copies or, at Owner/Servicer's written direction, destroy such personal information and copies (and certify that this has been done) unless any legislation or legal action prevents it from doing so in which case it will keep such personal information and copies secure and confidential and no longer actively process them and to return or, at Owner/Servicer's written direction, destroy such personal information and copies (and certify that this has been done) as soon as such legislation or legal action no longer prevents it from doing so; provided, however, Subservicer may retain backup copies of certain Owner/Servicer Confidential Information stored in a secure facility together with other data, if applicable, in accordance with Subservicer's standard data retention policies and procedures; and

i.  Promptly notify Owner/Servicer of any access requests made to it directly by individuals whose personal information may have been delivered or made available to it pursuant to this Agreement.

**Section 8.5.**    Survival.

The indemnifications, representations, and warranties set forth in this Agreement shall survive the expiration or termination of this Agreement for a period of two (2) years; provided, however, claims by (i) Subservicer for amounts due it under this Agreement including, but not limited to, any indemnification requests and (ii) indemnification claims under Section 8.2 and Section 8.3 shall survive for the period of the applicable statute of limitation.

**ARTICLE IX.**
**MISCELLANEOUS**

**Section 9.1.**    Changes in Practices.

The parties hereto acknowledge that the standard practices and procedures of the mortgage servicing industry change or may change over a period of time. Material changes in practices or procedures may increase the cost of subservicing beyond that contemplated by the parties at the time of this Agreement. For the purposes of this paragraph, a change in practice or procedure is deemed to be material if such change is required to comply with changes in Applicable Requirements and/or Investor requirements and such compliance by Subservicer is substantially more burdensome and costly to Subservicer. To accommodate these changes, Subservicer may, from time to time, notify Owner/Servicer of such material changes in practices and procedures and proposed changes in the subservicing fee to reflect such material changes. It is understood that prior to imposing any increased subservicing fee, Subservicer must reasonably demonstrate to Owner/Servicer that the increase in the subservicing fee is directly related to Subservicer's additional costs in implementing the change in policy or procedure and that the increase is in keeping with those other servicers throughout the mortgage servicing industry and is not unique to Subservicer. Should any such proposed change in the subservicing fee made in good faith by Subservicer nevertheless be unacceptable to Owner/Servicer, and should Owner/Servicer and Subservicer fail to agree on an increase in the subservicing fee that would be acceptable to both parties, then such subservicing fee shall remain unchanged. Subservicer shall thereafter have the option (i) to continue to subservice the Mortgage Loans already being subserviced and all future Mortgage Loans at the existing subservicing fee under the terms of this Agreement, (ii) continue to subservice the Mortgage Loans already being subserviced at the existing subservicing fee and provide ninety (90) days advance written notice to Owner/Servicer that Subservicer will not thereafter accept any additional Mortgage Loans for subservicing under the terms of this Agreement, however, Subservicer shall charge the then existing subservicing fees during the initial sixty (60) days following notice and the increased subservicing fees thereafter or (iii) terminate this Agreement without cause upon one hundred twenty (120) days advance written notice to Owner/Servicer.

**Section 9.2.**    Assignment.

Upon (30) thirty days written notice to Owner/Servicer, Subservicer shall have the ability to assign this Agreement to a wholly owned subsidiary of Subservicer, or assign this Agreement to an entity which shares common ownership with Subservicer. Otherwise, this Agreement may be assigned only with the written consent of both Owner/Servicer and Subservicer. The sale of all or substantially all of the stock or assets of Owner/Servicer or Subservicer, or the transfer of a controlling interest in Owner/Servicer or Subservicer, shall not be deemed an assignment of this Agreement for purposes of this Section.

**Section 9.3.**    Prior Agreements.

If any provision of this Agreement is inconsistent with any prior agreements between the parties, oral or written, with respect to the Mortgage Loans, the terms of this Agreement shall prevail, and after the Effective Date of this Agreement, the relationship and agreements between Owner/Servicer and Subservicer with respect to the Mortgage Loans shall be governed in accordance with the terms of this Agreement.

**Section 9.4.**    Entire Agreement.

This Agreement contains the entire agreement between the parties hereto and cannot be modified in any respect except by an amendment in writing signed by both parties.  Subservicer shall have the exclusive right to modify whenever needed so long as written notification to Owner/Servicer of said modification is provided.  Further, the acceptance of and adherence to said modification in writing by Owner/Servicer shall not be unreasonably withheld.

**Section 9.5.**    Invalidity.

The invalidity of any portion of this Agreement shall in no way affect the remaining portions hereof.

**Section 9.6.**    Effect.

Except as otherwise stated herein, this Agreement shall remain in effect until Owner/Servicer's interest in all of the Mortgage Loans, including the underlying security, are liquidated completely, unless sooner terminated pursuant to the terms hereof.

**Section 9.7.**    Applicable Law and Exclusive Jurisdiction.

This Agreement shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New  York applicable to agreements made and to be performed therein, except to the extent preempted by federal law.  The Parties agree to the exclusive jurisdiction of the courts of the State of New York, County of Suffolk.

**Section 9.8.**    Notices.

All notices, requests, demands and other communications which are required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given upon the delivery or mailing thereof, as the case may be, sent, postage prepaid, by registered or certified mail, return receipt requested or by a nationally recognized overnight courier service to the attention of the person named at the address set forth on the signature page hereof, and with copy to each Party's legal counsel, as designated.

**Section 9.9.**    Waivers.

Either Owner/Servicer or Subservicer may, upon written consent and notice to the other: (i) Waive compliance with any of the terms, conditions or covenants required to be complied with by the other hereunder; and (ii) Waive or modify performance of any of the obligations of the other hereunder. The waiver by either party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other subsequent breach.

**Section 9.10.**    Binding Effect.

This Agreement shall inure to the benefit of and be binding upon the parties hereto and their successors and permitted assigns.

**Section 9.11.**    Headings.

Headings of the Articles and Sections in this Agreement are for reference purposes only and shall not be deemed to have any substantive effect.

**Section 9.12.**    Force Majeure.

Each party will be excused from performance under this Agreement, except for any payment obligations for services that have been or are being performed hereunder, for any period and to the extent that it is prevented from performing, in whole or in part, as a result of delays caused by the other party or any act of God, war, civil disturbance, court order, labor dispute, third party nonperformance or other cause beyond its reasonable control, including failure, fluctuations or non-availability of heat, light, air conditioning or telecommunications equipment. A party excused from performance pursuant to this Section shall exercise reasonable efforts to continue to perform its obligations hereunder and shall thereafter continue with reasonable due diligence and good faith to remedy its inability to so perform, except that nothing herein shall obligate either party to settle a strike or labor dispute when it does not wish to do so. Such nonperformance will not be a default or a ground for termination as long as the party uses commercially reasonable efforts to expeditiously remedy the problem causing such nonperformance and to execute its disaster recovery plan then in existence.

**Section 9.13.**    Non-Solicitation of Employees.

Owner/Servicer and Subservicer agree that neither party will solicit the services of any employee of the other party during the term or any extensions of this Agreement, without first obtaining the written consent of the other party. Notwithstanding the foregoing, Owner/Servicer and Subservicer understand and agree that the following shall not constitute solicitation under this Section: (i) employment solicitations directed to the general public at large, including without limitation newspaper, radio and television advertisements, and (ii) an employment solicitation

directed by a party to an employee of the other party, and any related communication, that occurs after a communication regarding employment that was initiated by the employee.

**Section 9.14.**  <u>Waiver of Jury Trial</u>.

The parties hereto hereby voluntarily, knowingly and irrevocably waive any right each may have to trial by jury in the event of any litigation concerning this Agreement.

**Section 9.15.**  <u>Counterpart Execution</u>.

This Agreement may be executed in multiple counterparts, each of which when conformed, shall constitute one and the same document. This Agreement may be executed and delivered by electronic signatures, which shall, for all purposes hereunder, be deemed effective as original signatures.  Photocopies, Facsimiles, and electronic images of signatures in PDF form shall be deemed to be originals.

**[Signature Page to Follow]**

IN WITNESS WHEREOF, each party has caused this instrument to be signed in its corporate name on its behalf by its proper officials duly authorized as of the date first above written.

SUBSERVICER:

THE MONEY SOURCE INC.

By: _____

     Rick Smith, Servicing President

Date: _____, _____ 2019

By: _____

     Frank Giglio, Esq. – General Counsel

Date: _____, _____ 2019

Address for Notices:  135 Maxess Road
                        Melville, NY 11747
                        Attn.: Frank Giglio, Esq. – General Counsel

OWNER/SERVICER:

By: _____

Name / Title: Philip Mancuso CRO

Date: 11/1/19 , _____ 2019

Address for Notices: 5 Concourse Parkway, Queen BLDG

Ste 2250 Atlanta, GA 30328

Attention: John Straccamore

TMS Subservicing Agreement – Master v10-19PL

52

**EXHIBIT I**

To Subservicing Agreement
Between
The Money Source Inc. and Equity Prime Mortgage LLC

[ATTACH INITIAL LIST OR SCHEDULE OF LOANS TO BE SUBSERVICED]

Exhibit II



Exhibit II





# SERVICING TRANSFER INSTRUCTIONS

## VERSION: 8.04

***Confidential and Proprietary:***
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

8/8/2019

## Table of Contents

**Regulatory Overview** ....................................................................................... 5

**1.   General Information** ..................................................................................... 6

   i.   TMS Contact Information .......................................................................... 6

   ii.   Addresses........................................................................................... 7

   iii.   Loan Boarding Timeline Milestones ............................................................ 8

   iv.   Initial Setup Worksheet (ISW) .................................................................. 9

   v.   Kick-off ............................................................................................. 9

**2.   Data Requirements** ..................................................................................... 10

   i.   Data Dictionary/Code Breakers ................................................................. 10

   ii.   Master Record – Preliminary/Final Data ..................................................... 10

   iii.   Preliminary Data .................................................................................. 11

   iv.   Final Data .......................................................................................... 11

   v.   MSP Data Requirements......................................................................... 11

   vi.   Non-MSP Conversions ........................................................................... 12

**3.   Imaging Requirements** ................................................................................ 14

   i.   Servicing Data File Delivery Timeline.......................................................... 14

   ii.   Origination/Servicing File ....................................................................... 15

   iii.   Loss Mitigation File .............................................................................. 16

   iv.   REO File ............................................................................................ 17

   v.   Bankruptcy File .................................................................................... 17

   vi.   Foreclosure File ................................................................................... 17

   vii.   Invoice Reconciliation ........................................................................... 18

   a.   Invoice Delivery ................................................................................... 18

   viii.   Corporate Advance Backup ..................................................................... 18

**4.   Servicing Requirements** ............................................................................... 20

   i.   MERS/Transfer of Mortgage..................................................................... 20

   ii.   Assignment of Mortgages and Alllonges ..................................................... 20

   iii.   Title Issues ......................................................................................... 20

   iv.   Home Mortgage Disclosure Act................................................................. 21

   v.   Qualified Written Requests/Complaints ...................................................... 21

   vi.   FEMA................................................................................................ 21

   vii.   Letters and Notices .............................................................................. 21

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

SERVICING TRANSFER INSTRUCTIONS

viii.  Goodbye Letters ................................................................................................22

ix.  Credit Bureau Reporting ....................................................................................22

x.  Bankruptcy & Credit Reporting .........................................................................23

xi.  Investor Reporting .............................................................................................24

xii.  "Do Not Contact" ..............................................................................................26

xiii.  Post Transfer .....................................................................................................27

5.  Loan Histories............................................................................................................28

i.  Escrow Advances and Payment .........................................................................28

ii.  Collection ..........................................................................................................28

iii.  Comments .........................................................................................................28

6.  General Servicing ......................................................................................................29

A.  Escrow .......................................................................................................................29

i.  Escrow Advance Detail ......................................................................................30

ii.  Tax .....................................................................................................................30

iii.  Insurance ...........................................................................................................31

iv.  Mortgage Insurance ..........................................................................................31

v.  Mortgagee Clause ..............................................................................................33

B.  Loss Draft ..................................................................................................................33

C.  Payment Processing ..................................................................................................34

i.  Payments Received Post Transfer Date ..............................................................34

ii.  NSF Items ...........................................................................................................35

iii.  Partial Payments ................................................................................................35

iv.  Misapplied Payment Refund Requests ...............................................................35

v.  Escrow/Suspense Funds .....................................................................................35

vi.  Wiring Instructions ............................................................................................36

D.  ARM Loans .................................................................................................................36

i.  ARM Servicing Field Requirements ....................................................................37

ii.  ARM Schedule Field Requirements ....................................................................37

E.  Special Loan Products ...............................................................................................38

i.  Buy-down/Subsidy Information ..........................................................................38

ii.  Assumptions ......................................................................................................38

iii.  Service Members Civil Relief Act of 2013 (SCRA) ...............................................38

F.  Litigation ...................................................................................................................38

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

SERVICING TRANSFER INSTRUCTIONS

| G. | Successor in Interest | 39 |
| H. | Deceased Borrowers | 39 |
| 7. | Default | 40 |
| i. | Requirements | 40 |
| ii. | Delinquency Data Requirements | 40 |
| A. | Foreclosure | 41 |
| i. | Foreclosure Attorneys | 44 |
| B. | Bankruptcy | 44 |
| i. | Intent to Surrender | 46 |
| ii. | Pre-Petition Fee | 46 |
| iii. | Bankruptcy Notifications | 46 |
| C. | Loss Mitigation | 46 |
| i. | In-Flight - Loan Modification | 47 |
| ii. | Loss Mitigation or Loss Mitigation Mortgage Loan or Loss Mitigation Account | 47 |
| iii. | Loss Mitigation Loan Document | 47 |
| iv. | Notice and Processing of Loss Mitigation Transactions | 48 |
| v. | Appealed Loss Mitigation | 48 |
| vi. | Denied / Disengaged Loss Mitigation | 49 |
| vii. | Hardest Hit Funds Program | 49 |
| D. | Loan Modifications | 49 |
| i. | Modification Loan Requirements | 50 |
| ii. | In-Flight Modifications | 50 |
| iii. | Identification of In-Flight Modifications by Prior Servicer | 50 |
| iv. | Retention Mods – Category Definitions | 50 |
| v. | Retention Mods – Data Requirements by Category | 51 |
| vi. | Completed Modifications | 56 |
| E. | Liquidations – Short Sale and Deed In Lieu | 56 |
| i. | Active Liquidations In-Flight | 57 |
| ii. | Active Liquidations – Definition of Categories | 57 |
| F. | Forbearance and Repayment Plans In-Flight | 58 |
| G. | REO Property | 58 |
| i. | GSE Loans | 58 |
| ii. | Non-GSE Loans | 59 |

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

    iii.   Property Preservation................................................................................................59

**H.  Claims** ............................................................................................................... **61**

    i.    Mortgage Insurance Claims....................................................................................61

    ii.   FHA Insurance Claims ..............................................................................................61

    iii.  VA Insurance Claims ...............................................................................................63

    iv.  USDA Insurance Claims...........................................................................................64

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## Regulatory Overview

TMS shall require any contract regarding the transfer of Mortgage Servicing Rights to obligate the transferor servicer to provide to TMS all documents and information as documented in these Transfer Instructions. Information contained within this document reflects the basic requirements for transferring loans to TMS. Loans included in any transfer that have additional reporting or transfer requirements above investor guidelines must have those requirements documented in the servicing/purchase agreement and such terms must be met by the applicable party.

