# Exhibit J

PALLAS

Jill L. Forster
Jill.Forster@pallasllp.com
Tel: 212-970-2306

August 4, 2025

**VIA ECF**

The Honorable Judge Dale E. Ho
United States District Judge
Southern District of New York
40 Foley Square, Courtroom 905
New York, NY 10007

Re: *Stanwich Mortgage Acquisition Company VIII, LLC v. Equity Prime Mortgage, LLC*, **No. 24-cv-771 (DEH)**

Dear Judge Ho:

This firm represents plaintiff Stanwich Mortgage Acquisition Company VIII, LLC ("Plaintiff") in the above matter. We write to respectfully request leave to file a motion for summary judgment, seeking judgment in favor of Plaintiff and against Defendant on a straightforward breach of contract claim arising out of undisputed and admitted facts.

This action arises out of defendant Equity Prime Mortgage, LLC's ("Defendant") failure to honor its contractual obligations to Plaintiff pursuant to a Mortgage Loan Purchase and Sale Agreement, dated as of February 1, 2022 ("MLPA"), governing Plaintiff's purchase, and Defendant's sale, of certain agency-guaranteed residential mortgage loans (the "Mortgage Loans"), the proceeds of those loans, and associated rights to administer those loans, or "servicing rights." As agency-guaranteed residential mortgage loans, if a borrower fails to make payments owed, the relevant agency typically covers those losses, in whole or in part, when the lender's servicer files an insurance claim with the agency (a "Claim"). Because these types of loans are generally made to borrowers with a higher risk of nonpayment, the availability of insurance proceeds to compensate for this elevated risk is an integral aspect of acquiring agency-guaranteed residential mortgage loans.

Here, the MLPA provided for Defendant's servicer — Third-Party Defendant The Money Source, Inc. — to continue servicing the Mortgage Loans for a brief period after Plaintiff acquired the Mortgage Loans before servicing rights transferred to Plaintiff (the "Interim Servicing Period"). The MLPA obligated Defendant to ensure that its servicer followed "Accepted Servicing Practices" during this Interim Servicing Period, including by timely and properly filing any Claims on the Mortgage Loans and by, no later than April 1, 2022, transferring any Claim proceeds to Plaintiff. Defendant failed to do so with respect to fourteen of the Mortgage Loans, resulting in a loss of $972,210.47 of Claim proceeds that should have been received by Plaintiff, but were not.

The purchase price paid by Plaintiff included a specified percentage of the principal balance of each Mortgage Loan plus interest accrued on the Mortgage Loans but not yet paid. For the fourteen Mortgage Loans at issue here, Plaintiff did not receive what it paid for because Defendant entered into loan modification agreements during the Interim Servicing Period that wrote down the principal balance of and accrued interest on these loans. The undisputed evidence establishes that those modifications gave rise to Claims in the aggregate amount of $972,210.47. Defendant's servicer had to submit these loan modification agreements to the relevant agency and it is industry standard practice to file Claims at or around the same time that loan modification agreements are submitted.

For eight of those Mortgage Loans, Defendant and its servicer produced documents and admitted facts establishing that Defendant's servicer successfully filed Claims, Defendant received $548,361.21 in insurance proceeds on the Claims, and those proceeds were not transferred to Plaintiff, in violation of the MLPA.[1]

For the remaining six loans, Defendant's servicer failed to successfully file Claims in violation of Accepted Servicing Practices. When servicing of these loans transferred to Plaintiff's servicer at the end of the Interim Servicing Period, neither Defendant nor its servicer provided the necessary information for Plaintiff's servicer to determine that it should or could submit Claims on these loans — such as identifying whether modifications had been completed, Claims had been filed, and/or Claim proceeds had been received — and Claims related to Defendant's loan modification agreements can no longer be submitted.

The above undisputed and admitted facts establish Defendant's breach of the MLPA and, thus, the Court should grant Plaintiff leave to file a motion for summary judgment to efficiently dispose of this matter.

Respectfully submitted,

*Jill L. Forster*

Jill L. Forster

---

[1] *See, e.g.*, Excerpts of Equity Prime Mortgage LLC's Response to Plaintiff's First Set of Requests for Admission, attached hereto as Exhibit A, Response to Request for Admission Nos. 2, 5, 8, 11, 14, 17, 20; Defendant's letter in opposition to Third-Party Defendants' request for leave to file a motion for summary judgment, dated Aug. 1, 2025 (ECF No. 59) (admitting that for certain loans "TMS failed to update the loan's owner in the claims, so the funds were incorrectly forwarded to EPM").