```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STANWICH MORTGAGE ACQUISITION
COMPANY VIII, LLC,                                              Docket No.: 1:24-cv-00771-DEH

                        Plaintiff,

        -against-

EQUITY PRIME MORTGAGE, LLC,

                        Defendant.
----------------------------------------------------------------X
EQUITY PRIME MORTGAGE, LLC,

                        Third-Party Plaintiff,

        -against-

THE MONEY SOURCE INC. and
SERVBANK, SB,

                        Third-Party Defendants.
----------------------------------------------------------------X
```

**DECLARATION OF LINDA CASE IN SUPPORT OF THIRD-PARTY DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

I, Linda Case, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am employed by The Money Source Inc. ("TMS") as an SVP Loan Administrator. I have held this position for three years. My responsibilities include oversight of TMS's servicing operations, including subservicing functions performed on behalf of investor clients.

2.      I am familiar with TMS's servicing practices and procedures, including its handling of FHA-insured loans and FHA claim submissions, and with TMS's books and records for the mortgage loans that are the subject of this action (the "Subject Loans"). I make this declaration based on my personal knowledge, my review of TMS's business records maintained in the ordinary

course, and my understanding of FHA claim procedures. If called as a witness, I could and would testify competently to the matters set forth herein.

3. During the period from November 1, 2019 through March 2022, TMS acted as subservicer for certain loans owned by Equity Prime Mortgage, LLC ("EPM") pursuant to a Subservicing Agreement dated November 1, 2019 (the "2019 Subservicing Agreement"). The Subject Loans identified in the Motion were on EPM's servicing platform during this time, with TMS subservicing them on EPM's behalf. After the March 2022 servicing transfer to SMAC's servicer, Carrington Mortgage Services, LLC ("Carrington"), TMS did not service the Subject Loans.

4. For FHA-insured loans, FHA claim payments were disbursed by the U.S. Department of Housing and Urban Development ("HUD") by electronic funds transfer ("EFT") to the FHA mortgagee's designated claim-payment account. HUD does not disburse FHA claim payments to the subservicer in its own name; it remits approved claim amounts to the mortgagee identified on the FHA case.

5. In the ordinary course, TMS does not receive FHA claim proceeds into any account held in TMS's name. For FHA-insured loans that TMS services or subservices, any approved claim is paid by HUD to the mortgagee of record (here, EPM) via EFT, using the mortgagee's FHA account information on file with HUD.

6. In connection with this action, I have reviewed HUD Advice of Payment ("AOP") records for eight of the Subject Loans that were the subject of FHA partial-claim or short-sale claims (the "Claim Loans"). True and correct copies of those AOP records, produced by TMS in discovery and Bates-stamped TMS0014-TMS0022, are attached to the Declaration of Colleen O'Neil as Exhibit I.

7. The AOPs for the Claim Loans reflect that HUD approved FHA partial-claim or short-sale claims and disbursed "FHA EFT PAYMENTS" in specific dollar amounts for each loan, with EPM identified as the mortgagee and TMS identified as the servicer. The AOPs show that those payments were remitted by EFT to the FHA mortgagee (EPM), not to TMS.

8. TMS's accounting and remittance records for the Claim Loans are consistent with the AOPs. Those records confirm that TMS submitted the FHA claims for the Claim Loans and that HUD remitted the approved claim amounts by EFT to EPM's FHA claim-payment account. TMS did not receive those FHA claim proceeds into any TMS account and did not hold those proceeds at any time.

9. In addition to the eight Claim Loans, there are six Subject Loans that TMS identified in its March 21, 2022 "Loss Mitigation for Service Transfers" report as being in active FHA or VA loss mitigation at the time of the servicing transfer (the "In-Flight Loans"). A true and correct copy of that report, produced by TMS in discovery and Bates-stamped TMS0001-TMS0013, is attached to the O'Neil Declaration as Exhibit H.

10. The "Loss Mitigation for Service Transfers" report reflects, for each of the In-Flight Loans, the applicable loss-mitigation product (e.g., FHA Recovery Modification, FHA COVID Recovery option, VA refund/forbearance option) and an internal "step description" indicating the stage of the workout process as of March 21, 2022. These step descriptions include codes such as "PC DOCS SENT 4 RECORDING; FORW 2 CLAIMS DEPT; LOAN REINSTATED BY LM," "FHA RECOVERY MOD FINAL," and "VA REFUND MODIFICATION FINAL."

11. As of the March 2022 servicing transfer, TMS's records reflect that no FHA or VA insurance claims had been filed and no FHA or VA claim proceeds had been paid on the In-Flight

Loans. TMS has no HUD AOPs or other agency remittance records for any of the In-Flight Loans during the period in which TMS subserviced those loans for EPM.

12. After the March 2022 transfer, TMS did not service the In-Flight Loans and had no further responsibility for filing FHA or VA claims on those loans. Any subsequent claim filings or claim-related communications for the In-Flight Loans would have been handled by Carrington and/or by EPM or SMAC.

13. TMS has never received any FHA or VA claim proceeds for the In-Flight Loans and has never received any government-insurance claim payments on those loans into any TMS account.

14. TMS has also conducted a search of its records for any FHA, VA, USDA, or other government-insurance claim payment documentation for the In-Flight Loans during the period TMS subserviced them. That search did not identify any claim payment records for those six loans.

15. I have reviewed SMAC's pre-motion letter to the Court regarding its anticipated motion for summary judgment. In that letter SMAC contends that internal "step descriptions" in SMAC0000225 show that TMS, as EPM's servicer, "failed to successfully file Claims" on the six In-Flight Loans and that alleged deficiencies in transfer information prevented SMAC's servicer from later filing such claims. I disagree with this characterization. The "Loss Mitigation for Service Transfers" report and related step descriptions reflect only the status of loss-mitigation workouts as of March 21, 2022; they do not show that any FHA or VA claim was required to be filed before the servicing transfer, nor do they indicate that TMS withheld information or otherwise prevented SMAC's servicer from filing any claims consistent with applicable agency guidelines.

16. No FHA or VA insurance claims had been filed on the In-Flight Loans as of the March 2022 transfer, and TMS did not receive any FHA, VA, USDA, or any other government-

insurance claim proceeds on any of the Subject Loans during the time TMS subserviced them on EPM's behalf.

17. TMS continues to exist as a separate corporate entity following the April 1, 2023 assignment to Servbank under the Amended and Restated Subservicing Agreement, and Servbank operates as a distinct legal entity. Servbank did not acquire all of TMS's assets or operations, and TMS did not cease to exist as part of any transaction relating to the 2023 Subservicing Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 4, 2025
Lake Success, New York

*/s/ Linda Case*
Linda Case
SVP Loan Administration, The Money Source Inc.