UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

STANWICH MORTGAGE ACQUISITION         Docket No. 1:24-cv-00771(DEH)
COMPANY VIII, LLC,

                             Plaintiff,

       -against-

EQUITY PRIME MORTGAGE, LLC,

                            Defendant.
-------------------------------------------------------------X
EQUITY PRIME MORTGAGE, LLC,

                   Third-Party Plaintiff,

       -against-

THE MONEY SOURCE INC. and
SERVBANK, SB,

                   Third-Party Defendants.
-------------------------------------------------------------X

### DEFENDANT, EQUITY PRIME MORTGAGE, LLC's, OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

FORCHELLI DEEGAN TERRANA LLP
*Attorneys for Defendant*
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ANALYSIS .................................................................................................................. 2

    I.    SUMMARY JUDGMENT IS INAPPROPRIATE WHERE THERE ARE
MATERIAL ISSUES OF FACT. ........................................................................................ 2

    II.    EQUITY PERFORMED UNDER THE CONTRACT. ............................................ 3

        A.    Equity Has Not Violated the MLPA With Respect To Any Modified Loans. .......... 3

        B.    The MLPA Does Not Require Equity to Forward the Agency Insurance Payments.
................................................................................................................................... 4

        C.    Equity Upheld Generally Accepted Servicing Practices During The Interim
Servicing Period. ...................................................................................................... 6

    III.    THE MLPA DOES NOT PERMIT PLAINTIFF TO SEEK SPECIFIC
PERFORMANCE OR CONSEQUENTIAL DAMAGES. ...................................................... 7

    IV.    PLAINTIFF FAILED TO MITIGATE DAMAGES. ................................................. 11

    V.    THE DAMAGES SOUGHT BY SMAC ARE EXCESSIVE. .................................... 12

CONCLUSION ......................................................................................................................... 12

i

## TABLE OF AUTHORITIES

**Cases**

*Bank of New York Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632 (S.D.N.Y. 2007) ....... 4

*Brod v. Omya, Inc.*, 653 F.3d 156 (2d Cir. 2011) ........................................................................ 3

*Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co., N.A.,* 837 F.3d 146 (2d Cir. 2016) ................................................................................................................................... 13

*Crane Co. v. Coltec Indus., Inc.,* 171 F.3d 733 (2d Cir.1999) ....................................................... 4

*Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454 (S.D.N.Y. 2023) ............................................... 3

*Electron Trading, LLC v. Morgan Stanley &Co. LLC,* 157 A.D.3d 579, 580 (1st Dep't 2018) ....11

*L.G.H. Enters., Inc. v. Kadilac Mortg. Bankers, Ltd.,* 225 A.D.2d 735 (2d Dept. 1996) ............... 6

*Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342 (2020) ........................................................... 10

*Matter of Part 60 Put-Back Litigation* ...................................................................................... 10

*Meserole Hub, LLC v. Rosenzweig*, 223 A.D.3d 895, 896 (2d Dep't 2024) ................................. 10

*Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572 (2017) ...........................................................................11

*Pro. Fighters League, LLC v. Takeover Indus., Inc.*, 770 F. Supp. 3d 718 (S.D.N.Y. 2025) .......... 7

*Renaissance Equity Holdings, LLC v. Al-An Elevator Maint. Corp.*, 121 A.D.3d 661, 663-64 (2d Dep't 2014) ............................................................................................................................11

*River Ridge Living Ctr., LLC v. ADL Data Sys., Inc.*, 98 A.D.3d 724 (2d Dep't 2012) .................11

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89 (2d Cir. 2007) ................... 12

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004) ............................ 3

*Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54 (2d Cir. 2010) .............................................................. 3

