**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

STANWICH MORTGAGE ACQUISITION
COMPANY VIII, LLC,

          Plaintiff,

      -against-

EQUITY PRIME MORTGAGE, LLC,

        Defendant.

Case No. 1:24-cv-0771 (DEH)

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN**
**<u>FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.      BREACH OF CONTRACT........................................................................................... 3

        A.      Defendant Breached the MLPA by Receiving, and Failing to
                Forward to Plaintiff, Insurance Claim Proceeds on the Claimed Loans................. 3

        B.      Defendant Breached the MLPA by Failing to Cause its
                Servicer to Follow Accepted Servicing Practices for the Reduced Loans.............. 4

        C.      The Court Should Award the General Damages
                Sought by Plaintiff for Defendant's Breaches of the MLPA................................... 6

II.     THE COURT CAN IGNORE DEFENDANT'S DISCUSSION OF A CLAIM THAT
        HAS NOT BEEN ASSERTED AND DAMAGES THAT ARE NOT SOUGHT............... 7

        A.      Plaintiff Has Not Asserted a Claim for
                Breach of Representations and Warranties ............................................................. 7

        B.      Plaintiff Has Not Sought Consequential Damages ................................................. 8

CONCLUSION......................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*,
   592 F.3d 108 (2d Cir. 2010) ............................................................................................. 5

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
   10 N.Y.3d 187 (2008) ...................................................................................................... 7

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*,
   22 N.Y.3d 799 (2014) ...................................................................................................... 8

*Cambridge Capital LLC v. Ruby Has LLC*,
   675 F. Supp. 3d 363 (S.D.N.Y. 2023) ........................................................................... 4

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*,
   837 F.3d 146 (2d Cir. 2016) ............................................................................................. 7

*Gov't Emps. Ins. Co. v. Mayzenberg*,
   121 F.4th 404 (2d Cir. 2024) ........................................................................................... 2

*Kenford Co. v. Cty. of Erie*,
   73 N.Y.2d 312 (1989) ...................................................................................................... 8

*Price v. Cushman & Wakefield, Inc.*,
   808 F. Supp. 2d 670 (S.D.N.Y. 2011) ........................................................................... 2

*USA Staffing Servs., LLC v. YDC, Inc.*,
   23 Civ. 8613 (LGS), 2025 WL 327376 (S.D.N.Y. Jan. 29, 2025) ........................................... 6

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................................... 2

Plaintiff respectfully submits this reply in response to Defendant's opposition and in further support of Plaintiff's Motion for Summary Judgment.[1]

## PRELIMINARY STATEMENT

Defendant's opposition does not dispute any of the facts supporting Plaintiff's Motion, which establish Defendant's failure to honor its obligations to Plaintiff under the MLPA. The MLPA provided for a brief transition period after Plaintiff acquired Mortgage Loans from Defendant in which Defendant's Servicer would continue to service those loans. During this period, Defendant permitted its servicer to proceed with partial claims on the Mortgage Loans, reducing the principal and interest owed on the loans with a partial claim to be paid by the relevant insuring agency to cover those losses. Defendant then breached the MLPA by failing to ensure Plaintiff received the proceeds of these partial claims in two ways.

First, Defendant received and wrongfully pocketed $429,280.09 in claim proceeds on the Claimed Loans, rather than transferring those proceeds to Plaintiff as required by the MLPA. Defendant's sole response — that the MLPA did not require it to turnover claim proceeds — ignores the plain language of the MLPA that all funds received "in connection with," "on account of" or "relating to" the Mortgage Loans must be transferred to Plaintiff. Defendant does not and cannot address this broad language.

Second, Defendant failed to ensure its servicer followed standard practice by filing claims totaling $542,930.98 on the Reduced Loans. Defendant's false assertion that Plaintiff has not provided evidence of this failure is belied by the undisputed facts within Plaintiff's statement of

---

[1]    *Defendant, Equity Prime Mortgage, LLC's, Opposition to Plaintiff's Motion for Summary Judgment*, dated Jan. 23, 2026 (ECF No. 85, the "Opp"); *Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment*, dated Dec. 4, 2025 (ECF No. 71, the "Motion"). Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

facts and accompanying declaration of Terrence Morley.  In addition, Defendant's contention that Plaintiff should have mitigated the damage caused by Defendant's failure by having Plaintiff's Servicer file claims within the 180-day window to send documents ignores the undisputed facts that Defendant prevented any such mitigation.  The information provided by Defendant and Defendant's Servicer when the servicing of these loans transferred to Plaintiff's Servicer indicated that partial claims either had been or could not be filed.  Despite multiple requests for additional information, Defendant failed to respond.

