UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

STANWICH MORTGAGE ACQUISITION
COMPANY VIII, LLC,                                          Docket No.: 1:24-cv-00771-DEH

                        Plaintiff,

     -against-

EQUITY PRIME MORTGAGE, LLC,

                        Defendant.
------------------------------------------------------------------X
EQUITY PRIME MORTGAGE, LLC,

                 Third-Party Plaintiff,

     -against-

THE MONEY SOURCE, INC. and
SERVBANK, SB,

                 Third-Party Defendants.
------------------------------------------------------------------X

---

**THIRD-PARTY DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AGAINST THIRD-
PARTY PLAINTIFF EQUITY PRIME MORTGAGE, LLC**

---

**MILMAN LABUDA LAW GROUP, PLLC**
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
(516) 328-8899

*Counsel for Third-Party Defendants
The Money Source, Inc. and Servbank, SB*

Third-Party Defendants The Money Source, Inc. ("TMS") and Servbank, SB ("Servbank") submit this reply memorandum of law in further support of their motion for summary judgment dismissing Equity Prime Mortgage, LLC's ("EPM") Third-Party Complaint in its entirety.

## PRELIMINARY STATEMENT

This third-party action is narrow and should be resolved on undisputed facts. EPM's Third-Party Complaint asserts a single claim for breach of contract against TMS, premised on one theory: if agency insurance proceeds on fourteen loans were "improperly withheld" from SMAC, then TMS must have breached the Subservicing Agreement by failing to remit those proceeds to SMAC as a third-party purchaser. The record forecloses that theory as a matter of law.

The fourteen loans fall into two categories, and neither supports a "withheld proceeds" claim against TMS. For eight loans (the "Claim Loans"), HUD Advice of Payment ("AOP") records reflect that FHA remitted claim proceeds by electronic funds transfer to EPM as the mortgagee of record—not to TMS. EPM's own admissions confirm that it received deposits matching the AOP amounts. TMS never received or held these funds and therefore could not have "withheld" them from SMAC. For the remaining six loans (the "In-Flight Loans"), it is undisputed that as of the March 2022 servicing transfer, no FHA/VA claims had been filed and no claim proceeds existed. One cannot withhold proceeds that do not exist.

Unable to point to any evidence that TMS ever received and failed to remit agency proceeds on any of the fourteen loans, EPM attempts to shift the ground beneath the Court's feet. Its opposition reframes this case into a different one—alleging "servicing irregularities," including an alleged failure to file claims during the interim servicing period or alleged deficiencies in transfer information to SMAC's subservicer. But EPM never pleaded a failure-to-file or "bad transfer"

theory in its Third-Party Complaint and it never moved to amend. EPM cannot now amend its pleading by brief in opposition to summary judgment.

The Subservicing Agreement independently confirms why this pivot fails. Subservicer indemnity is expressly limited to third-party claims "to the extent based upon" Subservicer's fraud or willful misconduct, breach of specified confidentiality/ownership provisions, or IP infringement. (Subservicing Agreement § 8.2(B)(a)-(c).) And Section 8.2(C) makes the allocation of servicing risk explicit: "Owner/Servicer retains all risk associated with the servicing of the loans except as explicitly set forth herein," and "[t]he fees reflect indemnity provisions and the allocation of risk and the limitation of liability in this Agreement." (Id. § 8.2(C).) EPM's attempt to expand its third-party case beyond the only claim it pleaded—and beyond the narrow indemnity triggers the parties negotiated—should be rejected.

Because there is no triable evidence that TMS withheld agency proceeds owed to SMAC on either category of loans, and because EPM cannot rewrite its pleading at summary judgment to pursue a different theory, summary judgment should be granted.

## ARGUMENT

**I.    EPM'S BREACH-OF CONTRACT CLAIM FAILS BECAUSE THERE IS NO EVIDENCE THAT TMS RECEIVED AND WITHHELD ANY AGENCY PROCEEDS ON EITHER CATEGORY OF LOANS**

EPM's Third-Party Complaint alleges that if "insurance proceeds … were improperly withheld from SMAC," such withholding would violate TMS's obligations under the Subservicing Agreement. (Third-Party Compl. ¶¶ 28-30.) That claim presupposes that TMS actually received agency proceeds and failed to remit them. The undisputed record shows otherwise for both categories of loans.

