UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STANWICH MORTGAGE ACQUISITION COMPANY VIII, LLC,<br>Plaintiff,<br>v.<br>EQUITY PRIME MORTGAGE, LLC,<br>Defendant,<br>v.<br>THE MONEY SOURCE, INC., et al.,<br>Third- Party Defendants. | 24 Civ. 771 (DEH)<br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Stanwich Mortgage Acquisition Company ("SMAC" or "Plaintiff") has sued Defendant Equity Prime Mortgage, LLC ("EPM" or "Defendant") for breach of contract. EPM has in turn sued The Money Source, Inc. ("TMS") and Servbank, Sb ("Servbank") (collectively, "Third-Party Defendants") arguing that, if EPM is liable to SMAC for breach of contract, then Third-Party Defendants are liable for any consequent obligations to SMAC.

SMAC has moved for summary judgment on its breach of contract claim. ECF No. 69. Third-Party Defendants have also moved for summary judgment on EPM's third-party breach of contract claim against them. ECF Nos. 76, 78. Plaintiff and Third-Party Defendants have also moved to seal documents filed in connection with their motions. ECF Nos. 66, 75.

For the reasons explained below, SMAC's motion for summary judgment is **GRANTED**. Third-Party Defendants' motion for summary judgment is also **GRANTED**. With respect to the sealing motions, TMS's sealing motion is **GRANTED**, but SMAC's sealing motion is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE** to renewal.

## BACKGROUND[1]

Agency-insured mortgage loans are mortgage loans insured by federal agencies that provide claim payments in the event of loan modification or default. SMAC is a limited liability company that purchases agency-insured mortgage loans and servicing rights. Pl.'s Rule 56.1 Stmt. ("Pl. Stmt.") ¶¶ 1, 8, ECF No. 72 ; Compl. ¶¶ 5, 8, ECF No. 1. EPM is a licensed mortgage banker that originates and sells residential mortgages and servicing rights. Compl. ¶ 13. On February 1, 2022, SMAC and EPM entered into a contract (the "Mortgage Loan Purchase Agreement" or "MLPA") under which SMAC agreed to purchase from EPM a portfolio of agency-insured mortgage loans. Pl. Stmt. ¶¶ 1, 5, 9.

The MLPA provided that ownership of the mortgage loans would be transferred from EPM to SMAC on February 1, 2022, but that the servicing rights would remain with EPM until March 22, 2022, when they would then also be transferred to SMAC. *Id.* ¶ 10. The MLPA refers to this period of time from the transfer of the loans on February 1 to the transfer of the servicing rights on March 22 as the "Interim Servicing Period." *Id.* During the Interim Servicing Period, Third-Party Defendant TMS serviced the mortgage loans on behalf of EPM. *Id.*; *see also* Third-Party Def. Rule 56.1 Stmt. ("Third-Party Stmt.") ¶ 3, ECF No. 78.

The MLPA provides that during the Interim Servicing Period, EPM was required to ensure its servicer (i.e., TMS) serviced the mortgage loans in accordance with "Accepted Servicing Practices." Pl. Stmt. ¶ 14 (quoting MLPA § 4.01(a)). Further, the MLPA provides that SMAC shall be entitled to:

---

[1] The following facts are taken from the parties' Rule 56.1 statements and evidentiary submission in connection with the two motions for summary judgment. Unless otherwise noted, the facts are either undisputed or, if disputed, resolved in the light most favorable to the non-moving party, with all reasonable inferences drawn in the non-movant's favor. *See Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023).

> (a) all principle on the Mortgage Loans received by [EPM] (or its designee) or [SMAC] (or its designee) after the Cut-off Date; (b) all payments of interest on the Mortgage Loans received by [EPM] or its designee) or [SMAC] (or its designee) after the Cut-off Date; and (c) all other monies collected or received by [EPM] (or its designee) or [SMAC] (or its designee) after the Cut-off Date relating to or in connection with the Mortgage Loans (**including without limitation any insurance proceeds, liquidation proceeds and condemnation proceeds**).

*Id.* ¶ 12 (quoting MLPA § 2.05, ECF No. 67-1 (emphasis added).