Each servicing transfer will use an assigned transfer lead as a contact point during the process. The assigned contact shall schedule meetings at a frequency reflective of the complexity of the servicing transfer. In the meetings, at a minimum, the following topics will be discussed: proprietary modifications, detailed descriptions of data fields, known issues with document indexing, and specific regulatory or settlement requirements applicable to some or all the transferred loans. Pursuant to these conversations and all other information TMS has available to it, TMS shall make a judgment as to whether the servicing transfer can be completed in a single servicing transfer, or whether it should be broken up into a series of servicing transfers.

Preliminary data received 30 days prior to the transfer date from the prior servicer will be made available in our data staging area. This data will contain borrower non-public personal information (NPI) and basic loan data to assist applicable lines of business to identify the loans for the borrowers, if they call before the transfer date. If any payment-related questions or any other servicing-based queries are asked by the borrowers, they will be directed to the prior servicer as the loans will still be serviced by them legally. Contractually we will not be able to accept any payments or answer any service-related questions for the borrowers prior to the agreed upon transfer date.

Prior to any release date TMS shall use testing protocols to evaluate the compatibility of the transferred data with the transferee servicer's systems, including the data mapping protocol. Release date refers to the last day of servicing from the prior servicer and transfer date refers to the first day of servicing for TMS. TMS, in its sole discretion, reserves the right to run any data boarding its system against its applicable maximum fee table, specifically including state late fee maximums. TMS, in its sole discretion, shall have the ability to lower any late charge in accordance with its policies and procedures regarding maximum values of late fees.

Five (5) business days post-transfer date, TMS confirms that all loans have been boarded and fully-activated on our system, which shall include identifying or addressing data errors for any of the transferred loans.

As a transferee servicer, TMS shall respond to any Notice of Errors or Requests for Information within regulatory timeframes. As a transferee servicer, TMS shall respond to any Notice of Errors or Requests for Information within regulatory timeframes even if the transferor was servicing the loan at the time of the alleged error or the event about which information is requested.

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

# 1. General Information

All data is required at Preliminary and Final Data Milestones. All information provided to TMS should include and /or incorporate the designated Money Source Inc. Transfer Pool number (to be provided by the Transfer Contact) and Transfer Date. Data should be provided electronically unless otherwise specified.

## i.    TMS Contact Information

The table below contains contact information to be used during the service transfer process.

| Area | Contact Name | Contact Number | Contact Email |
|------|-------------|----------------|---------------|
| Servicing Transfer Coorindator | Helen Sigal | 203-204-1187 | helen.sigal@themoneysource.com<br>Transfer Coordinator |
| Servicing Transfer Escalation | Jaimie Polanski | 203-666-4267 | jaimie.polanski@themoneysource.com<br>Loan Boarding Manager |
| Customer Concern Escalation | BAHA | N/A | clientsupport@servicingdivision.com |
| Escalation | Linda Case | 203-864-3047 | linda.case@themoneysource.com<br>SVP Loan Administration |
| Escalation | Nathan Sands | 203-491-5355 | nathan.sands@themoneysource.com<br>EVP of Servicing |

***Confidential and Proprietary:***
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

ii.    Addresses

| | |
|---|---|
| Correspondence Address: | TMS<br>500 South Broad Street – Suite 100A<br>Attn: Customer Care<br>Meriden, CT 06450 |
| Overnight Payment Mailing Address: | TMS<br>500 South Broad Street – Suite 100A<br>Attn: Payment Processing<br>Meriden, CT 06450 |
| Normal Payment Mailing Address: | TMS<br>P.O. BOX 650094<br>Dallas, TX 75265-0094 |
| Customer Care Hours of Operation: | Mon – Fri 8:00 am – 9:00 pm<br>Sat 8:00 am – 12:00 pm EST. |

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

### iii.    Loan Boarding Timeline Milestones

| Task I.D. | Milestone | ETA for Delivery | Delivery Date |
|---|---|---|---|
| 1 | Servicing Transfer Instructions sent from TMS | T-60 | |
| 2 | Initial Set-Up Worksheet (ISW) received from Prior Servicer | T-45 | |
| 3 | Prior Servicer Imaging Taxonomy | T-45 | |
| 4 | 404 Notices sent/Mailing List required | T-30 | |
| 5 | HAMP Loan/AAA Received | T-30 | |
| 6 | Wiring Instructions received from TMS | T-30 | |
| 7 | Preliminary Master Data Delivered to TMS | T-30 | |
| 8 | Preliminary Replacement/Supplemental Data Delivered to TMS | T-30 | |
| 9 | Preliminary Data Delivered to TMS [Life of Loan Comments / Payment Transaction History] | T-30 | |
| 10 | Preliminary Trial Balance Data Delivered to TMS (including Corporate Advance Balances) | T-30 | |
| 11 | Collateral preparation for shipment (if applicable) | T-30 | |
| 12 | Prelim Image File  / Metadata provided to TMS | T-30 | |
| 13 | In-Flight Loss Mitigation / Loan population provided to TMS | T-30 | |
| 14 | Goodbye Letter needed from Prior Servicer to be Approved for Mailing | T-25 | |
| 15 | AAA Sent back | T-23 | |
| 16 | Retiring Servicer – Goodbye Letter Mailed Date | T-15 | |
| 17 | Retiring Servicer – All allonges completed | T-15 | |
| 18 | Release –  Cutoff  Date / Transfer Date | T-1 | |
| 19 | TMS's 1st day of servicing | T | |
| 20 | Collateral shipment (if Applicable) | T+1 | |
| 21 | Final Master Data Delivered to TMS | T+1 | |
| 22 | Final Replacement/Supplemental Data Delivered to TMS | T+1 | |
| 23 | Final In-Flight Loss Mitigation / Loan population provided to TMS | T+1 | |
| 24 | Final Trial Balance Data Delivered to TMS (including Corporate Advance Balances) | T+1 | |
| 25 | Trailing/Delta Image File (All Partitions) provided to TMS | T+1 | |
| 26 | MERS Transfer of Servicing date (TOS) and (TOB) if Applicable | T+5 | |
| 27 | Invoice Backup provided to TMS | T+5 | |
| 28 | Confirmation of FHA 92080 change (holder and servicer) | T+8 | |
| 29 | TMS Servicer – Welcome Letter Mailed Date | T+10 | |

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

iv.    Initial Setup Worksheet (ISW)

- After notification of the upcoming service transfer, the prior servicer will provide an ISW to TMS at least 45 days prior to the transfer.
- The ISW should be provided within 3 business days of receiving the notification in order to prevent delays.
- The ISW must be signed by an authorized party level or higher.

v.    Kick-off

Prior Servicer service release team and The Money Source Inc's Loan Boarding team will meet to define and set expectations for the transfer process, including coordination of Subject Matter Expert (SME) calls between Prior Servicer and TMS.

***Confidential and Proprietary:***
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## 2. Data Requirements

Required for Preliminary AND Final:

In accordance with CFPB Bulletin 2014-01 and subsequent decisions, all preliminary data shall be provided by the Prior Servicer prior to the transfer date, including loan level detail and balances, Loss Mitigation, Foreclosure and Bankruptcy files. Data files will be provided electronically in Excel or pipe delimited format. All electronic information is to be delivered via a secure site and protocol further defined by TMS Legal and Compliance Team. Other formats compatible with Excel may be accepted but must be mutually agreed upon prior to transfer as defined with the Transfer Coordinator.

IMPORTANT: Under no circumstances should customer data that may contain NPI be sent via email or email attachments. All parties should exchange this information using an agreed upon secure file transfer protocol.

### i.    Data Dictionary/Code Breakers

All information required to accurately interpret, compile and ingest all reports should be delivered from the prior servicer no less than 30 days prior to the Transfer Date. This includes, but is not limited to:

- Master Record Codes
- Payment History Transaction Codes
- Payee Codes
- Escrow Coverage
- Hazard Coverage
- Code Breakers
- Modification Codes
- Modification Type
- ARM Plan Code Definitions
- ARM Index Code Definitions
- Bankruptcy Codes
- Process/Disbursement Stops
- Foreclosure Codes
- Transaction Codes
- Default Codes
- Loss Mitigation Codes
- REO Codes

### ii.    Master Record – Preliminary/Final Data

Provide loan-level information extracted from the legacy servicing system from inception for each loan transferring to TMS. All electronic information is to be delivered via a secure site and protocol in Excel or pipe delimited format, unless otherwise arranged at kick-off. Ensure that all applicable master record files are included in the information provided. Upon request, the Prior Servicer agrees to provide reports for TMS to perform due diligence/mapping prior to the scheduled delivery date as deemed necessary. Such requests shall be made with a minimum of 5 days' notice.

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

### iii.   Preliminary Data

Preliminary Data should be received a minimum of 30 days before the transfer date. The date this information is created should be the same date the preliminary trial balance report is ordered to facilitate preliminary balancing.

### iv.   Final Data

Must be delivered no later than 1 business day post-transfer. Data must be received in the exact same format as the preliminary data. A freeze will be placed to ensure the final trial balance report matches the final balancing.

### v.   MSP Data Requirements

If using MSP, the following list of files will need to be delivered for a successful and complete transfer:

- P4CV – Force Placed Insurance
- P4TB – Transfer Trial Balance
- P1EL – ELOC Loan Listing
- P1ET – Restricted Escrow List
- P1LD – Drafted Loan Listing
- P1LF – Flood Insurance Listing
- S2FT / P4FT – Foreclosure Trial Balance
- S2TF – Pending Assumption Report
- P4BC – ARM Loan Listing
- P4BS – Buy down Loan Listing
- P4GR – Graduated Payment (GPM) Loan Listing
- P4TN – Pending Payoff Report
- S5SB / P4SB – Bankruptcy Trial Balance
- P10N – Loans Service Released
- P4CH – Corporate Advance Activity
- S54C – Loan Activity Report
- S54D – Letter Log History
- P10P – Service Released to New Investor
- P4CZ – Cutoff Reconciliation Report
- S5XS – Service Released Suspense Report
- P10P2 – Tax Ins Listing
- P10P3 – Hazard Ins Listing
- P10S – Mortgage Insurance Listing
- P1AT – Escrow Open Items
- P1BW – Bankruptcy Workstation Report
- S2EH – Escrow Header Listing
- S2FW – Foreclosure Workstation Report
- T309 – Master Ledger Record
- P45C – Customer Account Activity (including transfer date activity)

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- P4CC – Loan Number Cross Reference
- P496 – History of Financial Activity
- S54E – Collection Activity
- S54F – Escrow Analysis Report
- (58j) Loans In Foreclosure
- (58r) Foreclosure Tracking Steps Loan Report
- (58u) Property Inspections Report
- (59p) Foreclosure Codes Header Report
- (59q) Investor Profile Header Report
- (58d) Step File Report
- (58c) Template File
- (57m) PMI Company Header Report
- (58v) Client Options Header Report
- (59s) Supplemental Claims Report
- (59u) HUD Debenture Rate Table Report
- (59v) VA Address Header Report
- (59y) Critical Step Dates Reference File Report
- (5s1) Foreclosure Status By State
- (5s2) Foreclosure Status By Loan Type
- (5s3) Foreclosure Status By MI Company
- (5s4) Foreclosure Status By Pool INSUROR
- (5s5) Foreclosure Status By Foreclosure Stop
- (S5fb) Loss Mitigation Trial Balance
- (S5fk) Loans W/ LMT IND But W/O Status In WKST
- (S581, S582) Tracking Steps Loan Report

vi.    Non-MSP Conversions

The following list of files will need to be delivered for a successful and complete transfer:

- Trial Balance
  Note: This report must contain investor loan number, current balances (principal, escrow, restricted escrow, unapplied/suspense, late charge, and recoverable corporate advance), Interest Paid to Date or Due Date of Next Payment, current interest rate, current principal and interest (P&I) payment, current escrow payment.
- Loss Draft / Restricted Escrow Report
  Note: This report must contain investor loan number / account number, Date of loss, total amount of loss, cause of loss, amount of insurance proceeds received, and distributions made to date, information receive from contractors, repair status, insurance company contact information, contract contact information and information on borrowers current housing status.
- ARM Loan Listing
  Note: Report of all adjustable rate mortgage loans (including account number, due date, current interest rate, current principle and interest (P&I), unpaid principal balance, margin, original P&I payment, original interest rate, ceiling, floor, next rate change date, first and subsequent rate

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

change caps and ARM plan identifier). Code breakers should be included with transfer. ARM plan identifier should provide index, look back days, rounding factor, and months till first analysis.

- Pending ARM Change Report
  Note: All adjustable rate mortgage loans with a pending interest rate and/or payment change date(s) and any adjustable mortgage loans with pending effective interest rate or payment change dates equal to or within forty-five (45) days after applicable transfer date. Report to include but not limited to loan number, due date, current interest rate, current P&I, unpaid principal balance, pending interest rate change, pending payment change, pending effective date and ARM plan identifier.

- Interest Only Loan Listing
  Note: All interest only mortgage loans including loan number, whether loan is fixed or ARM, if reset option exists regarding curtailments during the interest only period, the term of the interest only period, the interest only payment type (recast or fixed), and the date of first fully amortizing payment.

- Hazard Insurance Listing
  Note:  A report listing all loans, with or without hazard and flood insurance containing the following variables:  agent and insurance company payee codes with full descriptions expire date, due date, payment type (escrow vs. non-escrow), payment term, payment amount, coverage amount, coverage type and policy number.

- Flood Determination Listing
  Note: A report including determination date, certificate number, contract type, community number, panel, suffix, flood zone, program status, and map date.

- Forced Place Insurance
  Note: Report showing all mortgage loans with a force placed insurance policy in effect at the time of the applicable transfer date.  This report should indicate if a binder or policy is in effect.