**PRELIMINARY STATEMENT**

Defendant/Third-Party Plaintiff, Equity Prime Mortgage ("Equity") submits this memorandum of law in opposition to the motion for summary judgment submitted by Plaintiff, Stanwich Mortgage Acquisition Company VIII, LLC ("Plaintiff"). This action arises out of a sale of a certain pool of mortgage loans from Equity to Plaintiff. In filing this action for breach of contract, Plaintiff seeks: (a) certain Agency Insurance proceeds received from 7 modified loans; and (b) seeks damages equal to the amount of Agency Insurance proceeds that Plaintiff estimates that it could have received for another 6 in-flight loans. Plaintiff's request for summary judgment on these two theories must be denied. At the outset and as detailed in Section II, *infra*, Equity has fully performed as required under the mortgage loan purchase agreement ("MLPA,") having serviced the mortgage loans during the interim servicing period, and having delivered the loans to Plaintiff as required by the MLPA. With respect to the Agency Insurance proceeds, Plaintiff has not and cannot point to any provision of the MLPA that entitles it to receive these proceeds. With respect to the loans for which a partial claim was not filed, Plaintiff fails to present any evidence that demonstrate that Equity failed to uphold generally accepted servicing practices for these loans. What more, it was incumbent on its servicer to file these claims, and the consequence for failing to file these claims falls on Plaintiff's servicer, Carrington, not Equity. Additionally, under the terms of the MLPA, Plaintiff agreed that its sole and exclusive remedy for any breach was to seek repurchase of the loan within 2 years of the sale. Plaintiff failed to request the repurchase, and more than 2 years having passed since the sale, Plaintiff has waived this right and this action for breach of contract must be rejected by this Court. Additionally, as per the MLPA, Plaintiff has waived its right to receive all consequential, special, or other damages, and, therefore, may not seek either specific performance for repayment of the Agency Insurance proceeds nor may it seek

1

damages for any claims that were not filed by its servicer, as Plaintiff has failed to mitigate its damages. Further, Plaintiff's demands for damages (even if it could be obtained) are excessive. Accordingly, Plaintiff's motion for summary judgment must be denied by this Court.

## LEGAL ANALYSIS

### I.    SUMMARY JUDGMENT IS INAPPROPRIATE WHERE THERE ARE MATERIAL ISSUES OF FACT.

It is well established that "[s]ummary judgment is appropriate where the movant shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454, 461 (S.D.N.Y. 2023). "Summary judgment may not be granted unless 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). On a motion for summary judgment, "[t]he role of the court in deciding a motion for summary judgment 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). "It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Here, Plaintiff fails to meet its burden and fails to demonstrate either that: (a) Equity violated the MLPA; (b) that it is entitled to the Agency Insurance proceeds; (c) that it can receive consequential damages for the loans for which no partial claim was made; or (d) that it mitigated its damages when its servicer failed to pay the partial dismissal.

2

## II.    EQUITY PERFORMED UNDER THE CONTRACT.

### A. Equity Has Not Violated the MLPA With Respect to Any Modified Loans.

Equity has not breached the MLPA. With respect to loans that were modified, which are at issue in this suit, the MLPA provides in the representations and warranties:

> (h) The terms of the Mortgage Note and Mortgage relating to such Mortgage Loan have not been impaired, waived, altered or modified in any respect, from the date of origination, except by a written instrument which has been or will be recorded if necessary where and as required by law and which is included as part of the Collateral File and is indicated by a modification flag on the Mortgage Loan Schedule. Where applicable, the material terms of any such impairment, waiver, alteration or modification (i) have been approved by the related title insurer, (ii) have been accurately reflected in the Mortgage Loan Schedule, (ii) have been implemented in accordance with the related Agency regulations will not impair the applicable Agency insurance, and (iii) with respect to recorded loan modifications only, have been insured by a title insurer or remain insured under an applicable title policy in existence on or prior to a newly recorded loan modification.

*See* MLPA §3.02(g) (Exhibit A filed by Plaintiff under Seal).

Plaintiff has not and cannot present any evidence that Defendant has engaged in any action that violates this representation and warranty.  Plaintiff in its 56.1 acknowledges that the loans at issue all had modifications completed in accordance with Agency guidelines.[1]  "Where a written agreement clearly and unambiguously sets forth the parties' intent, a court called upon to interpret the contract must give effect to the intent as indicated by the language used, *see Crane Co. v. Coltec Indus., Inc.,* 171 F.3d 733, 737 (2d Cir.1999), and the Court 'must enforce that plain meaning, rather than rewrite an unambiguous agreement.'" *Bank of New York Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635 (S.D.N.Y. 2007).

---

[1] *See* Plaintiff's Statement of Material and Undisputed Facts ("SUF") at ¶18.