The remainder of Defendant's opposition addresses a claim and remedies that were not sought and are not relevant to this Motion.  Accordingly, summary judgment should be granted in favor of Plaintiff, awarding $972,211.07 in damages, plus interest.

## ARGUMENT

To defeat summary judgment, Defendant was required to identify any genuine issue of material fact.  Fed. R. Civ. P. 56(a).  Instead, in its Response SOF,[2] Defendant conceded every material fact identified by Plaintiff, whether by admission or by failing to identify a single piece of evidence in support of its conclusory denials.  *See, e.g.*, *Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 413-14 (2d Cir. 2024) (nonmovant must "point to 'significant probative evidence' . . . from which a reasonable factfinder could find for the nonmovant"); *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011) (nonmovant "cannot rely on mere allegations, denials, conjectures or conclusory statements").  Based on these undisputed facts, Plaintiff is entitled to judgment as a matter of law.

---

[2]    *Defendant, Equity Prime Mortgage LLC's, Response to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts*, dated Jan. 23, 2026 (ECF No. 86, "Response SOF"). Citations to "¶ __" refer to *Plaintiff's Local Rule 56.1 Statement of Undisputed Facts*, dated Dec. 4, 2025 (ECF No. 72), which are also set forth in the Response SOF.

## I.      BREACH OF CONTRACT

### A.      Defendant Breached the MLPA by Receiving, and Failing to Forward to Plaintiff, Insurance Claim Proceeds on the Claimed Loans

It is undisputed that Defendant received $429,280.09 in insurance proceeds on the Claimed Loans after January 31, 2022 and never remitted these proceeds to Plaintiff.  ¶¶ 24-26.  These undisputed facts establish that Defendant breached Sections 2.05, 4.03 and 4.04 of the MLPA. Motion 10-11.  Defendant's sole response (Opp. 4-6) — that the MLPA did not "entitle[] [Plaintiff] to receive payment of these Agency Insurance Proceeds" — is easily disposed of.

Section 2.05 of the MLPA entitled Plaintiff to "all principal," "all interest," and "all other monies collected or received" after January 31, 2022 "relating to or in connection with the Mortgage Loans (including without limitation any insurance proceeds . . . )."  MLPA (ECF No. 73-1) § 2.05; Motion 10-11.  Unable to dispute that insurance claim proceeds are monies relating to the Mortgage Loans, Defendant (Opp. 4-6) ignores this language and instead argues that the reference to "insurance proceeds" in this section concerns proceeds of "homeowner's insurance." This argument is irrelevant given that insurance proceeds are but one example of monies received relating to the Mortgage Loans.

In any event, the sole basis Defendant provides (Opp. 4-6) for its interpretation of "insurance proceeds" is that the MLPA contains a representation and warranty that each Mortgaged Property has hazard and flood insurance.  Yet, the MLPA also contains a representation and warranty that "applicable Agency insurance" of Mortgage Loans has not been impaired.  Opp. 3 (citing MLPA § 3.02(g)).  Thus, the MLPA recognizes multiple types of insurance proceeds.

Defendant (Opp. 6) fares no better with Sections 4.03 and 4.04 — once again ignoring the actual language of these provisions requiring "all collections" and "all payments or other funds

3

received" "on account of or related to the Mortgage Loans" to be remitted to Plaintiff no later than April 1, 2022.  MLPA §§ 4.03-4.04; Motion 11.  Defendant's unexplained contention (Opp. 6) that these provisions only "concern recent [] payments of principal and interest" would mean principal and interest are the only possible payments relating to the Mortgage Loans.  Such an interpretation is directly contradicted by Section 2.05 of the MLPA, which makes clear payments relating to the Mortgage Loans include principal, interest, *and* other amounts.  MLPA § 2.05.