**A. The Eight "Claim Loans": HUD Paid the FHA Claim Proceeds to EPM as Mortgagee of Record, Not to TMS**

HUD AOP records for the Claim Loans identify EPM as the mortgagee of record and reflect that FHA remitted each claim payment by electronic funds transfer. (TPD 56.1 ¶¶ 26-29; Ex. G.) For FHA-insured loans, claim payments are disbursed to the mortgagee's designated FHA account—not to the servicer. (TPD 56.1 ¶¶ 19-20.) Consistent with that payment mechanic, TMS did not receive or hold the FHA claim proceeds reflected on the AOPs. (TPD 56.1 ¶ 29.)

EPM's own admissions confirm the dispositive point: after the cut-off date, EPM received deposits in the exact amounts of the AOP partial-claim payments (seven loans). (TPD 56.1 ¶ 30.) Those funds were paid to EPM, not to TMS. Whatever dispute may exist between SMAC and EPM about whether EPM should have remitted those proceeds under the MLPA, that does not create a triable breach-of-contract claim against TMS for "withholding" proceeds TMS never received.

**B. The Six "In-Flight" Loans: No Claims Were Filed and No Proceeds Existed to Be Remitted as of Transfer**

As for the In-Flight Loans, the record is likewise undisputed that (i) no FHA or VA insurance claim had been filed as of the March 2022 servicing transfer, (ii) no FHA or VA claim proceeds had been paid as of transfer, and (iii) no claim proceeds on these loans have ever been paid to TMS. (TPD 56.1 ¶¶ 33-38.) There are no HUD AOP records for those loan numbers, and neither EPM nor SMAC produced claim-payment documentation for these loans in discovery. (TPD 56.1 ¶¶ 34-35; O'Neil Decl. ¶ 13.) EPM admits these facts in its counterstatement. (EPM Counter 56.1 ¶¶ 33-38.)

4

Those admissions end the "withheld proceeds" theory for the In-Flight Loans. A party cannot "withhold" proceeds that do not exist. On the only claim EPM pleaded—failure to remit "withheld" agency proceeds—there is no triable issue for any jury to decide.

### C. Because EPM Cannot Prove Withheld Proceeds on Any Loan, Its Third-Party Breach Claim Fails

EPM repeatedly invokes "questions of fact," but it identifies no admissible evidence that TMS received and failed to remit agency proceeds on any of the fourteen loans. For the Claim Loans, the proceeds were paid to EPM. For the In-Flight Loans, no proceeds existed as of transfer. The absence of proof on this essential element requires summary judgment for TMS on EPM's only pled claim.

### II. HAVING NO TRIABLE EVIDENCE OF "WITHHELD" PROCEEDS, EPM IMPROPERLY SEEKS TO EXPAND ITS CASE TO UNPLEADED "SERVICING IRREGULARITIES"; IT CANNOT AMEND ITS COMPLAINT THROUGH SUMMARY-JUDGMENT OPPOSITION, AND THE SUBSERVICING AGREEMENT'S NARROW INDEMNITY/RISK-ALLOCATION REGIME FORECLOSES THE BROAD RISK-SHIFTING EPM NOW SEEKS

### A. EPM Did Not Plead a Failure-to-File or "Bad Transfer" Claim and Did Not Amend Its Complaint

EPM's Third-Party Complaint pleads a single breach-of-contract theory tied to allegedly "withheld" insurance proceeds. It does not plead that TMS breached by failing to file claims during the interim servicing period, by mishandling loss mitigation, or by providing deficient transfer information to SMAC's subservicer. It does not plead fraud or willful misconduct. It does not plead negligence. And it does not plead common-law indemnity or contribution. (See Third-Party Compl. generally; TPD 56.1 ¶42.)

Having failed to plead those theories (and having never sought leave to amend, the deadline for which was May 9, 2024), EPM cannot defeat summary judgment by reframing the case in opposition papers.

**B. EPM Cannot Amend Its Pleading by Raising a New Theory in Opposition to Summary Judgment**

The Second Circuit has made clear that when a party wishes to add a new claim not pled, the proper vehicle is a motion to amend—not a new theory in summary-judgment briefing. In Greenidge v. Allstate Insurance Co., the Second Circuit affirmed refusal to treat new claims raised at summary judgment as part of the case and explained that plaintiffs who failed to include a claim in the complaint "can move to amend the complaint," and a district court does not abuse its discretion by failing to grant leave to amend where the party never sought it. 446 F.3d 356, 361 (2d Cir. 2006) (citing Mauro v. S. New England Telecomms., Inc., 208 F.3d 384, 386 n.1 (2d Cir. 2000)). Likewise, in Shah v. Helen Hayes Hospital, the Second Circuit held that a plaintiff could not raise claims for the first time in opposition to summary judgment. 252 F. App'x 364, 366 (2d Cir. 2007). Courts in this District apply that same principle and reject attempts to use summary-judgment opposition "as a back door means to amend the complaint." Isaac v. City of New York, 701 F. Supp. 2d 477, 491 (S.D.N.Y. 2010).