During the Interim Servicing Period, TMS engaged in loss mitigation of the mortgage loans, seeking modifications for thirteen of the mortgage loans and a short sale for one mortgage loan (the "Subject Loans"). Pl. Stmt. ¶¶ 17-18. These resulted in reductions to the principal balances and accrued interest on the loans and partial insurance claim entitlement from the insuring agencies to EPM.[2] *Id.* ¶¶ 18-19.

SMAC maintains that during the Interim Servicing Period, TMS filed insurance claims for eight of the Subject Loans, resulting in payments to EPM totaling $429,280.09. *Id.* ¶ 24. EPM does not deny this contention, and states only that "even if received, [SMAC] is not entitled to obtain [those] payments under the MLPA." Def.'s Reply to Pl.'s Rule 56.1 Stmt. ("Def. Stmt.") ¶ 24, ECF No. 86. SMAC maintains that, following the Interim Servicing Period, SMAC and its servicer demanded payment of the partial claim proceeds and requested financial information from EPM regarding loss mitigation of the loans at issue. Pl. Stmt. ¶ 33. EPM only "denies that [SMAC] was unable to review and undertake information requested." Def. Stmt. ¶ 33.

---

[2] In its Counterstatement, EPM does not formally deny and in fact acknowledges that TMS engaged in loss mitigation efforts during the Interim Servicing Period by seeking loan modifications and making partial insurance claims from the agencies backing multiple of the mortgage loans at issue. Def. Stmt. ¶¶ 18-19. It disputes only the total amount of partial claim payments it received during the Interim Servicing Period, stating that while TMS had initiated loss mitigation for six of the loans, the federal agencies insuring those loans had not provided payments to EPM by the end of the Interim Servicing Period. *Id.* ¶¶ 19-20.

As for the remaining six Subject Loans, SMAC alleges (and EPM denies) that for these loans, TMS failed to file and obtain payment on account of the partial claims. Pl. Stmt. ¶ 27. SMAC states that for each modified mortgage loan, TMS should have, under standard servicing practices, filed claims with the relevant insuring agency one business day after the modification was complete. *Id.* ¶ 20. Had this practice been followed, all claims for the Subject Loans would have been filed during the Interim Servicing Period. *Id.* EPM responds only by "[d]eny[ing] that generally accepted servicing practices were not followed with respect to loss mitigation and claim efforts during the interim servicing period." Def. Stmt. ¶ 20. The available servicing data reflect that no FHA or VA insurance claim had been filed and no FHA or VA claim proceeds had been paid as of the date of the March 2022 servicing transfer. Third-Party Stmt. ¶ 34. According to SMAC, the partial claims on these six loans during the Interim Servicing Period amounted in the aggregate to $542,930.98. Pl. Stmt. ¶ 27.

The parties disagree as to the total amount of insurance proceeds received by EPM. SMAC maintains that the total amount of insurance claim entitlement totals $972,211.07, citing EPM and TMS's own produced financial records concerning the modifications of the loans at issue. *Id.* ¶ 23. EPM denies SMAC's contention but does not adduce evidence that contradicts it. Def. Stmt. ¶ 23.

TMS's servicing work on the Subject Loans for EPM during the period of time at issue in this case was performed pursuant to a subservicing agreement (the "2019 Subservicing Agreement"). Third-Party Stmt. ¶ 3. Third-Party Defendant Servbank became EPM's subservicer

effective April 1, 2023. *Id.* ¶ 4. Servbank did not service the mortgage loans at issue during the relevant time period.[3] *Id.* ¶ 18.

The 2019 Subservicing Agreement contains an indemnification provision addressing when and under what circumstances TMS may be obligated to indemnify EPM for third-party claims. *Id.* ¶ 14. TMS did not receive insurance claim payments from insuring agencies; all such payments made during the Interim Servicing Period were remitted to EPM. *Id.* ¶¶ 20, 22, 29.

## SUMMARY JUDGMENT STANDARD[4]

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Aff's*, 373

---

[3] EPM does not deny this contention. Def. Counter Statement to Third-Party Def. Rule 56.1 Stmt. ("Def. Stmt. 2") ¶ 18, ECF No. 88.