- Flood Insurance Listing
  Note: Report listing all loans with flood insurance (including vendor name, life of loan status, determination date, certificate number, etc.).

- Unpaid Tax List
  Note: A report of open or unpaid tax installments, including current and prior tax cycle.

- PMI Report
  Note: Listing of loans with PMI and MI Type (LPMI, BPMI, Pool, Upfront, 2nd Lien Pool

- Remittance and Reconciliation Reports
  Note: Past 3 months of reporting

- Corporate Advance Balances Reports

- Note: Listing of all mortgagors with recoverable, non- recoverable and third party corporate advances.  This report should include the loan number, loan type, unpaid principal balance, advance transaction code, transaction type, transaction amount, payee, date and reason code.

- Loans Requiring Special Handling
  Note: Listing of all loans with special handling including the type, description and reason for special handling.

- List of loans identified as High Cost/High Price

- Life of Loan Payment History

- Non-Obligors/Successors in interest

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## 3. Imaging Requirements

In accordance with CFPB Bulletin 2014-01 and subsequent decisions, Prior Servicer shall "timely transfer all information and documents in the possession or control of the servicer relating to a transferred mortgage loan to a transferee servicer in a form and manner that ensures the accuracy of the information and documents transferred and that enables a transferee servicer to comply with the terms of the transferee servicer's obligations to the owner or assignee of the mortgage loan and applicable law" all available images which includes: origination/servicing, invoices, loss mitigation, REO, bankruptcy, foreclosure file and letter/notice images to The Money Source Inc in single page .pdf format in accordance with the Servicing File Delivery Timeline. Images should be provided as .zip with the following naming convention: [CompanyName]-YYY-MM-DD##.zip, where ## represents the sequence number to support the submission of multile files with a single day. The zip file should contain a dedicated folder corresponding to each individual loan. The name of the folder should be identical to the servicer's current loan number. Individual image files associated with the loan will be placed in the loan folder. This includes, but is not limited to documents housed within:

- Prior Servicer's document retention
- All ancillary systems as applicable
- All vendor housed images

Images are to be provided as individually labeled files, labeled by the applicable file type (REO, Bankruptcy, etc.), document type and include a document memo with manifest listing the document name(s). Files received in paper or in "blob" non-indexed format will incur an additional $25.00 fee per loan.

A copy of the imaging taxonomy will be provided to TMS no later than 45 days prior to transfer to ensure successful mapping. Prior servicer shall grant access to their document retention platform 45 days prior to transfer for TMS to retrieve documentation deemed necessary.

Note: If a hard drive is used in the delivery of the information, TMS requires the data mail as two separate packages 1) the hard drive 2) the encryption key. TMS will download the images, wipe the hard drive and return the hard drive and encryption key in two separate packages with pre-paid labels provided by the Prior Servicer. Tracking information will be provided to the Prior Servicer upon return.

### i.    Servicing Data File Delivery Timeline

Prior Servicer agrees to the below delivery schedule:

| Initial Population | 30 Days pre-transfer |
|---|---|
| Initial DELTA | 30 Days pre-transfer |
| Goodbye Letters | 1 Day post-transfer |
| Trailing Documents | Daily post-transfer |
| Additional DELTA | Daily post-transfer |
| Final Images | 1 Day post-transfer |
| Claim Files | 1 Day post-transfer |
| Payment Histories | 1 Day post-transfer |
| Hard Copies | 2 Days post-transfer |
| Comment History | ≤ 2 Days post-transfer |

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

| Invoices | ≤ 5 Days post-transfer |
|---|---|

## ii.    Origination/Servicing File

The following documentation is required (at minimum) at the time of preliminary and/or final delivery during the Servicing Transfer to TMS:

- FHA Connection Output for all known indemnifications
- Current Appraisal
- HUD1/Loan Estimate
- 1003 Application
- Recorded Mortgage
- Promissory Note/Riders
- All addenda executed at closing
- First Payment Letter
- Life of Loan Flood Hazard Determination (CoreLogic)
- Hazard Insurance Declaration pages
- Flood Insurance Declaration pages
- MI Certificates
- Copies of all insurance and tax invoices/bills currently tied to a negative escrow balance
- W-9
- Final Closing Disclosure
- Full and complete property legal description
- Title Documents
- Mortgage billing statements
- Year-End interest statements
  - 1098 – Mortgage Interest Statement
  - 1099-INT – Interest Income
  - 1099A – Acquisition or Abandonment of Secured Property
  - 1099C – Cancellation of Debt
- Escrow analysis statements
- Active Payoff Correspondence
- Underwriting package with credit reports
- Mortgage Insurance, Insurance agencies and taxing authority Notices of Sale
- Tax service contract and parcel number
- Complete Loss Draft file
- Litigation Files
  - Pleadings
  - Memos
  - Notes
  - Print Screens
  - All Correspondence

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

### iii.    Loss Mitigation File

The following documentation is required (at minimum) for any account with a completed Modification, Short Sale, Deed-In-Lieu or other Loss Mitigation (including any proprietary) and/or any In-Flight activity at the time of the Servicing Transfer to TMS:

- Solicitation Documents
  - Certified and;
  - Non-Certified
- Underwriting Documents provided by the customer or documents used to determine eligibility, which can include but is not limited to:
  - Borrower income verification
  - Tax Returns/Transcripts
  - Bank Statements
  - Award Letters
  - Rental Agreements
  - Monthly mortgage payment and debt payment calculations
  - NPV calculations
    - Submission
    - Results
  - Escrow analysis and set-up
  - Evidence of each step of the modification waterfall.
- Hardship Affidavit and Application
- Prior Servicer underwriting worksheet
- Items used for evaluation and approval (VM, BPO, Credit Report, NPV, etc.)
- Applicable Investor/Insurer Correspondence (HUD extensions, Variances, Approvals, PFS Approval to participate, etc.)
- Trial Payment Plan Documents mailed to the customer
- Final Modification Documents mailed to the customer
- Final Modification Documents with customer signature
- Non-Delegated Modification approval documents
- All Denial Letters
- Missing and Incomplete Documents Notification letter sent to the customer
- Customer Appeal Letter
- Servicer Appeal Response Letters
- Transaction History for a period of 6 months prior Trial
- 4506-T
- All Acknowledgement Letters
- Certification and Attorney Acknowledge of loans in foreclosure

If imaged copies are not available, prior servicer shall provide hard copies of the modification files along with an electronic transmittal including loan number, type of file, and box number to TMS at the address below:

The Money Source Inc.  Attn:  Loss Mitigation
Address:                135 Maxess Road
City, ST Zip:           Melville, NY 11747

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

iv.    REO File

The following documentation is required (at minimum) for any account in active REO status at the time of the Servicing Transfer to TMS:

- Foreclosure Deed
- Bid worksheet with BPOs
- Property Inspections
- Work orders
- Photographs
- Listing Agreement
- Activity Reports
- Received offers
- Contractor invoices
- Power of Attorney
- Assignment of Mortgage or Quit Claim Deed (if applicable)

v.    Bankruptcy File

The following documentation is required (at minimum) for any account under active, discharged or dismissed Bankruptcy at the time of the Servicing Transfer to TMS:

- Attorney contact information (servicer and debtor)
- Bankruptcy Petition
- Proof of Claim
- Reorganization Plan
- Protection/Consent or Relief from Stay Order
- Motion for Relief of Stay
- Dismissal/Discharge order with loan listing
- All applicable correspondence
- All allonges, as applicable
- Bank copies

vi.    Foreclosure File

The following documentation is required (at minimum) for any account in active Foreclosure status at the time of the Servicing Transfer to TMS:

- Trustee/Attorney Contact Information
- Breach Letter
- Compliance and Regulator Notices or Letters
- Completed Registrations
- Notice of Default/Complaint
- Title Report
- Bid worksheet
- Life of Loan investor reporting history
- All allonges, as applicable

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Bank copies

## vii.  Invoice Reconciliation

The Money Source Inc. has detailed processes outlined in the following section for invoice reconcilement to ensure the prior servicer has provided all required information as of the date of transfer. The purpose of this reconciliation process is to ensure that the dollar amounts listed within the system of record have all supporting documentation to show consistent and accurate data/image exchanges between the Prior Servicer and TMS. Such reconciliation also allows future transferee servicers to receive necessary documentation for corporate advance balances from TMS. Additionally, TMS will be prepared to provide any proof of debt, either by court or borrower request.

### a.  Invoice Delivery

Invoices should be delivered separately from the Servicing Files. If included the prior servicer will incur a $10.00 fee per loan and a manifest of invoices will be required. Invoices should be broken out by type and sub-grouped by expense type and delivered electronically in PDF format.

## viii.  Corporate Advance Backup

Records retained supporting each corporate or escrow advance reported with the preliminary data must be provided to TMS. The files shall be provided by the prior servicer as a separately labeled package, tying out to the final trial balance report. The final trial balance must only include the final list of loans that transferred. Subject files should be provided individually labeled. Bulk transmission shall incur an additional fee of $25.00 per loan and must include the loan level detail. Trailing documentation should be remitted daily post-delivery date.

- Loan Number
- Transaction Date
- Service Date
- Invoice Date
- Fee Amount
- Vendor Name
- Description of Charges (miscellaneous is not an acceptable description)
- Invoice Number
- Identification of Borrower vs. Non-Borrower Fees
- Type (Borrower/Non-Recoverable/Third-Party Recoverable)

Documents include, but are not limited to:
- Title Fee
- Field inspections/property preservation
  - Date stamped photographs (before and after, as applicable)
  - All applicable reports
- BPO Fees
- Appraisal Fees
- Attorney Fees/Costs

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Invoices indexed by line item
- Utilities Paid Receipt (if applicable)
- HOA Ledger (if applicable)
- Tax and Insurance bills tied to negative escrow

To ensure the correct expenses have been applied to escrow accounts and corporate advances, the prior servicer shall include all invoices. Documentation shall be provided with the preliminary data with a creation date equal to the cut-off date for the Preliminary Trial Balance to facilitate balancing the preliminary data. Additionally, Prior Servicer shall provide purged loan histories including but not limited to the following activity and balances up to the transfer date.

- Unpaid Principal Balance
- Escrow Balance
- Corporate Advance Balance (by type)
- Suspense Balance
- Past Payments
- Disbursements
- Borrower Name

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

# 4. Servicing Requirements

## i.    MERS/Transfer of Mortgage

The following MERS data will be included on the Master Passport:

- MIN number
- Registration date
- MOM indicator

Prior servicer is responsible for submitting a transfer of servicing ownership on the MERS website no later than five (5) days after the transfer date.  A Transfer of Servicing report will be prepared by the Prior servicer for transmission to MERS.  TMS will review and accept all transactions within seven (7) days after the transfer date.

## ii.    Assignment of Mortgages and Alllonges

Assignments for loans in foreclosure and bankruptcy should be prioritized as follows:

1. Non-MERS loans that are in foreclosure with a sale date scheduled within 30 days after the Servicing Transfer Date
2. Non-MERS loans that are in foreclosure with a sale date scheduled more than 30 days after the Servicing Transfer Date
3. Non-MERS loans that are not in foreclosure

Assignments in the following states must be sent for recording within 30 days post-transfer:

- CT
- DC
- MA
- WA
- NV
- RI

ALL other assignments are to be sent for recording within 60 days post-transfer and recordable UCC form filings provided if applicable.

ALL allonges must be completed at least 15 days prior to transfer.

## iii.    Title Issues

Loan level data for all loans with known title issues shall be provided by the prior servicer as part of the preliminary data.  At minimum the following should be provided:

- Loan listing
- Description of the title issue
  - Must specify corrective actions and root cause
  - Prior Servicer Attorney Contact Information

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

iv.    Home Mortgage Disclosure Act

The Home Mortgage Disclosure Act (HMDA) was implemented per CFPB Regulation C, later amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act).  To comply with this ruling, TMS requires the following:

- Community Reinvestment Act (CRA) Community – property is located in a CRA-delineated community
- Race – applicant and co-applicant
- Sex – mortgagor and co-mortgagor gender
- Age – mortgagor and co-mortgagor
- Ethnicity – borrower and co-borrower
- Marital Status – the martial status of mortgagor and co-mortgagor
- Refinanced Amount – dollar amount to report to HMDA for refinanced loans
- Household income – total monthly amount for all borrowers used for approval
- Income classification
  - Low – low-income area
  - Moderate – moderate-income area
  - Substantial minority – substantially minority census tract area

v.    Qualified Written Requests/Complaints

All qualified written requests (QWR) and inquiries will be provided by the prior servicer a minimum of 10 days prior to the transfer and all QWR requests received daily post-transfer.  This file must contain, at minimum, the following data points for all QWR received:

- Loan Number
- QWR Type
- QWR Description
- QWR Status
- QWR Resolution
- QWR Comments

All documents necessary to confirm the accuracy of the QWR information provided shall be included by the prior servicer.

vi.    FEMA

Prior servicer shall provide a separate loan listing for all properties affected by a FEMA declaration with the preliminary data 30 days prior to transfer.

vii.    Letters and Notices

Prior Servicer will provide copies of the following in accordance with the Servicing Data File Delivery Timeline.

- Goodbye Letters
- Loss Payee Letters

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Attorney Notification Letters
- ARM Change Notification Letters
- Escrow Chance Notification Letters
- Confirmation of FHA 92080 change
- HUD-PA-426 Notification
- Trustee Notification Letters
- CFPB Early Intervention Notices to Borrower

viii.    Goodbye Letters

Copies of all letters must be provided at minimum 25 days prior to the Transfer Date for mailing approval. The Goodbye Letter must advise borrowers that optional insurance and ACH drafting will be cancelled as of the transfer date. TMS does not offer optional insurance and borrowers must contact TMS for set up of ACH. To be compliant with RESPA guidelines, the Goodbye Letter must be sent at least 15 days prior to the servicing transfer date.

IMPORTANT:

- If a goodbye letter is sent to a Mortgagor, and the servicing for the related mortgage loan is not transferred, then a second letter to the Mortgagor advising that the transfer will not take place must be approved by TMS and sent by prior servicer.
- Prior servicer must provide a Goodbye Letter sample five (5) days prior to mailing to TMS for review and approval.
- TMS must approve all dates, language and information. Approval will occur after due diligence on preliminary requirements has been performed by TMS.

ix.    Credit Bureau Reporting

The prior servicer is responsible for notifying the credit bureaus of the servicing transfer via a monthly transmission to be made no later than 60 calendar days following the Release Date.