Here this representation and warranty is clear and unmistakable that for any modified loans, Equity must provide the documentation – and nothing further.  Equity having provided all information concerning the modified loans has upheld the term of this representation and warranty, and has not breached the contract.  Plaintiff has not demonstrated that Equity engaged in any action that violated its obligations under the MLPA.

**B.  The MLPA Does Not Require Equity to Forward the Agency Insurance Payments.**

Plaintiff's entire case is premised on the incorrect assertion that under the MLPA, Plaintiff is entitled to receive payments of these Agency Insurance Proceeds. This is an incorrect reading of the MLPA.  The provision concerning the forwarding of mortgage payments is in section 2.05, which provides:

> Section 2.05 Entitlement to Payments on the Mortgage Loans. The Purchaser shall be  entitled to (a) all principal on the Mortgage Loans received by the Seller (or its designee) or the  Purchaser ( or its designee) after the Cut-off Date; (b) all payments of interest on the Mortgage  Loans received by the Seller (or its designee) or the Purchaser (or its designee) after the Cut-off  Date; and (c) all other monies collected or received by the Seller (or its designee) or the Purchaser  ( or its designee) after the Cut-off Date relating to or in connection with the Mortgage Loans (including without limitation any insurance proceeds, liquidation proceeds and condemnation proceeds).

*See* MLPA at §2.05.

The section of the MLPA that references the insurance proceeds is the same provision that references payments of principal and interest. The reason is that the insurance proceeds contemplated is not government backed insurance proceeds, but rather, are proceeds received from any of the underlying borrower's homeowner's insurance in the event that the mortgaged premises is damaged. This interpretation is consistent with Section 3.02 of the MLPA, which as a representation and warranty provides:

4

Section 3.02

(g) Insurance.

(i) Hazard Insurance. Except to the extern listed on the Mortgage Loan Schedule, the Mortgaged Property is insured by a fire and extended perils insurance policy and is insured against such other hazards as are customary in the area where the Mortgaged Property is located, in a generally acceptable amount in accordance with Applicable Servicing Practices. Each fire and extended perils insurance policy (i) is in full force and effect, (ii) contains a standard mortgagee clause naming its successors, and its assigns as mortgagee, and (iii) may not be reduced, terminated, or canceled without thirty (30) days' prior written notice to the mortgagee, and no such notice has been received by the Seller or the Seller's Servicer. All premiums due and owing on any fire and extended perils insurance policy have been paid.

(ii) Flood Insurance. Except to the extent listed on the Mortgage Loan Schedule, if any portion of the Mortgaged Property is in an area identified by a governmental authority as having special flood hazards, the Mortgaged Property is insured by a flood insurance policy that meets the current guidelines of the Federal Insurance Administration. Each flood insurance policy (i) is in full force and effect, (ii) contains a standard mortgagee clause naming its successors, and its assigns as mortgagee, and (iii) may not be reduced, terminated, or canceled without thirty (30) days' prior written notice to the mortgagee, and no such notice has been received by the Seller or the Seller's Servicer. All premiums due and owing on any flood insurance policy have been paid.

(iii) Impairment of Insurance Coverage: Acts of the Seller or the Seller's Servicer. Neither the Seller nor the Seller's Servicer has engaged in any act or omission that would impair the coverage of the fire and extended perils insurance policy, flood insurance policy or title policy, the benefits of the endorsement provided for therein, or the validity and binding effect of either including, without limitation, the provision or receipt of any unlawful fee, commission, kickback, or other compensation or value of any kind.

*See* MLPA (Plaintiff's Exhibit A, filed under seal) at §3.02(g).

Notably, all "insurance" referenced in the representation and warranties concerns insurance relating to the property that is encumbered by the mortgage loans. These policies would list the mortgagor as a beneficiary, entitled to receive payments in the event the company has to payout

5

insurance on an encumbered property. *See, e.g., L.G.H. Enters., Inc. v. Kadilac Mortg. Bankers, Ltd.,* 225 A.D.2d 735, 736 (2d Dept. 1996)(discussing mortgagor's right to receive insurance proceeds under the terms of the mortgage contract.)