Defendant's interpretation of the MLPA is contrary to the plain language therein and would lead to the absurd result of allowing Defendant to reduce the principal and interest owed to Plaintiff on Mortgage Loans owned by Plaintiff, then pocket the insurance claim proceeds on those loans that are meant to cover Plaintiff's losses.  The Court should reject this interpretation and grant summary judgment in Plaintiff's favor on the Claimed Loans.  *See, e.g.*, *Cambridge Capital LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 390 (S.D.N.Y. 2023) ("[It is a] well settled principle that a contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties.").[3]

### B.    Defendant Breached the MLPA by Failing to Cause its Servicer to Follow Accepted Servicing Practices for the Reduced Loans

Defendant breached the MPLA with respect to the Reduced Loans by failing to ensure Defendant's Servicer serviced the Mortgage Loans during the Interim Servicing Period in accordance with Accepted Servicing Practices.  Motion 11-12.  Defendant's false assertion in response (Opp. 6) — that "Plaintiff fails to present any evidence that [Defendant] violated any

---

[3]    Defendant also contends (Opp. 6) that its interpretation is consistent with the "exclusive remedy" of "repurchase of the loan."  While the supposed "consistency" is unclear, this assertion also misrepresents the MLPA, which provides a repurchase remedy for breach of representations and warranties — a claim that is not asserted here (*see infra* § II.A).

generally accepted servicing practices" — is belied by the Motion and accompanying papers. As detailed therein, Defendant allowed its servicer to complete loan modifications and partial claim documents on the Reduced Loans, but exercised no oversight and took no action to ensure Defendant's Servicer followed Accepted Servicing Practices by filing claims on the Reduced Loans. Motion 12 (citing SOF ¶¶ 6, 17-20, 27-29).

Defendant next contends (Opp. 7, 11) that "Plaintiff failed to mitigate its damages" by having Plaintiff's Servicer file the insurance claims that Defendant and Defendant's Servicer failed to file, within the 180-day period to submit documentation following the modifications of the Reduced Loans. Dispositively, Defendant fails to dispute or in any way address that Plaintiff's reasonable efforts to mitigate were stymied by Defendant and Defendant's Servicer. Specifically, Plaintiff's Servicer understood from the information provided to it by Defendant's Servicer that insurance claims either had been filed or could not be filed on the Reduced Loans. (SOF ¶¶ 31-32). Neither Defendant nor Defendant's Servicer ever provided a substantive response to Plaintiff's and Plaintiff's Servicer's multiple requests for additional information regarding loss mitigation activities on these loans. (*Id.* ¶ 33).

Although an injured party "bears an obligation to make reasonable efforts to mitigate its damages," "if plaintiff takes such [mitigating] action within the range of reason," — applying a "forgiving standard of reasonableness" — then "the breaching party remains liable if such reasonable attempts at mitigation fail." *APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111-12 (2d Cir. 2010) (internal citations omitted). Here, Defendant does not and cannot explain what additional reasonable steps Plaintiff or its servicer could have taken after Defendant and Defendant's Servicer provided misinformation, then refused to respond to requests for additional information.

Accordingly, summary judgment should be granted in Plaintiff's favor on Plaintiff's breach of contract claim for the Reduced Loans. *USA Staffing Servs., LLC v. YDC, Inc.*, 23 Civ. 8613 (LGS), 2025 WL 327376, at *6 (S.D.N.Y. Jan. 29, 2025) (granting summary judgment where "[d]efendant has not introduced evidence from which a reasonable jury could conclude that Plaintiff's actions were unreasonable").

### C.    The Court Should Award the General Damages Sought by Plaintiff for Defendant's Breaches of the MLPA

Defendant nonsensically contends (Opp. 12) that "damages equal to the amount of the agency insurance claims" is "excessive" because Plaintiff paid "a percentage of the outstanding principal and interest due and owing on each loan" to purchase the Mortgage Loans. Defendant's description of the purchase price is both factually inaccurate and, more importantly, irrelevant.[4] Had Defendant complied with its contractual obligations to (a) file insurance claims on the Reduced Loans, and (b) forward all insurance claim proceeds received to Plaintiff, then Plaintiff would have received $972,211.07 on the Claimed Loans and Reduced Loans — a calculation that is undisputed by Defendant. *See* Motion 10-12; *supra* I.A-B; MLPA §§ 2.05, 4.01, 4.03-4.04; Response to SOF ¶¶ 19-20, 23, 24, 27.[5]

Calculating damages based on the price paid by Plaintiff — as opposed to what Defendant was contractually obligated, but failed, to provide Plaintiff — "does not place [Plaintiff] in the position it would have been in had the contract been performed" and, thus, is not a proper measure

---

[4]    The "Purchase Price" included, among other things, all accrued interest and a percentage of the principal balance of each Mortgage Loan. *See* MLPA Art. I (definition of "Purchase Price" and "Purchase Price Percentage"), § 2.02.