This is exactly what EPM attempts here. Having no evidence that TMS withheld proceeds (the claim actually pled), EPM now points to SMAC's theory in the primary case concerning alleged failures to file claims and alleged transfer deficiencies. But EPM never pleaded a third-party claim on that theory, never moved to amend, and cannot transform this case at summary judgment into a different dispute about hypothetical claims that allegedly could have been filed.

**C. The Subservicing Agreement Forecloses the Broad Risk-Shifting EPM Now Seeks**

Even if the Court entertained EPM's unpled "servicing irregularities" pivot (it should not), the Subservicing Agreement forecloses the kind of broad back-to-back liability EPM now seeks to impose on TMS for at least two reasons.

6

First, the Agreement's Subservicer indemnity is narrow and enumerated. TMS agreed to indemnify Owner/Servicer only against third-party claims "to the extent based upon" TMS's fraud or willful misconduct, breach of specified confidentiality/ownership provisions, or IP infringement. (Subservicing Agreement § 8.2(B)(a)-(c).) EPM does not plead fraud or willful misconduct and offers no record evidence that could satisfy those limited triggers.

Second—and critically—Section 8.2(C) states the parties' default allocation of servicing risk in plain language: "Owner/Servicer retains all risk associated with the servicing of the loans except as explicitly set forth herein," and "[t]he fees reflect indemnity provisions and the allocation of risk and the limitation of liability in this Agreement." (Id. § 8.2(C).) Section 8.2(C) further elaborates that, Owner/Servicer will indemnify Subservicer for third-party claims arising out of Owner/Servicer's conduct, including failures to comply with Applicable Requirements, inaccurate or incomplete information supplied to Subservicer, and acts or omissions occurring or arising prior to the Transfer Date. (Id. § 8.2(C)(a), (b), (c), (g).)

This is the opposite of the result EPM now seeks. The Agreement allocates servicing risk to EPM as Owner/Servicer except where explicitly shifted, and it limits any Subservicer indemnity to narrow categories EPM neither pled nor supported with evidence. EPM cannot use a summary-judgment opposition brief to rewrite both its pleading and the parties' bargained-for allocation of risk.

### III. SERVBANK IS ENTITLED TO SUMMARY JUDGMENT BECAUSE EPM HAS NO EVIDENCE SUPPORTING ANY SUCCESSOR-LIABILITY EXCEPTION

Even if EPM's claim survived as to TMS (it does not), Servbank is entitled to judgment for two independent reasons.

First, Servbank had no role in the interim servicing period, claim submissions, or alleged receipt of proceeds. The subject loans transferred in March 2022; Servbank's agreement with EPM

became effective April 1, 2023. (TPD 56.1 ¶¶ 15-18.) Servbank never serviced these loans during the relevant period and never received any proceeds at issue. (TPD 56.1 ¶ 18.)

Second, EPM offers no evidence supporting any recognized successor-liability exception. New York's general rule is non-liability, with narrow exceptions (assumption, de facto merger, mere continuation, or fraud). See Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244-45 (1983); Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44-45 (2d Cir. 2003). EPM proffers no assumption agreement, no evidence of merger, no dissolution of TMS, no stock continuity, and no evidence of a transaction intended to evade liabilities. (TPD 56.1 ¶¶ 45-48; O'Neil Decl. ¶ 14.) Assertions about "public statements" and corporate lineage are not evidence satisfying Schumacher and do not create a triable issue.

## CONCLUSION

For the foregoing reasons, Third-Party Defendants respectfully request that the Court grant their motion for summary judgment in its entirety and dismiss EPM's Third-Party Complaint with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York
February 13, 2026

**MILMAN LABUDA LAW GROUP PLLC**

By: *Colleen O'Neil*

Colleen O'Neil, Esq.
Joseph M. Labuda, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042

*Counsel for Third-Party Defendants*
*The Money Source Inc. and Servbank, N.A.*

8