[4] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. SMAC's Motion for Summary Judgment

SMAC moves for summary judgment on its breach of contract claim against EPM. To prevail on a claim for breach of contract, a plaintiff must show: "(1) the existence of a contract between itself and the defendant; (2) the performance of the plaintiff's obligations under the contract, (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by the defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). The parties do not dispute that the MLPA is a valid contract, and that New York law applies to SMAC's claim. Nor do they dispute that EPM's servicer undertook loan modifications during the Interim Servicing Period and EPM received claim payments for eight loans at issue during that period. EPM disputes only whether it has breached the MLPA. Mem. Law Opp'n Pl.'s Mot. Summ. Judgment ("Def. Opp'n Mem. 1") at 3-7, ECF No. 85. Specifically, EPM argues that the MLPA does not require it to transfer the agency insurance payments it received to SMAC.

*Id.* at 4-6. EPM further argues that the failure to submit loan modification claims for six of the loans at issue during the Interim Servicing Period did not violate the MLPA's requirement that EPM ensure its servicers follow generally accepted servicing practices. *Id.* at 6-7. The Court addresses each argument in turn.

**A. Failure to Transfer Agency Insurance Payments**

In relevant part, the MLPA entitles SMAC to "all other monies collected or received by [EPM] . . . [after January 31, 2022] related to or in connection with the Mortgage Loans (including without limitation any insurance proceeds, liquidation proceeds and condemnation proceeds)." MLPA at 10. SMAC contends that the amounts in dispute fall within this provision, because they were "related to or in connection" with the Subject Loans. Given the provision's broad language, that seems to be the case.

EPM, however, argues that this provision entitles SMAC only to "proceeds received from any of the underlying borrower's homeowner's insurance in the event that the mortgaged premises is damaged," and should not be read to include agency insurance payments made when modifying the agency-backed mortgage loans. Def. Opp'n Mem. 1 at 4. EPM argues that a separate provision within the MLPA concerning hazard and flood insurance of the properties subject to the mortgage loans supports its interpretation that the insurance payments referenced in the MLPA's provision regarding payment refer to insurance of the mortgaged property, not the agency insurance payments at issue here. *Id.* at 5-6.

The Court disagrees, because EPM's proposed interpretation of the contractual provision at issue runs counter to its plain language. The provision applies to "all . . . monies . . . relat[ed] to or in connection with the Mortgage Loans," including, "without limitation any insurance proceeds." MLPA at 10. The provision's broad language evinces an intent for it to apply to *any* payments relating to the mortgage loans at issue. An interpretation excluding insurance payments

available through the mortgage loans' backing by federal agencies contradicts its plain text. *See Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 390 (S.D.N.Y. 2023) ("[A] contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties."); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 148 (2d Cir. 1993) ("Where [contract] language is plain and unambiguous, a court may construe the contract and grant summary judgment." (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 427 (2d Cir. 1992)). And the presence of warranty provisions in a separate portion of the MLPA regarding the hazard and insurance of mortgaged properties does not evince intent to the contrary.

EPM does not deny that it failed to transfer agency insurance payments it received during the Interim Servicing Period to SMAC. There is therefore no genuine dispute of material fact as to EPM's breach of the provision of the MLPA requiring transfer of those payments. Accordingly, SMAC is entitled to judgment as a matter of law on its theory that EPM's failure to transfer the agency insurance claim payments violated its obligations under the MLPA.

As noted above, SMAC contends that these amounts totaled $429,280.09, Pl. Stmt. ¶ 24, a figure that EPM does not contest, *see* Def. Stmt. ¶ 24 (denying only that SMAC is entitled to these payments "if" they were received by EPM). The Court therefore concludes that there is no genuine dispute of fact as to the amount at issue on this claim.

### B. Adherence to Generally Accepted Servicing Practices

The parties agree that during the Interim Servicing Period, TMS did not file and obtain payment on six modified mortgage loans. SMAC argues that TMS's failure to do so violated a provision of the MLPA requiring that, during the Interim Servicing Period, EPM "shall cause [its] Servicer . . . to interim service and administer the Mortgage Loans in accordance with Accepted Servicing Practices . . ." MLPA at 18. SMAC argues that "[h]ad [TMS] followed Accepted

Servicing Practices, [it] would have timely filed the insurance claims during the Interim Servicing Period," resulting in $542,930.98 in partial claims that were not paid during that period. Mem. Law Supp. Pl.'s Mot. Summ. Judgment ("Pl. Mem.") at 7, ECF No. 71.