The following credit reporting data elements are required:

- Highest Credit or Original Loan Amount
  Note: Report values in whole dollars only the highest amount ever used on the account. For HELOCs.
- Terms Duration
  Note: The duration of credit extended (i.e., how many months the loan is for).
- Terms Frequency
  Note: The frequency for payments due (e.g., monthly, bi-monthly, yearly, etc.).
- Actual Payment Amount
  Note: The amount of the monthly payment received for this reporting period
- Account Status
  Note: Status code that properly identifies the current condition of the account (e.g., current, delinquent, closed, transferred, etc.).

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Payment Rating
  Note: A code that properly identifies whether the account is current, past due, in collections or charged off within the activity period being reported.
- Payment History Profile
  Note: Contains up to 24 months (rolling) of consecutive payment activity.
- Special Comment
  Note: Special comment are used in conjunction with account status to further define the account (e.g., closed accounts, adjustments pending, etc.).
- Compliance Condition Code
  Note: Allows the reporting of a condition (e.g., account in dispute, etc.) that is required for legal compliance as per the Fair Credit Reporting Act (FCRA).
- Amount Past Due
  Note: Whole dollars only.
- Original Charge-off Amount
  Note: Report the original amount charged to loss, regardless of the declining balance.
- Date of Account Information
  Note: Date the account information is as of when sending to the credit bureaus.
- FCRA Compliance/Date of First Delinquency
  Note: Date that the current delinquency began.
- Date Closed
  Note: The date the account was closed to further purchases, paid in full, or sold.
- Date of Last Payment
  Note: The date of the most recent consumer payment, whether full or partial payment is made.
- Date of Birth
  Note: Date of birth of the primary consumer.
- Telephone Number
  Note: Telephone number of the primary consumer.
- ECOA Code
  Note: Defines the relationship of the primary consumer to the account and designates the account as joint, individual, etc., in compliance with the Equal Credit Opportunity Act (ECOA). (1 = Individual and 2 = Joint Contractual Liability)
- Consumer Information Indicator
  Note: Indicates a special condition of the account that applies to the primary consumer (e.g., bankruptcy, etc.).

x.    Bankruptcy & Credit Reporting

The Bankruptcy line of business identifies that loans that will need to have monthly reporting suppressed using the following criteria:

- All active bankruptcy loans
- Discharged Chapter 7 loans are blocked (as the borrower's personal liability has been relieved)

Note: This does not apply to re-performing/reaffirmed accounts.

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## xi.   Investor Reporting

Transfers for FNMA S/A, FNMA S/S, FHLMC, GNMA, and scheduled private investors require a final settlement following the transfer date for the net delinquencies, prepayments, and pool adjustments. Reports containing loan level and pool level details must be provided to TMS five (5) business days prior to the draft date of the agency. TMS will review final settlement detail to the loan level detail boarded to our system. Upon validation, final settlement will be requested from the prior servicer or remitted to the prior servicer's custodial account for the draft. Final settlement remittance is determined based on the transfer date of the agency. Completion of the final settlement must occur two (2) business days prior to the agency draft.

The following Agency and Servicer reports for the prior three months must be received by TMS three (3) weeks prior to the transfer date. Subsequently, all Agency and Servicer reports are to be sent for the prior month end cutoff two (2) weeks prior to the transfer date. All exceptions should be identified, explained, and cleared prior to the transfer date.  Required reporting includes, but is not limited to:

**FNMA**

- P139 Monthly Statement of Mortgage Accounts
- S214 Summary of Paid in Full Remittance
- S215 Consolidation of Remittance Reports
- ZZF4 Loan Activity Report FNMA loans
- FNMA Portfolio Reconciliations Sch 1, 2, & 3
- Reclass Loans
- FNMA Trial Balance Report
- FNMA Final Maturity Due Date Report (LRR02801)
- FNMA LAR Rejects Report
- FNMA Projection Detail Report
- FNMA Enhanced S/S Whole Loans
- FNMA Enhanced MBS
- FNMA PFP New Issues
- FNMA PFP Book
- FNMA PFP Reclass
- FNMA Eligible SCRA Loans
- FNMA Shortage Surplus
- FNMA Applied Transaction Reports
- P4TB Servicing Transfer Trial Balance
- Custodial Bank Account Reconciliations
- FNMA Forms 496 and 496A

**FHLMC**

- T652-1 Individual Loan Reconciliation Report
- T652-3 Individual & Consolidated Loan Payoff Detail Report
- ZZFM-1 Individual Loan Data Cross Reference

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- ZZFM-2 Payoff Summary Report
- S2FH Inactive Loan Activity Report
- ZZFP Loan Level Out Of Balance Report
- P139 Monthly Statement of Mortgage Accounts
- S214 Summary of Paid in Full Remittance
- S215 Consolidation of Remittance Reports
- FHLMC Settlement Summary or FHLMC Form 13F/13S, Scheduled of Mortgages, FHLMC Trial Balance
- Final FHLMC Trial Balance
- FHLMC Collection Report, Cash Analysis, FHLMC Delinquency Report
- FHLMC Loan Reconciliation Difference Report
- FHLMC Prepaid Report
- FHLMC Loan Reconciliation Report
- FHLMC Monthly Account Statement
- FHLMC Forms 59 & 59E with Variance Log
- P4TB Servicing Transfer Trial Balance
- Custodial Bank Account Reconciliations

GNMA

- P139 Monthly Statement of Mortgage Accounts
- S213 Summary of Curtailments Made
- S214 Summary of Paid in Full Remittance
- S215 Consolidation of Remittance Reports
- T646-1 Reconciliation of Principal and Calculation of Minimum Cash Required
- T646-2 Revised Reconciliation of Principal and Calculation of Minimum Cash Required
- T3RF GNMA RFS Loan Record
- S540-2 Pool Reconciliation Error (Pool Deficiency)
- S541-2 Summary Of PI, SF, Advance and Repayment
- T340 & T34X Issuer Monthly Accounting Report (HUD 11710A)
- T341 & T34Y Issuer Monthly Summary Report (HUD 11710D)
- ZZ17 Tracking and Recovery of Negative Principal
- S2RV-1 GNMA Post Cutoff Pool Reconciliation
- P4TB Servicing Transfer Trial Balance
- Prior month reporting day 1 exceptions
- T343 & T34N Liquidation Schedule Reports (HUD 11710E)
- Copy of Original Schedule of Pooled Mortgages (HUD 11706)
- Copy of Schedule of Subscribers and GNMA Guaranty Agreement (HUD 11705) ARM and GPM change reports
- Security Holder Register to include; Name and Address, Certificate Number, Tax ID Number, Pool Number, and Percentage Ownership (ZZ42 – Security Holders List)
- P441-1 Security Holders Master Update
- P440 Pool Master Update
- ZZ46 Reconciliation of Principal & Calculation Of Minimum Cash

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- TRUST ID numbers for all GNMA I Pools
- Custodial Bank Account Reconciliations
- GNMA SCRA Eligible Loans
- List of GNMA Unclaimed Payments
- GNMA e-Access Reports to include Loan Level Exceptions, loan matching, etc.
- GNMA Final Pre-collection Reports
- GNMA WHFIT reporting information

**Privates**

- P139 Monthly Statement of Mortgage Accounts
- S213 Summary of Curtailments Made
- S214 Summary of Paid in Full Remittance
- S215 Consolidation of Remittance Reports
- S540Y Private Pool Detail Report (S/S only)
- T62D Private Reconciliation of Principal and Calculation of Minimum Cash Required
- T62A Private Loan Activity Report
- T62C Private Monthly Accounting Report
- T62E Private Liquidation Report
- T3TC Loan Level Test of Cash
- P4TB Servicing Transfer Trial Balance
- Monthly Exceptions Report
- Custodial Bank Account Reconciliations

### xii.    "Do Not Contact"

Prior servicer will provide the items below for "do not contact" loans where the borrower has obtained Legal Representation:

- Loan List regardless of default status
- Attorney contact information
- Cease and Desists
  - Loan list
  - Date(s) advised
  - Cease and Desist definitions
  - Written or Verbal
    - Provide supporting documents for written
    - Provide trackable data fields for verbal
  - Loan list of Uncontested or Contested litigation loans
  - Handling protocol
  - Final Litigation Report confirming handling
  - Date(s) for upcoming trials, hearings, and state mediation

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## xiii.    Post Transfer

Prior servicers are required to respond to notices of error and written requests received from the borrower or borrowers' agent for a one-year period post transfer or discharge as per CFPB Bulletin 2014-01.  All servicers are required to comply and provide prompt notice to the transferee servicer (TMS) of such inquiries.

TMS may conduct scheduled calls post transfer to discuss pending or unresolved issues resulting from the transfer.

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

# 5. Loan Histories

### i.    Escrow Advances and Payment

A schedule of all transactions credited or debited to the mortgage loan account from inception and any suspense account for the life of the loan to be included with the preliminary and final delivery. Prior servicer must provide instructions on how to determine trial payments and any reversals of the trial payment in their payment history data. A Transaction Code Listing should be included with a breakdown of principal and escrow balances, escrow advances, corporate advances, late charge balances, suspense balances, escrow payments received and disbursed from the prior servicer and prior servicer history. Additional breakdowns of individual transactions totaling all balances provided at transfer. Loans with suspense balances must also include separate reporting with details and descriptions of the funds placed including a minimum of:

- Prior Servicer Loan Number
- Transaction Code(s)
- Transaction Description
- Transaction Date
- Transaction Amount
- Transaction Amount Application
  - When applicable, how funds were applied to multiple balances

### ii.    Collection

Copies of life of loan collection histories from inception are required. Prior servicer should provide delinquency reports on these loans when available. Reports should include a minimum of:

- Delinquency Ratios
- Delinquency Dollar Amount
- Loan Number Listings
- Due Date Listings

### iii.    Comments

All loan servicing comments from inception shall be provided electronically no later than 2 days post-transfer. A second file to be provided no later than 45 days post-transfer. Comment History files should include the loan number, comment date, comment type, comment code and the description of each comment. At minimum, the following comments are required:

- Collection comments
- All servicing system comments
- Application of payment comments
- Loss Mitigation and Default comments
- Any notes created on or after January 10, 2010 referencing communication with the borrower by prior servicer associates related to the loan account

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

# 6. General Servicing

## A. Escrow

Prior servicer will provide preliminary escrow/non-escrow data for all taxes, insurance, and MI/PMI insurance with preliminary and final data sets. Any escrow items for taxes due within 60 calendar days post transfer is to be paid PRIOR to the transfer if the bills have been provided.

IMPORTANT: TMS will not be held liable for any certificates cancelled due to failure to complete a service transfer and/or non-payment of premiums nor for any interest or penalties on tax bills prior to the new Tax Contract setup date.

Data Requirements
- Account Number
- Escrow Type
- Hazard
- Tax Type
- Tax Frequency
- Escrow Amount
- Escrow Due Date
- Policy Number /Parcel ID
- Payee Name
- Payee Address 1
- Payee Address 2
- Payee Address 3
- Payee Zip
- Payee Phone
- Escrow Status
- Next Escrow Due Date
- Escrow Expiration Date
- Coverage
- Coverage Amount
- Escrow Type
- Escrow Status
- Coverage amount
- Insurance Payee Name\Code
- Insurance Payee Address
- Policy Number
- Policy Effective Date (MM/DD/YY format)
- Policy Expiration Date (MM/DD/YY format)
- Flood Zone
- Community Number
- Map Panel

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Certificate Number
- Participating Status
- Community Status
- LOMA/LOMR Date
- Certificate Date

### i.    Escrow Advance Detail

Prior servicer to provide historic file with the breakdown of outstanding escrow advances, invoices and histories (i.e., tax and hazard insurance invoices) via the loan history and escrow data reports with the preliminary and final data set consisting of the following fields:

- Advance date
- Escrow advance amount
- Escrow advance description
- Payee including name
- Payee address
- Payee contact info
- Escrow running balance
- If a payee code is used, a cross-reference of payee codes to payee information is required.

### ii.    Tax

Prior servicer will notify the tax service provider of the change of servicer only if the loans have existing transferable tax contracts with CoreLogic, once the release notification is received by the tax group.

Preferred Tax Vendor Information:

Company Business Name: CoreLogic- Property Tax
Business Address: 95 Methodist Hill Drive Suite 100, NY 14623
Contact Name: Attn: Escrow Dept.
Contact Phone: (844) 847-3084
Contact Fax: (509) 797-8963

If the loans are not contracted with CoreLogic and have an existing transferable tax contract with a tax vendor, then the existing tax contract is to be transferred under TMS's name.  Send the Reverse Add file consisting of the following data:

- Tax Service customer number
- Tax Service contact name
- Email and phone number
- Escrow balance
- Tax contract Number (if available)
- Date of mortgage
- All payee information
- Escrow payee type
- Escrow description (tax ID/parcel)
- Due date

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Amount
- Frequency
- Indicators
- Escrow Status

Prior servicer will provide a list of loans that are escrowed/non-escrowed with preliminary data set and final data set via secure channel which are reported to have:

- Past due taxes (which can be determined using the due date that is provided in the escrow data file)
- Pending tax sale (notification provided with preliminary and final data sets, if applicable)

### iii.    Insurance

Prior servicer will notify all insurance carriers of the transfer of servicing and instruct them to update the loss payee (effective as of the transfer date) to The Money Source Inc within 60 days of transfer. Proof of such notice to update the loss payee must be provided to The TMS in accordance with the Servicing Data File Delivery Timeline. Confirmation of REO Blanket Insurance should be included as applicable. Flood determinations will be established with Assurant who will manage flood areas to ensure any changes are made and updates are documented.