Accordingly, reviewing the MLPA as a whole, demonstrates that the insurance payments referenced in Section 2.05 concern the mortgaged property – not the Agency Backed Insurance Proceeds that are at issue here. *See Pro. Fighters League, LLC v. Takeover Indus., Inc.*, 770 F. Supp. 3d 718, 723 (S.D.N.Y. 2025)("The contract should be read as a whole, with every part interpreted with reference to the whole in order, inter alia, to give effect to its general purpose, to safeguard against adopting an interpretation that would render any individual provision superfluous, and to ensure that particular words and phrases do not receive undue emphasis.") With respect to Sections 4.03 and 4.04, also do not apply to the Agency Insurance Proceeds because these provisions concern recent of payments of principal and interest collected by the mortgage loan. This reading is consistent with the plain meaning of the MLPA, and also consistent with the fact that as discussed in Point III, *infra*, the exclusive remedy for any change in principal and interest is repurchase of the loan, which would be unnecessary if SMAC could just receive the Agency Backed Insurance proceeds. Accordingly, Plaintiff's demands for the Agency Backed Insurance proceeds must be rejected by this Court.

C. **Equity Upheld Generally Accepted Servicing Practices During the Interim Servicing Period.**

Plaintiff fails to present any evidence that Equity violated any generally accepted servicing practices. Plaintiff, while alleging that Equity failed to uphold any generally accepted servicing practices, completely fails to point to any actions that violated these standards or present any evidence that provides for what is required by such generally accepted practices. Plaintiff tries to allege that Equity's servicer failed to timely submit the loan modifications for six loans. However,

Plaintiff in the SUF acknowledges that a servicer has 180 days[2] from the modification to submit a partial loan modification claim. Accordingly, given that servicers have nearly 6-months to submit a claim, Plaintiff fails to demonstrate that Equity's servicer, TMS, did not uphold generally accepted servicing practices during the brief 7-week interim servicing period, during which time modification efforts were ongoing for these loans. The servicer that failed to abide by generally accepted servicing practices, is Plaintiff's servicer, Carrington (who is the party that provided the self-serving declaration in support of the summary judgment motion in an effort to deflect any culpability), who apparently failed to submit any partial claims or otherwise mitigate against any losses. Plaintiff failing to point to any failure by Equity to abide by any generally accepted servicing practices, fails to demonstrate that Equity breached the MLPA.

### III.  THE MLPA DOES NOT PERMIT PLAINTIFF TO SEEK SPECIFIC PERFORMANCE OR CONSEQUENTIAL DAMAGES.

In filing this application, Plaintiff is seeking both specific performance for return of the Agency Backed Insurance proceeds and is seeking purported consequential damages for the six loans in which partial claims were not filed by Plaintiff's servicer. However, under the parties' agreement, Plaintiff is prohibited from seeking such damages. Particularly, Section 3.04 of the MLPA provides:

> (b) Upon discovery by the Purchaser prior to the expiration of the Sunset Period of a breach of any of the representations and warranties set forth in Section 3.02 which materially and adversely affects the value of one or more of the Mortgage Loans or the Purchaser's interest therein (each, a "Breach"), the Purchaser shall deliver a Notice of Breach to the Seller. The Seller shall have a period of sixty (60) days from the receipt by the Seller of Notice of Breach within which to correct or cure such breach in all material respect; if any such breach is not corrected or cured within such sixty (60) day period, then upon request by the Purchaser, the Seller shall, at Purchaser's option, either reimburse the Purchaser in an amount (the 'Purchase Price Adjustment') equal to the reduction in value of

---

[2] *See* SUF at ¶5.

the affected Mortgage Loan based solely on the Breach or repurchase such Mortgage Loan at the Repurchase Price; it being understood that if Purchaser and Seller are unable to agree in good faith on the value of the Mortgage Loan(s) impacted by the breach for the purposes of determining the Purchase Price Adjustment within thirty (30) days, then Seller shall repurchase such Mortgage Loan at the Repurchase Price.