[5]    Defendant does not dispute that 9% prejudgment interest is owed (i) from April 1, 2022 on the Claimed Loans; and (ii) from no later than March 22, 2022 on the Reduced Loans.

of contract damages. *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 195 (2008); *see Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 837 F.3d 146, 150-51 (2d Cir. 2016) (where defendant paid an "At-Par Price" rather than the higher, contractually required "Make-Whole Price," damages for breach of contract "was the difference between the At-Par Price and the Make-Whole Price, plus prejudgment interest") (cited by Defendant, Opp. 12).

## II. THE COURT CAN IGNORE DEFENDANT'S DISCUSSION OF A CLAIM THAT HAS NOT BEEN ASSERTED AND DAMAGES THAT ARE NOT SOUGHT

### A. Plaintiff Has Not Asserted a Claim for Breach of Representations and Warranties

Defendant contends (Opp. 3-4) that it did not breach Section 3.02(g) of the MLPA, a Section which contains certain representations and warranties by Defendant as of the February 1, 2022 Closing Date, *i.e.*, the day the Interim Servicing Period at issue in this action began. MLPA § 3.02(g); ¶ 10. Plaintiff never asserted a claim for breach of Section 3.02(g), which is not relevant to this action concerning events that post-date these representations and warranties. *See Complaint*, dated Feb. 2, 2024 (ECF No. 1).

Defendant further contends (Opp. 7-10) that the sole remedy available for a breach of the representations and warranties in Section 3.02(g) is repurchase of the Mortgage Loans, as set forth in Section 3.04 of the MLPA. To be clear, Section 3.04 of the MLPA expressly and exclusively applies to claims for "a breach of the representations and warranties by [Defendant] set forth in Section 3.02," not other claims for breach of the MLPA. MLPA § 3.04(e).[6]

---

[6]     MLPA § 3.04(e) ("[T]he obligations of the Seller set forth in this <u>Section 3.04</u> constitute the sole remedy available to the Purchaser ***respecting a breach of the representations and warranties by the Seller set forth in <u>Section 3.02</u>***.") (emphasis added).

Accordingly, the Court can ignore these arguments and the repurchase provisions of the MLPA, which are not relevant here.

### B.        Plaintiff Has Not Sought Consequential Damages

Defendant contends (Opp. 7, 9) that Plaintiff "is seeking purported consequential damages for the" Reduced Loans, and Section 5.15 of the MLPA prevents liability for "indirect damages, including consequential . . . damages." Defendant does not and cannot explain how the damages sought qualify as "consequential damages." "It is well established that in actions for breach of contract, the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." *Kenford Co. v. Cty. of Erie*, 73 N.Y.2d 312, 319 (1989). Consequential damages refer to "a further liability" for "unusual or extraordinary damages" that do not "naturally and directly" flow from the breach, but rather flow from collateral arrangements that were not "within the contemplation of the parties" at the time of contracting. *Id.*; *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 805-06 (2014).

As described above, Plaintiff is seeking the direct damages caused by Defendant's breaches of the MLPA. Accordingly, the Court can ignore this argument.

### CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion, Plaintiff respectfully requests that the Court grant its Motion for Summary Judgment.

Dated: February 13, 2026
    New York, New York

                PALLAS PARTNERS (US) LLP

                By: */s/ Jill L. Forster*
                Michael A. Hanin
                Jill L. Forster
                75 Rockefeller Plaza
                New York, NY 10019
                Telephone: (212) 970-2300
                Michael.Hanin@pallasllp.com
                Jill.Forster@pallasllp.com

                *Attorneys for Stanwich Mortgage*
                *Acquisition Company VIII, LLC*

9

## CERTIFICATE OF COMPLIANCE

I affirm that this Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment complies with the provisions of Rule 4(c)(ii) of the Individual Rules and Practices in Civil Cases for Judge Dale E. Ho because it contains less than 10 pages, exclusive of the cover, table of contents, table of authorities, signature block, and Certificate of Compliance.

Dated: February 13, 2026
    New York, New York

By: /s/ *Jill L. Forster*
Michael A. Hanin
Jill L. Forster
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Michael.Hanin@pallasllp.com
Jill.Forster@pallasllp.com