The MLPA defines "Accepted Servicing Practices" as:

> "The mortgage servicing practices of prudent mortgage lending institutions and nationally recognized prudent residential mortgage servicers (i) that service mortgage loans for their own or other portfolios which are of the same type as the Mortgage Loans in the jurisdiction where the related Mortgaged Property is located, (ii) that are in compliance with all applicable federal, state and local laws and regulations, including VA Regulations and (iii) that are in compliance the [sic] applicable Mortgage and Mortgage Note." *Id.* at 6.

In support of its position that TMS's failure to file and obtain payment on six of the Subject Loans during the Interim Service Period contravened accepted servicing practices, SMAC submits a declaration by the Director of Loss Mitigation at Carrington, its mortgage loan servicer, on standard practices in the servicing industry. *See* Decl. of Terrence Morley ("Morley Decl."), ECF No. 68. The Declaration describes the process for filing insurance claims with federal agencies after modification of an agency-backed mortgage loan. *Id.* ¶¶ 3-8. It explains that, for mortgage loans backed by the VA or FHA, servicers must file claims with the relevant federal agency within 180 days of when a loan modification is executed.[5] *Id.* ¶ 6. It also notes that Carrington's standard practice is to file claims the next business day following modification. *Id.* ¶ 7.

EPM does not adduce competing evidence. In response to SMAC's contentions, EPM states only that "the policies and procedures of Plaintiff's Servicer are neither relevant not [sic] material to this action and the requirements of the MLPA," Def. Stmt. ¶ 6, and without elaboration or citation to supporting authority, simply "denies that there is a 180-day limitation, as each

[5] Evidence adduced by Third-Party Defendants shows that the six relevant loans were subject to modification through programs administered by the FHA or VA. Third-Party Stmt. ¶ 33.

governmental agency will have different requirements depending on agency guidelines." *Id.* ¶ 5. This unsubstantiated denial is insufficient to create a genuine issue of material fact as to accepted servicing practices in the industry. *See Goenaga*, 51 F.3d at 18.[6]

EPM has failed to adduce evidence that contradicts SMAC's contentions that the failure to file claims on six of the mortgage loans at issue during the Interim Servicing Period amounted to a failure of its obligation to ensure its servicer complied with accepted servicing practices. Accordingly, there is no genuine issue of material fact as to whether EPM violated this term of the MLPA. *See Anderson*, 477 U.S. at 252 (a non-movant must advance more than a "scintilla of evidence" in order to create a genuine issue of material fact). SMAC is entitled to summary judgment on its breach of contract claim against EPM.

As noted above, SMAC maintains that the amounts on these claims totaled $542,930.98, *see* Pl. Stmt. ¶ 27, a contention that EPM purports to deny, but it offers no citations to record evidence that would call into question this figure, *see* Def. Stmt. ¶ 26. The Court therefore concludes that there is no genuine dispute of fact as to the amount at issue on this claim.

## II. Third-Party Defendants' Motion for Summary Judgment

EPM argues that any liability for breach of contract to SMAC should be placed on Third-Party Defendants TMS and Servbank. Def. Opp'n Mem. 2 at 1. To that end, EPM has brought a

[6] EPM's argument is further undercut by its representation that Third-Party Defendants are liable in the event of its breach. In its opposition to Third-Party Defendants' motion for summary judgment, EPM argues that, regarding the failure to file claims with insuring agencies, "should judgment be entered against [EPM] for failing to abide by these servicing guidelines," liability "would fall on Third-Party Defendants who (admittedly) were tasked with servicing the loans." Mem. Law Opp'n Third-Party Defs.' Mot. Summ. Judgment ("Def. Opp'n Mem. 2") at 4, ECF No. 87. But the MLPA affirmatively places responsibility for adherence to accepted servicing practices with EPM, requiring that "**[t]he Seller** shall cause [its] Servicer . . . to interim service and administer the Mortgage Loans in accordance with Accepted Servicing Practices . . ." MLPA at 18 (emphasis added).