Preferred Insurance Vendor Information:

Company Business Name: ASSURANT Insurance
Business Address: P.O. Box 1194 Springfield, OH 45501-1194
Contact Phone: (877) 521-0263
Contact Fax: (937) 525-8897

### iv    Mortgage Insurance

- Provide all loans with MI, by type, identifying premium frequency, (e.g., lender-paid vs. borrower paid, bulk MI, prepaid MI, etc.) with preliminary and final data sets on the escrow data reports.
- Provide loan listing for all known MI closing errors.
- Mortgage Insurance Notifications
  - Current servicer will notify MI companies of the servicing transfer within 15 days after transfer. Notification will include transfer date and the successor servicer information.
  - TMS HUD ID; 24967-00008
  - Section 184; Provide loan listing, case numbers and receipt of prior year premium remittance

Data Requirements:
- Escrow Type (which relates to the policy type):
  - PMI Monthly

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- o BPMI Annual
- o BPMI Single
- o LMPI monthly
- o LMPI annual
- o LMPI single
- o Credit Enhanced
- Policy Status
  - o Active
  - o Canceled (PMI termination has been processed) with Reason
  - o HPA
  - o Borrower requested – current value
  - o Borrower requested – original value
  - o Canceled – Rescission (Servicer needs to provide the balance of the rescission funds being held and sent to TMS)
  - o Canceled – Other (Servicer needs to the provide the cancellation reason and date of cancellation.
- If the loan is handled as self-insured, the servicer needs to provide the self-insured value of funds being held and sent to TMS.
- If a modification has been completed, provide details (e.g., UPB, forbearance amount, potential forgiveness amount, actual forgiveness amount, etc.).
- If a disclosure issue exists:
  - o What amount was disclosed to the borrower?
  - o How was the issue resolved?
    - Buy down of premium
    - Contributory account created
      - What is the undisclosed portion being paid from a separate (disclosure) account?
      - What is the dollar amount of disclosure funds being sent to TMS?
- Identification of party that remits the credit-enhanced premiums (e.g., lender, investor, trustee, etc.)
- Premium amount
- Escrow frequency
- Escrow status (impounded or non-impounded)
- Policy due date:
  - o Disbursement date
  - o PMI Termination date if policy is cancelled
- Escrow description – Certificate number
- Payee1 Code – insuring company
- Payee2 Code – relates to secondary information
  - o Policy is deferred/zero initial
  - o Policy is rescinded
  - o PMI Termination – borrower initiated based on original value
  - o PMI Termination – borrower initiated based on current value
  - o PMI Termination – based on HPA

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- o Disclosure issue exists and premiums are paid monthly from escrow and/or disclosure funds (stored in a separate account)
- o Disclosure issue exists and the issue was resolved by a premium buy-down
- o Premium disbursements have stopped based on a foreclosure status
- Renewal rate
- MI Coverage percentage
- Policy tax rate (for FL, KY and WV loans)
- Policy tax amount (for FL, KY and WV loans)
- Constant or declining policy status
- Policy effective date

Additional PMI Requirements:
- Midpoint Date
- Cancelation Date
- Termination Date
- Identifier for if PMI is paid current or in arrears
- Identifier for if PMI payment is deferred
- Proof of service transfer for all PMI companies (including USDA)

v.    Mortgagee Clause

The Money Source Inc.  (if private label, applicable name)
ISAOA/ATIMA
P.O. Box 1194 Springfield, OH 45501-1194
Master Policy Numbers



## B.  Loss Draft

Prior servicer will provide a list of loans with loss draft claims in process with the final data set in the loss draft file.

Notes:

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Show hazard claim funds as positive amounts, but only for those claims where funds have been received.
- Comments may otherwise indicate a known claim where funds have not been received; and send loss mitigation file to TMS including any documentation (e.g., inspections, photos, copies of checks, etc.).

Data Requirements:
- Loan number
- Borrower name
- Date of loss
- Total amount of loss
- Cause of loss
- Amount of insurance proceeds received, and disbursements made to date
- Information received from contractors or records of conversations with the same
- Correspondence received from and/or records of conversation with borrower's insurance company
- Repair status reports
- Inspection reports, if applicable
- Copies of checks associated with loss draft activity
- Report of Future Proceeds if Expected
- Estimated Amount
- Hazard insurance is paid out within 45 business days of when funds are transferred to the prior servicers and paid out to the borrower.
- A loss draft funds wire will be sent by the prior servicer five (5) business days after transfer.

## C. Payment Processing

### i.    Payments Received Post Transfer Date

Prior Servicer shall endorse and forward any monthly payments or other funds or payments from a borrower received 60 days after the release date and thereafter to TMS.
- Do not post payments received after the transfer date (unless funds are wired with supporting identification)
- Identify the check with your loan number
- Identify TMS newly assigned loan number
- Date received
- Borrowers Name
- Check number
- Transmittal

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Overnight payments to Payment Processing at the below address:

> The Money Source Inc.
> Attn: Payment Services Dept.
> 500 S Broad Street, Suite 100A
> Meriden, CT 06450

- Sixty (60) days after the release date, any Monthly Payments or other funds or payments by a borrower received by prior servicer shall be returned to the related borrower or forwarded to TMS or remitter if a third party or bill pay.

## ii.    NSF Items

If there is a payment that needs to be reversed after the transfer date, please send the manifest with that payment and a copy of the returned check to the address:

> The Money Source Inc.
> Attn: Payment Processing
> 500 S Broad Street, Suite 100A
> Meriden, CT 06450

## iii.    Partial Payments

TMS shall monitor Partial Payments and determine if any Partial Payment is a true full payment made pursuant to a trial or permanent modification agreement.

## iv.    Misapplied Payment Refund Requests

The prior servicer will send the item, history and backup with the request to TMS. Include the following, as applicable:

- Copy of check if applicable
- History of payment misapplication
- Mailing address for refund check

## v.    Escrow/Suspense Funds

All applicable transfer funds per the purchase/service agreement must be received. These include escrow, suspense, restricted escrow, buy-down, and HUD funds. These are to be provided to TMS via wire and email notification. The wired funds should be received by the day after the transfer date.

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## vi.   Wiring Instructions

**General, Corporate Advance, Escrow/Suspense Funds**
FED Wire funds to: Texas Capital Bank, N.A.
ABA (Routing number): 111017979
For Further Credit to: The Money Source Inc. and 2111039083

**Payoffs**
FED Wire funds to: Texas Capital Bank, N.A.
ABA (Routing number): 111017979
For Further Credit to: The Money Source Inc. and 2111039083

**Pre-Transfer Payoffs**
If payoff funds are received prior to the transfer date, the prior servicer should process the payoff and re-conveyance then provide the loan number(s) so the loan(s) can be deleted from the population.  Forward the payoff funds directly to the investor.

**Post-Transfer Payoffs**
If payoff funds are received by the prior servicer after the transfer date, forward the funds to our Payment Processing Team. Specify that it is a payoff, so the proper action can be taken. If funds need to be forwarded by wire, send an email containing Loan Number, Payoff Information, Effective Date, and Payoff Demand to payoffs@themoneysource.com

**Loss Draft Funds or Lock Box Payments**
Advise the Loan Services Specialist, and send an email referencing the loan number, fund amount, and check number (if applicable) to ccare@themoneysource.com

## D.  ARM Loans

All applicable ARM Specifications, Rates and Payment Change Histories should be provided; listing of your ARM Plan Codes is also required. If you keep separate ARM files, please include those as well. We will need a sampling of Notes and Riders for each different type of ARM product and index rate at least 60 days prior to transfer date.  Please provide copies of all interest rate change letters where the borrower has not made the new payment amount as of the transfer date.

To keep in compliance, on any loan that has had a change, the prior index value must be provided to the borrower when the new interest rate change letter is sent out. Therefore, we will require the interest rate change information on all loans that have had rate changes.  Prior Servicer will provide a report of all ARM loans by product type with the Preliminary Data Set and Final Data Set in the loan-level report. Data to include the following required elements.

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

**SERVICING TRANSFER INSTRUCTIONS**

i.    ARM Servicing Field Requirements
- ARM Index
- Initial Interest Rate
- Original Principle and Interest
- Maximum/Minimum Initial Rate Change Percentage
- Maximum/Minimum Subsequent Rate Change Percentage
- Initial Rate Change Frequency Months
- Initial Rate Change Date
- Recast Date
- Subsequent Rate Change Frequency Month
- Initial Payment Change Date
- Payment Change Frequency in Month Maximum/Minimum Rate for Life of Loan
- Maximum/Minimum Adjustment Cap for Life
- Rate Change Margin
- Look Back Period
- Minimum Rate for Life of Loan
- Factor to Round New Calculation Rate
- Method Used for Rounding Next Date of Interest Rate Change
- Interest Only Flag
- Interest Only Terms
- Identifies Neg Amortization
- Maximum/Minimum Percentage of Original Principal
- ARM Convert Begin
- ARM Convert End
- Conventional Adjustment-Round Factor

ii.    ARM Schedule Field Requirements
- New Interest Rate
- Previous Note Rate
- New Index Rate
- Next Change Date
- Previous Change Date Previous Principle and Interest
- Terms Remain in Month
- Minimum Payment Amount
- Interest Only Payment Amount
- Full Amortized Payment
- New Payment Amount
- LPO Payment Indicator
- MAX/MIN Unpaid Balance Reached Indicator
- ARM Use Payment CAP Code
- Capped Principle and Interest

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Balloon Loan Flag
- Interest Only Flag and Interest Only Terms (Interest Only)
- Fixed Interest Only - Loan Type designator and terms

## E.  Special Loan Products

If you have any special products (e.g., loans with conversion options, GPM loans, HUD 235 loans, pay for performance, simple interest, Balloons, 203k, SCRA, Appeals, 2nd lien, HELOC, etc.) please immediately notify us. A list of these loans and ALL available information/fields/images will be required on these loans.

### i.    Buy-down/Subsidy Information

Prior Servicer shall provide all balance, payment and schedule information

### ii.    Assumptions

TMS requires a loan listing of all pending or past assumption along with a copy of said assumption and all applicable details a minimum of 30 days prior to transfer with the preliminary data.  Previously executed assumptions should be provided as a separate listing with all fees collected and a "Notification of Transfer" for each assumption pending closing.

### iii    Service Members Civil Relief Act of 2013 (SCRA)

Proper documentation shall be provided to TMS supporting data points mentioned below.

- Retiring Servicer loan number
- Effective Date
- Expiration Date
- Date of Service
- Reduced Interest Rate of 6% start date
- Payment schedule
- Waived Fees
- Deployment Orders

## F.  Litigation

The prior servicer is required to provide a loan listing of loans in dispute or other legal proceedings.  The data must be included with the preliminary data 30 days prior to the transfer date.

All loans in litigation must have, at minimum, the following information provided:

- Loan Number
- Reason for Litigation
- Defendants name

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Plaintiffs name
- Court Case Number
- State filed
- Counsel contact information
    - Outside and;
    - Borrower's

## G. Successor in Interest

Copies of all requests for documentation or information required to confirm the individual's identity and ownership interest in the property sent to potential successor in interest shall be provided by the prior servicer. All reports available in the servicing system including, but not limited to the following information must be provided:

- Change of Borrowers Name
    - Current and Previous Name
    - MEM1 Notes
- Transfer of Ownership
    - Release of Liability Date
    - Released Party
    - Deed Transfer Date
- Successors In Interest / Authorized Third Parties
    - Successor In Interest
    - Executor
    - Administrator
    - Power of Attorney
    - Realtor-buyer/seller
    - All other authorized contacts

## H. Deceased Borrowers

A list of loans where the borrower and/or co-borrower(s) is deceased shall be provided by the prior servicer, accompanied by copies of the death certificates and any applicable reports available from their servicing system, including but not limited to:

- The deceased party
- D.O.D confirmation date
- Method of confirmation (death certificate, credit report, other, etc.)

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## 7. Default

In accordance with CFPB Bulletin 2014-01 and subsequent decisions, the prior servicer shall furnish or cause to be furnished all loan level information for loans in default greater than 120 days delinquent and not in Bankruptcy, Foreclosure, Litigation, REO or Forbearance status with the following information at minimum 30 days prior to the transfer date and within 2 days post transfer, including but not limited to:

### i.    Requirements
- Copy of latest required Default Reporting submissions
- All mortgagor/non-obligor names
- Do not close any active workstation(s) with any firm(s) prior to transfer
- Copies of all compliance and regulatory notices
- Copies of all breach letters
  - Date of last letter
  - Due date on last letter
  - Cure period on last letter
- Loan due date
  - Including due dates on any state specific letters
- Cure period on any last state specific letters
- Copies of 14 Day (DOJ) Letter(s)
- Dates of 14 Day (DOJ) Letter(s) sent

### ii.    Delinquency Data Requirements
- Late charge information
  - Balance
  - Factor
  - Minimum/Maximum
  - Type
  - Grace Period
- Corporate Advance Balances
- Due date
- Days past due
- Last payment date
- Foreclosure referral date
- Foreclosure status
- Scheduled sale date
- Bankruptcy (Y/N)
  - Type
  - Date
  - Status
- Available property inspections

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## A. Foreclosure

In accordance with CFPB Bulletin 2014-01 and subsequent decisions, the prior servicer shall furnish or cause to be furnished all Foreclosure data files, including but not limited to:

Data Requirements:
- Loan Account Number
- Borrower Name
- Remaining Principal Balance Amount
- Stage of Foreclosure
- Date Referred to Attorney
- Foreclosure Attorney Contact Name
- Foreclosure Attorney Firm Name
- Foreclosure Attorney Firm Address
- Foreclosure Attorney Phone Number
- Eviction Attorney Contact Name
- Eviction Attorney Firm Name
- Eviction Attorney Firm Address
- Eviction Attorney Phone Number
- Complaint/ 1st Legal Filed Date
- Contested Foreclosure Flag (Y/N)
- BPO/Appraisal Type
- BPO/Appraisal Method
- BPO Order Date
- BPO Completed Date
- BPO Value Obtained
- Vendor Name
- Vendor Phone Number
- Service Completed Date
- Judgment Entered Date
- Publication Begins Date
- Foreclosure Sale Scheduled Date
- Statutory Redemption Date
- Equitable Redemption Date
- Foreclosure Sale Date
- Foreclosure Sale Comments
- Foreclosure Bid Amount
- Foreclosure Sale Amount
- Foreclosure Proceeds Received Date

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

**SERVICING TRANSFER INSTRUCTIONS**

- Attorney Case Number
- Attorney Reference Date
- Foreclosure Attorney Comments
- Foreclosure Start Date
- Foreclosure End Date
- Foreclosure Recommendation Date
- Foreclosure Papers Received Date
- Initial Foreclosure Documents Received Date
- Documents Sent to Investor Date
- Documents Sent to Attorney Date
- Bid Instructions Sent Date
- Appraisal Ordered Date
- Appraisal Received Date
- Investor PMI Report Date
- Eviction Status
- Eviction Start Date
- Eviction End Date
- Property Vacated Date
- Trustee Deed Date
- Property File Sent Date
- Bankruptcy Filed Date
- Bankruptcy Released Date
- Refer to HUD Date
- Preliminary HUD Date
- Final HUD Date
- HUD Occupancy Letter Date
- HUD 91022 Date
- HUD 92800 Date
- Commissioner's Adjusted Fair Market Value Received Date
- Deed to Attorney Date
- Deed to HUD Date
- Title Approval Request Date
- Title Approval Received Date
- Winterized Date
- Property Secured Date
- Notice of Intent to Foreclosure Sent Date
- Foreclosure Notice of Default Preparation Date
- Foreclosure Notice of Default Recorded Date

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Foreclosure Notice of Default Expiration Date
- Foreclosure Type Code
- Foreclosure Contested Date
- Foreclosure Resolved Date
- Sheriff Deed Date
- Foreclosure Resumed Date
- Service Completed Date
- Sale Confirm Date
- Eviction Number
- Eviction Referred Date
- Projected Foreclosure Date
- Number of Days in Foreclosure
- Foreclosure Claim Code
- Foreclosure Damage Code
- Foreclosure Expense Total Amount
- Foreclosure Deed-in-Lieu Code
- Foreclosure Default Date
- Foreclosure Full Settlement Date
- Foreclosure Partial Settlement Date
- Inspection Order Indicator
- Last Property Inspection Date
- Next Property Inspection Date
- Property Inspection Code
- Property Inspection Auto Start Date
- Property Inspection Auto Stop Date
- Foreclosure Reason Code
- Foreclosure Removal Reason Code
- Foreclosure Removal Date
- Foreclosure Status Code
- Foreclosure Status Description
- Foreclosure Current Status Date
- Foreclosure Previous Status Code
- Foreclosure Previous Status Description

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

### i.    Foreclosure Attorneys

If the prior servicer is unable to provide a foreclosure data file until the transfer date, we require that the Prior Servicer provide a list of the attorneys and the activity steps.  Prior Servicer will send transfer notices to assigned foreclosure attorneys informing them of the pending service transfer within (10) ten business days prior to the Servicing Transfer Date.