(c) If the Seller is unable to cure any Breach pursuant to Section 3.04(b) and is required to repurchase an affected Mortgage Loan pursuant to Section 3.04(b), Seller shall repurchase such affected Mortgage Loan, on a whole loan, servicing released basis at the Repurchase Price for such Mortgage Loan. In connection with any repurchase of a Mortgage Loan hereunder by Seller and concurrent with the payment of the Repurchase Price, Purchaser shall, based upon a mutually agreeable bailment letter agreement, tender to the Seller all portions of the Collateral File with respect to such Mortgage Loan previously delivered to Purchaser. Seller shall pay the Repurchase Price to Purchaser by wire transfer of immediately available funds to an account designated by Purchaser.

(d) Transfer of a Mortgage Loan repurchased by Seller under this Section 3.04 shall be effected by the execution and delivery by Purchaser of documents substantially similar to those by which such Mortgage Loan was transferred to Purchaser. Purchaser shall execute and deliver any and all such additional assignments, deeds, instruments of transfer and other documents as Seller may require in order to complete the transactions contemplated hereunder. Seller shall be responsible for, and shall pay when due and payable, all transfer, filing and recording fees and taxes, costs and expenses, and any state or county documentary taxes, if any, with respect to the filing or recording of any document or instrument contemplated hereby in connection with such repurchase, and shall be responsible for recording any documents evidencing the transfers contemplated in connection with such repurchase. If, in accordance with this Section 3.04, Seller repurchases any MERS Loan, Purchaser shall, at Seller's expense, promptly cause the MERS® System to reflect such repurchase. Seller shall cause the Section 404 Notice required by the Helping Families Act to be provided within thirty (30) days of the repurchase date to each Mortgagor with respect to each Mortgage Loan and shall bear all costs associated with providing such notices.

**(e) It is understood and agreed that the obligations of the Seller set forth in this Section 3.04 constitute the sole remedy available to the Purchaser respecting a breach of the representations and warranties by the Seller set forth in Section 3.02.**

8

*See* MLPA §3.04 (Plaintiff's Exhibit A, filed under seal)(emphasis added).

As provided in MLPA §3.04(e), the *sole and exclusive remedy* available for any breach of the MLPA is: (a) to provide Equity the opportunity to cure, and if unable to cure, (b) require repurchase of the loan. This repurchase must be completed within 2 years of the closing of the MLPA. More than 2 years has elapsed since the MLPA closed in 2022, Plaintiff is prohibited from seeking this repurchase.

That repurchase of a loan is the exclusive remedy in the event of a breach, and not specific performance or other damages, is further supported by Section 5.15 entitled "No Special Damages," which provides: "[e]xcept to the extent necessary to reimburse an indemnified party for judgments actually awarded to third parties, in no event shall any party hereto be liable for any indirect damages, including consequential, incidental, exemplary or special damages, or any punitive damages." *See* MLPA §5.15. *See Meserole Hub, LLC v. Rosenzweig*, 223 A.D.3d 895, 896 (2d Dep't 2024) (affirming summary judgment in defendant's favor "limiting the plaintiff's right to recover damages for breach of contract pursuant to the limitation provision of the contract.").

In *Matter of Part 60 Put-Back Litigation*, the plaintiff sued the defendants for breach of a Representations and Warranties Agreement (RWA) and a Pooling and Servicing Agreement (PSA), both of which contained a "sole remedy provision." This provision set forth that the plaintiff's sole remedy for any material breach "would be defendants' obligation to cure the breach or repurchase the loan at the contractually defined Repurchase Price." *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 349-50 (2020). Here, as in *Matter of Part 60*, the sole remedy that Plaintiff is permitted to sue for any breach is to seek repurchase of the loan – and not to see either specific performance for the return of the agency insurance payments, or consequential damages resulting from any failure to submit a partial claim.

9

New York courts consistently enforce limitations on liability provisions, finding that

> [a] limitation on liability provision . . . represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor . . .. [The parties] may later regret their assumption of the risks of non-performance in this manner; but the courts let them lie on the bed they made.