breach of contract claim against TMS and Servbank, arguing that TMS breached the 2019 Subservicing Agreement under which TMS serviced the mortgage loans at issue. Third Party Compl. ¶¶ 31-37, ECF No. 20. Specifically, the Third-Party Complaint alleges that "[a]s subservicer, TMS was responsible for making direct remittances to any third-parties to whom EPM sold its interest," and that "[i]f it is determined that insurance proceeds were withheld from SMAC, such withholdings would be a violation of TMS' obligations to EPM." *Id.* ¶¶ 33-34. The Third-Party Complaint further alleges that "Servbank, as a successor of TMS, is liable to EPM for TMS' breach." *Id.* ¶ 36. EPM does not assert any other theory for breach of the 2019 Subservicing Agreement. TMS and Servbank have moved for summary judgment on EPM's breach of contract claim against them.

There is no dispute of material fact that agency insurance proceeds that were paid on the loans at issue were remitted directly to EPM, and not to TMS. Def. Stmt. 2 ¶¶ 19-20, 28-30. Likewise, the parties do not dispute that, for the six loans with outstanding agency insurance claims at the end of the Interim Servicing Period, no insurance payment had yet been disbursed when TMS stopped serving the Subject Loans. *Id.* ¶ 34. In other words, TMS never received these funds. Accordingly, any claim of breach against TMS or Servbank based on a theory of withheld funds fails as a matter of law.

Further, EPM cannot shift liability to TMS or Servbank based on the theory that TMS was responsible for the breach of the MLPA's requirement that servicers adhere to accepted practices. As Third-Party Defendants note, the Third-Party Complaint does not clearly articulate a theory of liability based on this argument. Mem. Law Supp. Third-Party Defs.' Mot. Summ. Judgment ("Third-Party Def. Mem.") at 10-11, ECF No. 77. But even assuming arguendo that EPM advances this theory of liability, it fails as a matter of law because it is barred by a provision of the 2019 Subservicing Agreement that limits TMS's liability to third parties. Def. Stmt. 2 ¶ 14.

Specifically, Section 8.2(C) of the 2019 Subservicing Agreement provides that "[EPM] retains all risk associated with the servicing of the loans . . . [e]xcept as stated otherwise in this Agreement, [EPM] will indemnify, defend and hold harmless SUBSERVICER and its Affiliates, and its and their respective directors, officers, employees and agents . . . from and against all third party claims . . ." 2019 Subservicing Agreement at 40, ECF No. 79-3. The agreement shifts liability to TMS only under enumerated circumstances, including to the extent damages arose from TMS's "fraud or willful misconduct." *Id.*

In response, EPM argues only that the provision does not apply where TMS acted in a "grossly negligent manner." Def. Opp'n Mem. 2 at 5-6. However, EPM has not adduced any evidence of negligence, and in fact argues in its briefing against SMAC's motion for summary judgment that TMS was *not* negligent or otherwise deficient in its servicing of the Subject Loans. Def. Opp'n Mem. 1 at 6-7 ("Plaintiff fails to demonstrate that Equity's servicer, TMS, did not uphold generally accepted servicing practices during the brief 7-week interim servicing period."). Accordingly, EPM has not adduced sufficient evidence to create a genuine issue of material fact as to the applicability of the liability limitation provision of the 2019 Subservicing Agreement. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Thus, for the reasons stated above, Third-Party Defendants' motion for summary judgment is **GRANTED**.

## III. Plaintiff's and Third-Party Defendants' Motion to Seal

SMAC has moved to seal documents filed in connection with its motion for summary judgment. Mot. to Seal, ECF No. 66. Specifically, SMAC moves to seal a declaration and exhibits detailing financial and ownership records for the mortgage loans at issue in this case, ECF No. 67, and information about the practices of SMAC's loan servicer, ECF No. 68.

Third-Party Defendants have also moved to seal documents in connection with their motion for summary judgment. Mot. to Seal, ECF No. 75. Specifically, they also move to seal a declaration and exhibits detailing financial and ownership records for the mortgage loans at issue. ECF No. 80.