**Substitution of Plaintiff:**

Prior servicer to instruct the Attorney to contact TMS for instruction.

## B.  Bankruptcy

In accordance with CFPB Bulletin 2014-01 and subsequent decisions, the prior servicer shall furnish or cause to be furnished all Bankruptcy data files, including but not limited to:

**Data Requirements:**
- Loan Account Number
- Bankruptcy Chapter
- Bankruptcy Court/Case Number
- Bankruptcy Attorney Contact Name
- Bankruptcy Attorney Firm Name
- Bankruptcy Attorney Firm Address
- Bankruptcy Attorney Phone Number
- District
- Notice Received Date
- Filed Date
- Name of Filer
- Debtor Intent Type
- Trustee Name
- Trustee Phone Number
- Plan image and treatment
- Confirmation Hearing Date
- Proof of Claim Filed Date
- Proof of Claim Amended Date
- Claim Number
- Claim amount
- Supplemental Claim Number to include amounts and dates
- Entity/Address on filed claim
- Reaffirmation Filed Date
- Consent Order Entered Date

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Consent Order Expiration Date
- Motion for Relief Request Date
- Relief Granted Date
- Objections filed
- Cram down flag
- Cram down data – with documentation of settlement terms
- Bankruptcy Source of Funds (Customer or Trustee paid)
- Date of Last Payment Change Notice
- Date of Last Trial Payment
- Post-Petition Due Date
- Post-Paid By Indicator
- Pre-Petition Due Date
- Pre-Petition Principle and Interest Balance Due
- Pre-Petition Monthly Payment Amount
- Pre-Petition Advance Amount Claimed in POC
- Pre-Petition Interest Balance
- Pre-Paid By Indicator
- Bankruptcy Discharged Date
    - o Chapter 7 discharge with or without Reaffirmation
    - o Chapter 13 discharge – debt survived discharge
    - o Chapter 13 discharge – surrender in plan
- Notice of Final Cure data
- Record of notices sent for Post-Petition Fees and Costs
- Escrow Balances – pre-and post- Chapter 13
    - o Annual notices sent to borrowers for changes in Escrow
- Chapter 13 in the state of Vermont – include previous years' mandatory Y-5 form
- Chapter 7 Asset cases
- Chapter 11 plans
- Chapter 11 APOs - Adequate Protection Order
- Chapter 11 cram downs
- Chapter 12 plans and payment plans & treatment
- 2nd Lien Strips
- Litigated Flag (Y/N) Including objections to POCs and Plans
- Court Denial of Loss Mitigations Date (if applicable)
- Provide the Escrow Analysis that was generated for the Filing of the POC

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

**SERVICING TRANSFER INSTRUCTIONS**

i.    Intent to Surrender

The Prior Servicer will provide a list of the accounts that the homeowner has indicated their intent to surrender the property.


ii.    Pre-Petition Fee

For each Pre-Petition Fee associated with a particular loan account, a separate record should be created with the following attributes:

- Loan Account Number
- Pre-Petition Fee Description
- Pre-Petition Fee Balance Amount


iii.    Bankruptcy Notifications

Bankruptcy Attorneys:

- Prior Servicer will send transfer notices to assigned Bankruptcy Attorneys informing them of the pending service transfer within (10) ten business days prior to the Servicing Transfer Date.
- Prior Servicer to instruct the Attorney to contact TMS for instruction.
- Prior Servicer to request interim Bankruptcy Invoice good through transfer date within (30) days prior to the servicing transfer date.


C.   Loss Mitigation

In accordance with CFPB Bulletin 2014-01 and subsequent decisions, the Prior Servicer shall furnish or cause to be furnished all Loss Mitigation Information with the Preliminary and Final Data, including but not limited to:

Data Requirements:

- Status Description
- Loss Mitigation Package Received (Y/N)
- List of missing documents or information
- Loan Modification Review (Y/N)
- Prior Servicer SPOC contact information
- Loan list of active repayment plans
- Full and complete workout/loss mitigation file
- Loan List identifying all "In-Flight" or pending workouts with document status
- Loan List of completed workouts with aggregate amounts of capitalized expenses
- All documentation used for denial or approval of any plan(s)
- Submitted Application and date of receipt
- Determination of completed applicable

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Whether an evaluation was completed within 30 days of receipt of application and if any loss mitigation offer was extended to the borrower
- Borrower denial appeals
- Pending sale/foreclosure dates
- Acknowledgement Notice
- 30 Day Missing Documents letter, if applicable
- Date of receipt of Completed Package

### i.    In-Flight – Loan Modification

A trial or permanent loan modification offered by Prior Servicer that was either accepted by the Mortgagor or for which the time for the mortgagor to accept the offer has not expired and the offer has not been rejected but is not finalized as a permanent modification before the Servicing Transfer Date. The term also means and includes (a) trial modifications in which any Prior Servicer agreed to modify the payment terms of the mortgage loan unless TMS or a Prior Servicer has clear written evidence that the mortgagor has failed to perform under the trial loan modification terms, and (b) modifications in which the mortgagor completed making the trial payments before the Servicing Transfer Date, but the permanent modification was not input into prior servicer's system before the Servicing Transfer Date.

### ii.    Loss Mitigation or Loss Mitigation Mortgage Loan or Loss Mitigation Account

With respect to any mortgage loan, any modified or proposed payment arrangement, proposed, trial or permanent loan modification, In-Flight Loan Modification, forbearance plan, short sale, deed-in-lieu agreement and any other non-foreclosure home retention or non-retention option offered by Prior Servicer (or any prior owner or investor) that is made available to the mortgagor by or through Prior Servicer (or any prior owner or investor), including any application or request of a mortgagor for any of the foregoing.

### iii.    Loss Mitigation Loan Document

Any agreement, document or instrument evidencing any Loss Mitigation or In-Flight Loan Modification.

Prior servicer should identify accounts with the following attributes:

- In-Flight modifications
- Mediations pending
- Court approvals

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

iv.    Notice and Processing of Loss Mitigation Transactions

TMS and the Prior Servicer agree as follows with respect to any type of Loss Mitigation Account:

1. Prior Servicer shall make all reasonable efforts to provide TMS with Loss Mitigation Information in its possession or control prior to the Servicing Transfer Date

2. Prior Servicer will identify and provide TMS with a list of all Loss Mitigation Mortgage Loans at least thirty (30) days prior to the applicable Servicing Transfer Date and update such information at least five (5) days prior to such Servicing Transfer Date, in accordance with the following categories:

        a. Mortgage Loans in any stage of pending Loss Mitigation, including In-Flight Loan Modifications;
        b. Mortgage Loans approved or converted to a permanent Loss Mitigation outcome within sixty (60) days of the Servicing Transfer Date
        c. Mortgage Loans denied Loss Mitigation within sixty (60) days of the Servicing Transfer Date

3. TMS and the Prior Servicer shall delay the Servicing Transfer Date for any Loss Mitigation Mortgage Loan for which Prior Servicer has not delivered Loss Mitigation Information to TMS as required under this Joint Transfer Plan. Prior Servicer will continue to process any such Loss Mitigation Mortgage Loan until such time as the parties mutually agree to transfer the servicing for such Mortgage Loan.

4. TMS and the Prior Servicer shall cooperate with and assist each other, as reasonably requested, in completing any Loss Mitigation that was in process as of the Servicing Transfer Date. TMS will engage in quality control work to validate that Loss Mitigation Information matches the images, data and documents received from Prior Servicer. The Money Source will make reasonable efforts to identify missing or inaccurate Loss Mitigation Information and request such missing information from Prior Servicer within fifteen (15) days of the Servicing Transfer Date. Prior Servicer shall deliver to The Money Source any missing or incomplete Loss Mitigation Information or other information within ten (10) days of The Money Source's request. The Prior Servicer shall immediately deliver to The Money Source any executed Loss Mitigation Loan Documents received by Prior Servicer after the Servicing Transfer Date.

5. TMS will (i) honor all Loss Mitigation Loan Documents, including In-Flight Loan Modifications, (ii) continue processing pending Loss Mitigation requests received prior to and after the Servicing Transfer Date, and make any related required filings with governmental entities, agencies, investors and insurers in accordance with applicable law, rule, regulation and governing agreements, and (iii) within thirty (30) days of the Servicing Transfer Date, TMS will review and resolve any Loss Mitigation request that was pending within sixty (60) days of the Servicing Transfer Date for which TMS lacks clear written evidence that such request was denied, and provide the mortgagor an opportunity to provide any necessary missing information. Without limiting the generality of the foregoing, after the Servicing Transfer Date, TMS shall service all Mortgage Loans eligible for HAMP modifications in accordance with HAMP.

v.    Appealed Loss Mitigation

Prior Servicer must provide a separate report identifying the accounts that have active appeals, including, but not limited to:

    • Loan Account Number

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Appeal Period Expiration date (if applicable)
- Information on the Reason the Borrower is Appealing
- Current Status of the Appeal (Servicer reviewing, Response letter being drafted, etc.)

### vi.    Denied / Disengaged Loss Mitigation

Prior Servicer must identify the accounts that have a denied or disengaged loss mitigation status within the last 60 days prior to the Servicing Transfer Date

- Loan Account Number
- Date the Borrower was sent a Disengagement Notice
- Reason for the Disengagement
- List of Documents Collected at the Time of Disengagement
- Data requirements for Disengaged Modifications are listed in the above section. TMS will need all data associated with the accounts based on the category the modification was in at the time of the disengagement. See Categories 1-6 Data Requirements.

### vii.    Hardest Hit Funds Program

The Prior Servicer must identify any accounts currently active in the program, with special attention to accounts where the customer is in the application, review and/or approval process for any of the programs.

The Prior Servicer will provide a list of the accounts participating in the Hardest Hit Funds program with the preliminary and final data deliveries which contains the following data attributes:

- Loan Account Number
- Customer Name
- State
- Hardest Hit Funds Plan/Program Type
- Status: Active or In-Flight
- Hardest Hit Funds Activity Start Date
- Hardest Hit Funds Activity Close Date

TMS will not accept accounts that are In-Flight of being reviewed for a Recast program in any state. Completed Recast workouts are acceptable.

### D.    Loan Modifications

TMS understands the unique complexities that involve the transfer of In-Flight loan modification transactions. We make every effort possible to ensure the customer transition to TMS at the same stage of the loan modification process as they were in with their Prior Servicer. Our customer-centric focus and oversight improves the incoming customer experience. For all modification types, the Prior Servicer

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

is required to provide confirmation in writing whether customers with modifications in progress were contacted prior to the transfer to TMS. TMS's preference is that each customer is contacted by phone.

### i.      Modification Loan Requirements
Prior Servicer Shall provide a list of all loans with a pending modification along with a copy of the modification file and all pertinent details 30 days prior to transfer with the preliminary data and 1 day post-transfer with the final data.

### ii.      In-Flight Modifications
Prior Servicer shall provide a list of any loans that have an offer extended or are in a trial period. In-Flight modifications include any In-Flight workout such as solicitation, forbearance, repayment plans, trial payment plans, and permanent modification offers. All documentation received by the Prior Servicer pertinent to the associated with loss mitigation prior to transfer shall be provided in accordance with the Servicing File Delivery Timeline. Any trailing documents should be provided daily post-transfer.

TMS will ensure they receive information regarding loss mitigation with a borrower, including having policy and procedures to identify when any loan modification agreement exists, and to contact Prior Servicer before contacting the borrower about any missing information.

### iii.      Identification of In-Flight Modifications by Prior Servicer
The Prior Servicer must identify the population of loans that are in an active In-Process Modification Status by providing a report with the following:

All In-Flight loans are required to be flagged appropriately and the Prior Servicer shall send a 5-day Acknowledgement Notice on all non-decisioned loans prior to the transfer date. In accordance with CFPB Bulletin 2014-01 and subsequent decisions, all payments received by the Prior Servicer shall be conveyed to The Money Source Inc with the following:

   Data Requirements:
   - Loan Number
   - Plan Status (Active, Pending, Completed, Non-Decision)
   - Plan Type
   - Date of last payment received
   - Maturity Date

### iv.      Retention Mods – Category Definitions
TMS classifies Modifications In-Flight into 6 Active Status' plus Completed Mods:

Category 1 –The borrower has returned a partial Loss Mitigation Application Package and the Prior Servicer is attempting to get a complete Loss Mitigation Application. This category would include borrowers who have been sent an Incomplete Information Notice.

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

Category 2 – All the required documents have been received and the account is being underwritten. This category does not include borrowers who have been mailed a Trial Period Plan

Category 3 - The Trial Calculation has been completed and the Trial Payment Plan has been mailed to the borrower, but no Trial Payments have been received

Category 4 – The borrower has made the first Trial Payment, but has not yet completed the full Trial Period

Category 5 – Borrower has completed the Trial Period, but the Final Modification Agreement documents have not been mailed to the borrower

Category 6 - The Final Modification Agreement documents have been mailed to the borrower, and the borrower has either not returned the modification document, or the borrower has returned the modification document but the terms have not yet been applied to the servicing system.

Completed - The Final Modification Agreement documents have been received back from the borrower, and the modification terms have been applied to the servicing system.