*Electron Trading, LLC v. Morgan Stanley & Co. LLC,* 157 A.D.3d 579, 580 (1st Dep't 2018) (citing *Metropolitan Life Ins. Co. v. Noble Lowndes Intl.,* 84 N.Y.2d 430, 436 (1994)); *see also Renaissance Equity Holdings, LLC v. Al-An Elevator Maint. Corp.*, 121 A.D.3d 661, 663-64 (2d Dep't 2014) (affirming the dismissal of cause of action which sought to recover consequential damages because of the "clear and unambiguous language of the limitation on liability provision in the [parties'] agreement"); *River Ridge Living Ctr., LLC v. ADL Data Sys., Inc.*, 98 A.D.3d 724 (2d Dep't 2012) (in reversing the Supreme Court, the Appellate Division granted defendant's motion to limit plaintiff's right to recover damages for breach of contract and breach of warranty based upon limitation of liability provisions contained in the parties' contract); *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (2017) ("courts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities.")

Pursuant to the MLPA, Plaintiff is prohibited both from seeking specific performance and is prohibited from seeking any consequential, damages. Plaintiff's seeking of any damages, were limited – per its agreement – to seeking repurchase of the mortgage loans, which Plaintiff has failed to do and has waived. Therefore, Plaintiff's motion for summary judgment must be denied.

## IV.    <u>PLAINTIFF FAILED TO MITIGATE DAMAGES.</u>

Even assuming, *arguendo*, Plaintiff could request a return of the insurance proceeds or seek consequential damages, which Equity vehemently denies, Plaintiff failed to mitigate its damages. It is well established that "[t]he non-breaching party is, of course, under a duty to mitigate damages to the extent practicable, and any proceeds generated from mitigation should be accounted for in the ultimate award of damages." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007)(internal citations omitted). Plaintiff failed to mitigate its damages, and therefore, may not seek recovery for the loans for which Plaintiff's servicer failed to submit a claim.

For the six loans for which no claims were filed, it was incumbent on Plaintiff's servicer, Carrington, to file the claims. While Equity denies that there is a 180-day limitation, even if that time limitation is accurate, there was time post-servicing transfer during which time Carrington could have and should have made the claim. Carrington failed to do so. Therefore, it is not Equity's responsibility to pay for the claims that Carrington failed to make on time. Carrington's assertion that they were unaware is unbelievable, and, at a minimum, raises a material question of fact as to whether appropriate servicing practices were done during the 7-week interim servicing period. Therefore, summary judgment must be denied, particularly, for the over $500,000 Plaintiff seeks for failures caused by its own servicer.

11

## V.     THE DAMAGES SOUGHT BY SMAC ARE EXCESSIVE.

Even assuming, *arguendo*, that SMAC could seek recovery in this action (which Equity maintains that it cannot), the damages demanded are excessive. Particularly, here, SMAC is seeking damages equal to the amount of the agency insurance claims, which correlate to the amount of principal and interest that was written down. However, such demand for damages is excessive. Particularly, as outlined in Section 2.02 of the MLPA, SMAC paid Equity a percentage of the outstanding principal and interest due and owing on each loan. Accordingly, to the extent any portion of the mortgage loan's principal was written down (of which SMAC has failed to present any admissible proof), the damages should be equal to the percentage of the principal that was written down – not the 1-to-1 amount that is demanded by SMAC. *See Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co., N.A.,* 837 F.3d 146, 150 (2d Cir. 2016)("And where a valid and enforceable contract governs the relevant subject matter of the parties' dispute, the contract—rather than principles of restitution—should determine the measure of a party's recovery for events arising from that subject matter.) Accordingly, the damages, even if awarded, should correspond to the amount that SMAC was actually harmed, i.e., the differential in the amount paid and the principal received, and not the inflated number demanded in the motion.

### CONCLUSION

Summary judgment must be denied because SMAC fails to demonstrate that Equity failed to uphold generally accepted servicing practices or perform under the MLPA or that the MLPA entitles it to receive the Agency Backed Insurance proceeds. Additionally, SMAC has waived its right to seek either special or consequential damages, and, even if there was a breach (which Equity maintains there was not) SMAC's exclusive remedy was to demand repurchase of the mortgage loans, a right which is now time barred by the MLPA. Additionally, summary judgment is

12

inappropriate because SMAC failed to mitigate its damages and the damages sought are excessive

and exceed the amount SMAC paid for the loans. Accordingly, summary judgment must be denied.

Dated: January 23, 2026
      Uniondale, New York

                        FORCHELLI DEEGAN TERRANA LLP

                        By:__/s/_____
                        Keith J. Frank
                        Lisa M. Casa