**A. Legal Standard**

The Court applies a three-part inquiry to determine whether to seal a document. *See Olson v. Major League Baseball*, 29 F.4th 59, 87-88 (2d Cir. 2022). First, a court determines whether a document is a "judicial document," subject to a presumptive public right of access. *See id.* at 87. A judicial document is "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

Second, a court determines the weight of the presumption that attaches to the document, looking to "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Olson*, 29 F.4th at 87-88. "The presumption of public access exists along a continuum. The strongest presumption attaches where the documents determine litigants' substantive rights, and is weaker where the documents play only a negligible role in the performance of Article III duties." *Id.* at 89 (internal quotations omitted). However, documents do not "receive different weights of presumption based on the extent to which they [are] relied upon in resolving the motion." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006).

"Finally, once the weight of the presumption has been assessed, the court is required to balance competing considerations against it." *Olson*, 29 F.4th at 88. "[C]ontinued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."

*Lugosch*, 435 F.3d at 124. Competing considerations may include the protection of "sensitive business information," the release of which could cause a litigant "competitive harm." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 608 (S.D.N.Y. 2022).

**B. Application**

Here, there is no doubt that the documents at issue are judicial documents "relevant to the performance of the judicial function and useful in the judicial process." *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Further, the documents are filed in connection with a dispositive motion, and thus, a high presumption of public access attaches to all the documents discussed herein. *See Lugosch*, 435 F.3d at 123.

Upon review of the documents, the Court concludes that the interests asserted by the parties, including the protection of sensitive business information, are sufficient to overcome the presumption of public access. *See Toretto*, 583 F. Supp. 2d at 608. Furthermore, the Court is satisfied that TMS's proposed redactions are sufficiently tailored for that purpose. *See* ECF No. 79 and 79-1 through 79-10 (redacted version of ECF No. 80 and 80-1 through 80-10, which are the subjects of TMS's sealing request). TMS's motion is therefore **GRANTED**.

The same is true with respect to some of the documents that SMAC seeks to seal. *See* ECF No. 72 (redacted version of ECF No. 70, one of the subjects of SMAC's sealing request. SMAC's motion is **GRANTED** as to ECF No. 67, 68, and 70. But with respect to the other subjects of SMAC's sealing request, the attachments to ECF Nos. 67 and 68—that is, ECF Nos. 67-1 through 67-34 and ECF Nos. 68-1 through 68-3—SMAC's request is not sufficiently tailored. SMAC requests wholesale sealing (rather than mere redaction) of these documents and does not sufficiently justify that request. Indeed, despite requesting that certain documents like the MLPA (filed under seal at ECF No. 67-1, and as a placeholder on the public docket at ECF No. 73-1) be kept under wholly seal, SMAC cites and even quotes from it liberally. *See, e.g.*, Pl. Stmt. ¶¶ 9-16.

At a minimum, any portions of the MLPA or other documents that the parties quote should be unredacted. Accordingly, SMAC's motion to seal is **DENIED WITHOUT PREJUDICE** with respect to the documents and attachments at ECF Nos. 67 and 68.

**CONCLUSION**

Within seven days of the date of this Order, the parties shall meet and confer on the form of a proposed judgment in this case, and, within fourteen days of the date of this Order, SMAC shall file a proposed judgment in this case.

With respect to the parties' various sealing requests, the documents at ECF Nos. 67, 68, 70, 80, and 80-1 through 80-10 shall remain under seal. The documents at ECF Nos. 67-1 through 67-34 and 68-1 through 68-3 shall remain temporarily under seal for twenty-one (21) days. During that period, SMAC may file a renewed motion proposing specific, narrowly tailored redactions to these materials and exhibits that (1) offer explanations for the proposed redactions and/or sealing on a document-by-document basis, and (2) are supported by citation to authority granting the redaction of similar information. *See In re Keurig*, 2023 WL 196134, at *7 ("Accordingly, these papers may only be sealed or redacted if movants can offer information that would support 'specific, on the record findings' 'demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" (citing *Lugosch*, 435 F.3d at 120)). SMAC must meet-and-confer with the other parties prior to filing any such motion and shall state the parties' positions with respect to any such motion. If any such motion is filed, the Court will maintain any documents subject to such motion under temporary seal pending resolution of the motion. If no such motion with respect to some or all of these documents is filed in that period, the Court will direct that any documents and material for which no motion is filed shall be unsealed.

The Clerk of Court is respectfully requested to terminate ECF Nos. 66, 69, 75, 76, and 78.

SO ORDERED.

Dated: September 25, 2026

New York, New York

DALE E. HO
United States District Judge