V.    Retention Mods – Data Requirements by Category

Preliminary Data must be provided 30 days prior to the Servicing Transfer Date with periodic updates to be agreed upon by Prior Servicer and TMS. Five days prior to the Transfer Date, the Prior Servicer will provide an updated list of the In-Flight modification accounts.  Final Data should be delivered no later than 1 day after the Servicing Transfer Date.

Group 1:

Required Data Fields

- Loan Account Number
- Investor Code
    o  1 – Fannie Mae
    o  2 – Freddie Mac
    o  3 – Owned by Private investor (that is not the Prior Servicer)
    o  4 – Owned by The Money Source
    o  5 – Ginnie Mae
    o  6 – FHA/VA
    o  7 – State
- Appeal Period Expiration
- Date Acknowledgement Sent
- First Document Received Date
- Foreclosure Date (Foreclosure Date on the date the incomplete Mod package was received)
- Required Document List
- Documents Received List

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

Conditional Data Fields

- Date Borrower Appeal Received
- Date of IIN Letter
- Denial / Disengagement Date
- Denial Reason
- IIN Response Timeframe
- Missing Documents List

Group 2:

Required Data Fields

- Loan Account Number
- Investor Code
  - o  1 – Fannie Mae
  - o  2 – Freddie Mac
  - o  3 – Owned by Private investor (that is not the Prior Servicer)
  - o  4 – Owned by The Money Source
  - o  5 – Ginnie Mae
  - o  6 – FHA/VA
  - o  7 - State
- Appeal Period Expiration
- Date Acknowledgement Sent
- First Document Received Date
- Foreclosure Date (Foreclosure sale date on the day the mod application was completed)
- Required Documents List
- Documents Received List
- Docs Perfected Date
- Application Complete Date

Conditional Data Fields

- Date Borrower Appeal Received
- Date of IIN Letter
- Denial Date
- Denial Reason

Groups 3 through 6

Required Data Fields

- Loan Account Number
- Investor Code
  - o  1 – Fannie Mae
  - o  2 – Freddie Mac
  - o  3 – Owned by Private investor (that is not the Prior Servicer)
  - o  4 – Owned by The Money Source
  - o  5 – Ginnie Mae
  - o  6 – FHA/VA

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

**SERVICING TRANSFER INSTRUCTIONS**

- o   7 – State
- Appeal Period Expiration
- Date Acknowledgement Sent
- First Document Received Date
- Foreclosure Date (Foreclosure sale date on the day the mod application was completed)
- Required Document List
- Documents Perfected Date / Application Complete Date
- Association Dues/ Fees Amount
- Delinquent Interest Amount
- Decision Date
- Borrower Decision Date
- Borrower Decision Expiration Date
- Escrow Shortage Amount
- Hardship Reason Code
- Interest Rate Lock Date
- Last paid Date
- Other Advances
- Post Modification 1st Payment Date
- Post Modification Amortization Term
- Post Modification Escrow Payment Amount
- Post Modification Interest Rate
- Post Modification P&I Amount
- Post Modification Term
- Post Modification UPB Amount
- Post Modification Maturity Date
- Post Modification Paid-Through Date
- Post Modification Principal, Interest, Taxes, Insurance, and Association Dues Amount
- Pre Modification Amortization Term
- Pre Modification Escrow Capitalization
- Pre Modification Escrow Payment Amount
- Pre Modification Interest Rate
- Pre Modification Maturity Date
- Pre Modification Principal & Interest Amount
- Pre modification Principal, Interest, Taxes, Insurance, and Association Dues Amount
- Pre Modification Principal Balance
- Pre Modification Remaining Term
- Product After Modification
- Skip Trial
- Step 1 Months Duration
- Step Count
- Workout Program

Conditional Data Fields

- Date Borrower Appeal Received
- Date of IIN
- Denial Date

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Denial Reason
- Paydown Lien Amount
- Paydown Lien Flag
- Principal Forbearance Amount
- Principal Forgiveness
- Borrower Fico
- Co-Borrower Fico
- Delegated Modification Flag
- FHA HAMP Claim Amount
- Mod PI Payment 240 Term
- Mod PI Payment 360 Term
- Monthly Gross Income
- NACA Modification Indicator (Y / N)
- Net Present Value Date
- Net Present Value Modification Amount
- Net Present Value No Modification Amount
- Post Modification Back Ratio
- Post Modification Front Ratio
- Post Modification Max Interest Rate
- PRA Flag (Principal Write Down – Y / N)
- PRA Forgive Amount
- Pre-Modification Back Ratio
- Pre-Modification Front Ratio
- Property Valuation – As Is Value
- Property Valuation Date
- Property Valuation Method
- Senior Lien PITIA
- Step 2 Months Duration
- Step 2 P&I Payment
- Step 2 Rate
- Step 3 months Duration
- Step 3 P&I Payment
- Step 3 Rate
- Step 4 Months Duration
- Step 4 P&I Payment
- Step 4 Rate
- Step 5 Months Duration
- Step 5 P&I Payment
- Step 5 Rate
- Step 6 Months Duration
- Step 6 P&I Payment
- Step 6 Rate
- Streamline Modification Currently in UW (Required for FNMA Streamline Mods & Streamline Cap & Extend)
- Trial Payment Due Amount 360 Term
- Trial Calculation Date

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Trial DTI
- Trial Duration
- Trial Mail Date
- Trial Payment 1 - Amount Paid
- Trial Payment 1 - Due Date
- Trial Payment 1 - Paid Date
- Trial Payment 2 - Amount Paid
- Trial Payment 2 - Due Date
- Trial Payment 2 - Paid Date
- Trial Payment 3 - Amount Paid
- Trial Payment 3 - Due Date
- Trial Payment 3 - Paid Date
- Trial Payment 4 - Amount Paid
- Trial Payment 4 - Due Date
- Trial Payment 4 - Paid Date
- Trial Payment 5 - Amount Paid
- Trial Payment 5 - Due Date
- Trial Payment 5 - Paid Date
- Trial Payment 6 - Amount Paid
- Trial Payment 6 - Due Date
- Trial Payment 6 - Paid Date
- Trial Payment Amount Due
- Trial Payment Due Amount 240 Term
- Trial Run ID (Required for DOJ Mods)
- Short Term Rate Modification Duration

Optional Data Fields

- Attorney Fees
- Disbursement Forgiven
- Monthly Expenses
- Other Contributions
- P&I 31 Percent
- P&I 38 Percent
- Post Modification Servicing Fee Percent
- Property Condition Code

Category 6: Additional Data

Additional Required Data Fields

- Final Offer Calculation Date
- Final Offer Documents Mailed to Borrower Date

Conditional Data Fields

- Final Modification Offer Borrower Signed Date
- Final Modification Offer Servicer Signed Date

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

## vi.    Completed Modifications

In addition to the data, information and documents required in the Transfer Requirements for Loss Mitigation Accounts, the Prior Servicer must identify the population of loans that are in a Completed Modification Status by providing a report with the following data attributes:

- Loan Account Number
- Loss Mitigation Program
- Date of the Completed Modification
- Data requirements for Completed Mods are listed below in Categories 3 through 6 and Completed Modifications Section

The Prior Servicer must provide data for all modifications completed on the account for the life of the loan.

### Required Data Fields
- All the data fields listed above in categories 1-6
- Date that Prior Servicer Applied the Modification Data to their Servicing System

### Conditional Data Fields
- Borrower HAMP Incentive
- Incentive Good Standing
- Shortage Payment Remaining Term
- Shortage Payment Amount
- Principal Reduction Remaining

### Reporting Data

Prior Servicer must also provide the following reports:

### IR2
- Most recent version of the Tier 1 and Tier 2 IR2 Master Reconciliation (Due 20th of each month)
- Most recent version of the Tier 1 and Tier 2 IR2 Data Quality Report

### HSSN
- Most recent version of the HSSN Reclass Status Report

Most recent version of the HSSN Status Report reflecting month-end data

## E.   Liquidations – Short Sale and Deed In Lieu

In addition to the data, information and documents required in the Transfer Requirements for Loss Mitigation Accounts, the Prior Servicer must identify the population of loans that are in a Liquidation Status.

***Confidential and Proprietary:***
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

**SERVICING TRANSFER INSTRUCTIONS**

### i.    Active Liquidations In-Flight

The Prior Servicer must identify the population of loans that are in an active In-Flight Liquidation Status by providing a report with the following data attributes:

- Loan Account Number
- The type of Loss Mitigation Program
- TMS Category

### ii.    Active Liquidations – Definition of Categories

Category 1 - Accounts where the customer has returned the Borrower Response Package (BRP). The Prior Servicer has started to track receipt of docs and has sent an IIN Letter to the borrower

Category 2 - Accounts where the Acknowledgement Letter has been sent, all documents have been received and the account is being underwritten. Prior Servicer approves a liquidation option

Category 3 - Accounts where the Approval Letter has been sent, but the account has not yet Closed Out with the Prior Servicer

Data Requirements:
- Loan Account Number
- Investor Account Number
- Borrower Name
- Property Address
- Property City
- Property State
- Property Zip code
- Unpaid Principal Balance
- Date the Account was Set Up in Loss Mitigation
- Program Type Indicator
  - Short Sale
  - Deed In Lieu
- Loss Mitigation Short Sale Status
  - Listed for Sale, No Offer
  - Under Review, Docs Not Perfected
  - Under Review, Docs Perfected
  - Approved
  - Denied
- Property Value for Short Sale
- FNMA MANP Value
- Short Sale Offer Amount

***Confidential and Proprietary:***
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Loss Mitigation Deed-in-Lieu Status
    - o  Under Review, Docs Not Perfected
    - o  Under Review, Clouded Title
    - o  Under Review, Clear Title
    - o  Approved
    - o  Denied
- Deed-In-Lieu Attorney Name
- Foreclosure Date (if applicable)
- Scheduled Closing Date
- Agent Name
- Agent Email Address
- Agent Phone Number
- Notification of Missing Docs Sent Date
- Acknowledgement Letter Sent Date

## F.  Forbearance and Repayment Plans In-Flight

The Prior Servicer must identify the population of loans that are in an active In-Flight Collection Modifications by providing a report with the following data attributes:

- Loan Account Number
- The type of Loss Mitigation Program
- Program Terms
    - o  Amounts
    - o  Length
    - o  Start and end dates

## G.  REO Property

The Prior Servicer must identify the population of loans that are in an REO status.   With the following information, at minimum:

### I.  GSE Loans

- REO Date
- Pending Auction Sale Information
- Pending REO Sale
    - o  Y/N
- BPO/Appraisal Type
- BPO/Appraisal Method
- BPO Order Date
- BPO Completed Date
- BPO Value Obtained
- Eviction Started

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

**SERVICING TRANSFER INSTRUCTIONS**

- Eviction Completed
- Contested Eviction
- Reason Property was Acquired
    - Foreclosure Sale
    - Deed in Lieu

ii. Non-GSE Loans
- REO Date
- Pending Auction Sale Information
- Pending REO Sale
    - Y/N
- Reason Property was Acquired
    - Foreclosure Sale
    - Deed in Lieu
- Property for sale indicator
- Property listing agent name
- Property listing agent phone number
- Offer made

iii. Property Preservation

As part of the preliminary data set, the Prior Servicer to provide the following reports:

- A vendor list for all vendors who have provided services for inspection and preservation
    - Contact name
    - Phone number
    - Address
    - E-mail address

- A list of all properties with code violations including the status and if they are paid
- A list of properties with utilities that were "turned on". The name and phone number of the utility company in order to change services over to The Money Source Inc should be included
- A grass cutting list
- A winterization list
- A vacant property list
- A rekey list
- The universal lockbox code(s) used by the Prior Servicer

Prior Servicer to provide Property Preservation and Inspection data file(s) with the following attributes:
- The data field description
- Loan Account Number
- Work Ordered Date, or Vendor Auto Initiated the Work Date
- Request Type
    - Property Registration

***Confidential and Proprietary:***
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- o Inspection
- o Preservation – (Use for any item that does not fit in the other categories here)
- o Re-Key
- o Interior Inspection
- o Bid Approval – (For Bid Work Results)
- o Winterization
- o Utility Activation
- o Hazard Claim
- o DIL Inspection
- o DIL Re-Key
- Work Completed Date
- Vacant Flag (Y or N)
- Status Code
  - o Completed
  - o Cancelled
  - o Pending
  - o Unable to Complete
  - o Excellent
  - o Good
  - o Fair
  - o Poor
  - o Utilities on Flag (Y/N)
  - o Property for sale indicator (Y/N)
  - o Property Listing Agent Name
  - o Property Listing Agent Phone Number
  - o Vendor Work Order Number
  - o First Time Vacant (FTV) Date
  - o Re-keyed indicator (Y/N)
  - o Re-keyed Date
  - o Winterization Date
  - o Code Violations Flag (Y/N)
  - o Code Violations Cured Flag (Y/N)
  - o Property Condemned Flag (Y/N)
  - o Property Condemned Date
  - o Property Abandoned Flag (Y/N)
  - o Property Abandoned Date
  - o Damage Amount (in Dollars)
  - o Damage Description
  - o Damage identified Date
  - o Property Currently for Rent Flag (Y/N)
  - o Property Rental Person/Agency Name
  - o Property Rental Person/Agency Phone Number
  - o Tenant Occupied Indicator (Y/N)
  - o REO Flag (If property is currently REO – Y/N)
  - o Comments Relevant to Work Order or Inspection Results
  - o Instructions from Prior Servicer to Vendor on Work Orders or Inspections

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form
or any means.

## H. Claims

### i. Mortgage Insurance Claims

By no later than 30 days prior to the Service Transfer Date, a call is to be conducted with the appropriate Prior Servicer's Mortgage Insurance contacts to review the following for Active Claims, and Loans which need an MI Claim filed within two weeks prior to the Servicing Transfer Date:

- Loan Listing
- List of claims filed within the past 6 months
- List of loans transferred post-sale with attorney chronology when applicable
- Current MI Claim Volume
- Current MI Claim Procedures
- MI Claims Filing Method
- Contact for Missing Origination & Servicing Doc Requests
- Sub-servicers: GSE Lender/Servicer ID

Data Requirements:
- Claim Type (Foreclosure, Short Sale, Deed-in Lieu, Modification, Partial, Incentive)
- MI Company Name
- MI Certificate Numbers
- MI Claims Status (ex. Filed, Gathering Docs, Pending Disposition)
- Claim Filed Date
- Claim Paid Date
- Claim Paid Amount
- Supplemental Claim Filed Date
- Supplemental Claim Filed Amount
- Supplemental Claim Paid Amount
- Supplemental Claim Paid Date
- Loans with a MI rescission/rebuttal
- Loans which have the MI claim filed but pending disposition.
- Loans with MI rescissions/denials that have not been processed and are pending responses

### ii. FHA Insurance Claims

By no later than 30 days prior to the Service Transfer Date, a call is to be conducted with the appropriate Prior Servicer's Mortgage Insurance contacts to review the following for Active Claims and Loans which need a claim filed within 2 weeks prior to the Servicing Transfer date.

- Loan Listing
- List of claims filed within the past 6 months

**Confidential and Proprietary:**
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

**SERVICING TRANSFER INSTRUCTIONS**

- List of loans transferred post-sale with attorney chronology when applicable
- Current FHA Claim Volume
- Current FHA Claim Procedures
- FHA Claims Filing Method
- Contact for Missing Origination & Servicing Doc Requests
- Sub-servicers: GSE Lender/Servicer ID

Data Requirements:

- Claim Type (Foreclosure, Short Sale, Deed-in Lieu, Modification, Partial, Incentive)
- Part A Claim Due Within Next 10 Days
- Part A Filing Date
- Part A Payment Date
- Part B Claim Due Within Next 5 Days
- Part B Filing Date
- Part B Payment Date
- Supplemental Claim Due Within Next 5 Days
- Supplemental Filing Date
- Supplemental Payment Date
- FHA Connection Claim Status (Active or Suspended)
- Eviction Start Date
- Eviction Cancelled Date
- Eviction Completion Date
- Lockout Date
- Cash For Keys Offered Date
- Cash For Keys Accepted Date
- Cash For Keys Amount Paid
- Repairs in Process
- Repairs Waiting on Bids
- Over-allowable at HUD – Waiting Approval
- Extension Requested
- Extension Approved
- Approved Extension Date
- Part of an HOA
- HOA Name
- HOA Contact
- HOA Payment Address
- Current Occupancy
- Title Package Received Date

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

- Title Issue Identified
- Appeal in Process (Y/N)
- Terminated Case Indicator
- Reconveyance in Process (Y/N)

### iii.    VA Insurance Claims

By no later than 30 days prior to the Servicing Transfer Date a call is to be conducted with the Prior Servicer's VA Insurance contacts to review the following for Active Claims and Loans which need a Claim filed within two weeks of the Servicing Transfer Date.

- Loan Listing
- List of claims filed within the past 6 months
- List of loans transferred post-sale
  - Attorney chronology if applicable

- Current VA Claim Volume
- Current VA Claim Procedures
- VA Claims Filing Method
- Contact for Missing Origination & Servicing Doc Requests
- Sub-servicers: GSE Lender/Servicer ID

Data Requirements:
- Claim Type (Foreclosure, Short Sale, Deed-in Lieu, Modification, Partial or Incentive)
- TOC Filing Date
- TOC Paid Date
- TOC Rejected
- 1874 Filing Date
- 1874 Paid Date
- Supplemental Filing Date
- Supplemental Payment Date
- Percent Guarantee Claim Filed
- Percent Guarantee Claim Paid
- Reconveyance in Process (Y/N)
- Appeal in Process (Y/N)
- The Seller is required to forward the completed document to the address or fax printed on the form
- The Seller is required to provide TMS a copy of the Loan Note Guarantee Certificate via the SFTP site

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

iv.       USDA Insurance Claims

By no later than 30 days prior to the Servicing Transfer Date a call is to be conducted with the Prior Servicer's USDA Insurance contacts to review the following for Active Claims and Loans which need a Claim filed within two weeks of the Servicing Transfer Date.

- Loan Listing
- List of claims filed within the past 6 months
- List of loans transferred post-sale
    - Attorney chronology if applicable

- Current USDA Claim Volume
- Current USDA Claim Procedures
- USDA Claims Filing Method
- Contact for Missing Origination & Servicing Doc Requests
- Sub-servicers: GSE Lender/Servicer ID

    Data Requirements:
- Claim Type (Liquidation, Foreclosure, Short Sale, Deed-in Lieu, Modification, Partial or Incentive)
- Supplemental Filing Date
- Supplemental Payment Date
- Percent Guarantee Claim Filed
- Percent Guarantee Claim Paid
- Appeal in Process (Y/N)
- Transfer confirmation

*Confidential and Proprietary:*
Prior written permission from The Money Source Inc. must be obtained before the use, reproduction or transmission in any form or any means.

# EXHIBIT IV

To Subservicing Agreement
Between
The Money Source Inc. and Equity Prime Mortgage LLC

## FORM OF RESOLUTION

### ACTION BY UNANIMOUS WRITTEN CONSENT

### OF THE MEMBERS OF

### Equity Prime Mortgage LLC ("Company")

5/22/2020 ~~DBA~~

As of this ~~day of November 2019~~, the undersigned, being all of the Members of the Company, hereby consent to and adopt the following resolutions:

WHEREAS, the Company desires to engage The Money Source Inc., ("TMS") to subservice certain residential mortgage loans pursuant to a subservicing agreement by and between TMS and Company.

NOW, THEREFORE, IT IS RESOLVED BY THE MEMBERS OF THE COMPANY THAT:

1.    Company is hereby authorized and directed to enter into and execute each of the following documents:

    (a)    the Subservicing Agreement between Company and TMS (the "Agreement");

    (b)    any and all other agreements and documents in connection with the Agreement,

2.    Any one of the following officers are separately and independently authorized and directed to execute and deliver the Agreement, and to do any and all things which he or she may deem necessary or desirable in connection with the Agreement, including approving, executing and delivering any amendments or modifications thereto:

| Name/Title | Signature |
|---|---|
| Derk B Allison, CFO | /s/ DB Allison |
| | |
| | |
| | |
| | |

3.    Any one of the following officers and/or employees is separately and independently authorized to take the following actions in connection with the Agreement: (a) request the subservicing of a mortgage loan; (b) sign receipts acknowledging delivery of funds and documents from TMS; (c) request and effect transfers of funds; and (d) ship and release documents to TMS:

[Continued on next page]

| Name/Title | Signature | Restrictions (if any) |
|---|---|---|
| Derk Allison CFO | DBAllison | None |
| | | |
| | | |
| | | |

RESOLVED, FURTHER, that all actions heretofore taken by any authorized officer of the Company in connection with the transactions contemplated by the foregoing resolutions be, and each such action hereby is, approved, ratified and affirmed in all respects.

This written consent may be executed by the several Members of the Company in counterparts. All the counterparts, or the signed signature pages thereof attached to one counterpart, shall constitute the appropriate approval of this written consent.

IN WITNESS WHEREOF, the undersigned, being all of the Members of the Company, have executed this Unanimous Written Consent, effective as of the date first written above.

| Name | Signature |
|---|---|
| Eddy Perez | |
| KP Patel | Lizjan Patel |
| | |
| | |
| | |
| | |

**EXHIBIT V**

To Subservicing Agreement
Between
The Money Source Inc. and Equity Prime Mortgage LLC

**LIMITED POWER OF ATTORNEY**

**Whereas**, it is in the interests of Equity Prime Mortgage LLC ("Lender/Servicer"), 5 Concourse Parkway, Suite 2250, Atlanta, GA 30328, to authorize, The Money Source Inc. ("Subservicer"), 135 Maxess Road Melville, New York 11747, to act on behalf of and sign as attorney in fact for Lender/Servicer for the sole purposes of executing loan documents with respect to any mortgage loan serviced by Subservicer pursuant to the Subservicing Agreement dated November 1, 2019 (the "Agreement") and any subsequent Subservicing Agreements between Subservicer and Lender/Servicer, and all exhibits and schedules to such Agreements, as any of them may be from time to time amended, restated, modified or supplemented through executed amendments, Statements of Work or addenda and to:

1)     release the lien of any such mortgage loan in which payoff funds have been received;

2)     execute any and all documents necessary to foreclose upon the property securing any such mortgage loan, including, but not limited to, (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of Lender/Servicer, (c) Affidavits of Non-Military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds to the United States Department of Housing and Development or the United States Department of Veterans Affairs, (g) Special Warranty Deeds to the United States Department of Housing and Urban Development or the United States Department of Veterans Affairs, (h) Affidavits regarding lost promissory notes, and (g) endorsements of promissory notes to United States Department of Housing and Development or the United States Department of Veterans Affairs on behalf of Lender/Servicer as a required part of the claims process;

3)     take any and all actions and execute all documents necessary to protect the interest of Lender/Servicer in any bankruptcy proceeding, including, but not limited to, (a) execute Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) enter a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor or any adjournment thereof, and vote on behalf of Lender/Servicer on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

4)     assign the lien of any such mortgage loan naming MERS as the mortgagee when Lender/Servicer is the current promissory note-holder and the loan was closed and registered on the MERS System;

5)     take any and all actions and execute all documents necessary to refinance, amend or modify any such loan;

6)     endorse checks made payable to Lender/Servicer that are received by Subservicer as agent for payment on any such mortgage loan;

7)     pursuant to written direction and authorization by Lender/Servicer, take any and all actions and execute all documents necessary and sufficient to effectuate the sale and transfer of loans to a new owner in accordance with the specific terms of a written and signed by Lender/Servicer purchase and sale agreement; and

8)     take any actions and execute such documents as may be necessary to fulfill Subservicer's servicing obligations to Lender/Servicer with respect to such mortgage loans.

This limited power of attorney is effective immediately and will continue until the expiration or termination of the Agreement and any subsequent Subservicing Agreements between Subservicer and Lender/Servicer. This limited power of attorney may only be used in the execution of the powers herein by those Subservicer officers or employees who have been duly appointed as signatories by Subservicer. Lender/Servicer shall have the right to limit such signing authority or may revoke signing authority from any officer or employee for any reason. If an officer or employee of Subservicer no longer works for Subservicer, such person's or persons' powers under this limited power of attorney shall be automatically revoked. Lender/Servicer hereby ratifies and adopts any action by Subservicer taken prior to the execution of this limited power of attorney that is consistent with the powers granted herein. Lender/Servicer agrees that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. Lender/Servicer shall indemnify a third party from any claims that arise against the third party because of its reliance on this power of attorney.

By these hands witnesseth that I, _Derk Allison_, being the _CFO_ of Equity Prime Mortgage LLC, am a duly authorized corporate officer and am authorized to grant this power of attorney on behalf of Lender/Servicer on this _22_ day of _May_, 2020.

_____ [SEAL]

On this _22_ day of _May_ in the year 2020 before me, the undersigned, personally appeared _Derk Allison_, _CFO_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the County of _Cobb_, State of _Georgia_.

WITNESS my hand and official seal.

James J Lyons
NOTARY PUBLIC
Cobb County, GEORGIA
My Commission Expires
04/17/2022

NOTARY STAMP GOES HERE

Print Name _James J. Lyons_

My commission expires: _4-17-2022_

# LIMITED POWER OF ATTORNEY

**Whereas**, it is in the interests of Equity Prime Mortgage LLC ("Owner/Servicer") to authorize, The Money Source Inc. ("Subservicer") to act on behalf of and sign as attorney in fact for Owner/Servicer for the sole purposes of executing loan documents with respect to any mortgage loan serviced by Subservicer pursuant to the Subservicing Agreement dated November 1, 2019 (the "Agreement") and any subsequent Subservicing Agreements between Subservicer and Owner/Servicer, and all exhibits and schedules to such Agreements, as any of them may be from time to time amended, restated, modified or supplemented through executed amendments, Statements of Work or addenda and to:

1) release the lien of any such mortgage loan in which payoff funds have been received;

2) execute any and all documents necessary to foreclose upon the property securing any such mortgage loan, including, but not limited to, (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of Owner/Servicer, (c) Affidavits of Non-Military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds to the United States Department of Housing and Development or the United States Department of Veterans Affairs, (g) Special Warranty Deeds to the United States Department of Housing and Urban Development or the United States Department of Veterans Affairs, (h) Affidavits regarding lost promissory notes, and (g) endorsements of promissory notes to United States Department of Housing and Development or the United States Department of Veterans Affairs on behalf of Owner/Servicer as a required part of the claims process;

3) take any and all actions and execute all documents necessary to protect the interest of Owner/Servicer in any bankruptcy proceeding, including, but not limited to, (a) execute Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) enter a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor or any adjournment thereof, and vote on behalf of Owner/Servicer on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

4) assign the lien of any such mortgage loan naming MERS as the mortgagee when Owner/Servicer is the current promissory note-holder and the loan was closed and registered on the MERS System;

5) take any and all actions and execute all documents necessary to refinance, amend or modify any such loan;

6) endorse checks made payable to Owner/Servicer that are received by Subservicer as agent for payment on any such mortgage loan;

7) pursuant to written direction and authorization by Owner/Servicer, take any and all actions and execute all documents necessary and sufficient to effectuate the sale and transfer of loans to a new owner in accordance with the specific terms of a written and signed by Owner/Servicer purchase and sale agreement; and

8) take any actions and execute such documents as may be necessary to fulfill Subservicer's servicing obligations to Owner/Servicer with respect to such mortgage loans.

This limited power of attorney is effective immediately and will continue until the expiration or termination of the Agreement and any subsequent Subservicing Agreements between Subservicer and Owner/Servicer. This limited power of attorney may only be used in the execution of the powers herein by those Subservicer officers or employees who have been duly appointed as signatories by Subservicer. Owner/Servicer shall have the right to limit such signing authority or may revoke signing authority from any officer or employee for any reason. If an officer or employee of Subservicer no longer works for Subservicer, such person's or persons' powers under this limited power of attorney

shall be automatically revoked. Owner/Servicer hereby ratifies and adopts any action by Subservicer taken prior to the execution of this limited power of attorney that is consistent with the powers granted herein. Owner/Servicer agrees that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. Owner/Servicer shall indemnify a third party from any claims that arise against the third party because of its reliance on this power of attorney.

By these hands witnesseth that I, James Minghini                , being the Chief Compliance Officer of Owner/Servicer, am a duly authorized corporate officer and am authorized to grant this power of attorney on behalf of Owner/Servicer on this 2nd day of December  , 2021.

Print Name:  James Minghini

Title:        Chief Compliance Officer

> A notary public completing this attestation verifies only the identity of the individual who signed the document to which this attestation is attached, and not the truthfulness, accuracy, or validity of that document

On this **2nd** day of **December** in the year 2021 before me, the undersigned, personally appeared **James Minghini** , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual executed the instrument, and that such individual made such appearance before the undersigned in the County of **DeKalb** , State of **Georgia** .

I certify under PENALTY OF PERJURY under applicable law that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

S Dixon
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires 06/08/2025
NOTARY STAMP GOES HERE

Print Name:  Shalanda Dixon

My commission expires: _____